# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HARRIET GOLDSTEIN, Individually and On Behalf of All Others Similarly Situated,<br><br>     Plaintiff,<br><br>  v.<br><br>PUDA COAL, INC., *et al.*,<br><br>     Defendants. | Civil Action No. 1:11-cv-02598-BSJ |
| LIONEL TALLANT, Individually and On Behalf of All Others Similarly Situated,<br><br>     Plaintiff,<br><br>  v.<br><br>PUDA COAL, INC., *et al.*,<br><br>     Defendants. | Civil Action No. 1:11-cv-02608-BSJ |
| STEVEN WEISSMANN, Individually and On Behalf of All Others Similarly Situated,<br><br>     Plaintiff,<br><br>  v.<br><br>PUDA COAL, INC., *et al.*,<br><br>     Defendants. | Civil Action No. 1:11-cv-02609-BSJ |

[captions continued]

**PUDA COAL INVESTOR GROUP'S REPLY MEMORANDUM OF LAW IN**
<u>**OPPOSITION TO ALL OTHER MOTIONS FOR LEAD PLAINTIFF APPOINTMENT**</u>

| | |
|---|---|
| ALEXIS ALEXANDER, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>MING ZHAO, *et al.*,<br><br>Defendants. | Civil Action No. 1:11-cv-02657-LAK |
| THOMAS ROSENBERGER, On Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>PUDA COAL, INC., *et al.*,<br><br>Defendants. | Civil Action No. 1:11-cv-02660-BSJ |
| DAN KORACH, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>PUDA COAL, INC., *et al.*,<br><br>Defendants. | Civil Action No. 1:11-cv-02666-BSJ |
| THOMAS AND CLAUDIA KENDALL, Jointly And On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>PUDA COAL, INC., *et al.*,<br><br>Defendants. | Civil Action No. 1:11-cv-02695-BSJ |

Movants N&D Faulkner, Ltd., A. David Flor ("Flor"), Jan Louis Brandewie ("Brandewie"), Avadhesh Agarwal ("Agarwal") and Michael Kiel ("Kiel") (collectively, "Puda Coal Investor Group") respectfully submit this reply memorandum of law in further support of their motion for appointment as lead plaintiff and in opposition to all other motions.

I. PRELIMINARY STATEMENT

Only four (4) of the nine (9) motions originally seeking appointment as lead plaintiff under the Private Securities Litigation Reform Act of 1995 ("PSLRA") remain before the Court.[1] In addition to the Puda Coal Investor Group (Document 27),[2] opposition briefs were filed by (1) Salomón Querub, Howard Pritchard and Hotel Ventures LLC (the "Hotel Ventures Group") (Document 25); (2) Donald Wilkinson and Robert Thumith (the "Wilkinson Group") (Document 23); and (3) Samuel Albert Blankenship, Samuel Aaron Blankenship, Kayla Clarke Blankenship and Jo Blankenship (the "Blankenship Group") (Document 38). After review of various opposition briefs, it is clear that only the Puda Coal Investor's Group has the largest financial interest – with losses exceeding $1.17 million – ***and*** satisfies the adequacy and typicality requirements of Rule 23 of the Federal Rules of Civil Procedure. As explained below, the competing movants are either an inadequate grouping that have failed to provide any evidence of

---

[1] The Puda Coal Shareholder Group and Ho Wing Sit each acknowledge that they do not have the largest financial interest. *See* the Puda Coal Shareholder Group's Response to Motions for Appointment as Lead Plaintiff, Document 22 at 4, Case 1:11-cv-02598-BSJ-HBP (filed June 30, 2011); Response of Ho Wing Sit to Competing Motions for Consolidation, Appointment as Lead Plaintiff, and Approval of Selection of Lead Counsel, Document 31, at 4, Case 1:11-cv-02666-BSJ-HBP (filed June 30, 2011). Connie L. Douglass 1996 Revocable Trust, Trinity Global Growth & Income Fund, L.P.'s, and Greg and Jana Womack Living Trust withdrew their motion. *See* Document 29, Case 1:11-cv-02598-BSJ-HBP (filed July 1, 2011). It does not appear that Cesare Crognale filed an opposition brief.

[2] References to the opposition briefs of the Puda Coal Investor Group, the Hotel Ventures Group and the Wilkinson Group refer to documents filed in the lowest captioned action, Case 1:11-cv-02598-BSJ-HBP. References to the Blankenship Group's opposition refer to the document filed in Case 1:11-cv-02666-BSJ-HBP. As previously noted in the Puda Coal Investor Group's opposition brief (Document 27 at 1, n.2, Case 1:11-cv-02598-BSJ-HBP, LaDuca filed a motion pursuant to 28 U.S.C. § 1407 before the Judicial Panel on Multidistrict Litigation to transfer all related actions pending in the Central District of California to this Court. On July 1, 2011, the Wilkinson Group filed an opposition to LaDuca's motion in Lin *v.* Puda Coal, Inc., et al. 2:11-cv-03177-JHN-JC, Document 47 (N.D. Cal)(filed July 1, 2011).

their ability to effectively litigate this action apart from their lawyers or have a smaller financial interest than the Puda Coal Investor Group. Accordingly, these motions should be denied.

The Puda Coal Investor Group is a cohesive group of 5 investors that has submitted a Joint Declaration[3] providing specific details about how its members intend to manage this litigation. The Joint Declaration addresses every concern raised by courts that have questioned the ability of previously-unrelated group members to cohesively, proactively represent their class. *See* Puda Coal Investor Group Opp., Document 27 at 7-10. The Joint Declaration also establishes that each member of the Puda Coal Investor Group knew of and agreed to file a joint motion ***prior to its filing***. *See* Joint Decl. ¶ 7 ("we affirmatively decided that it would be a benefit to ourselves and the class we seek to represent if we jointly sought appointment as Lead Plaintiff in a small cohesive group"). The Hotel Ventures Group – the only movant claiming a larger loss than the Puda Coal Investor Group – has not provided evidence that the same is true of its group. Notably, a glaring omission from the declarations submitted to the Court by members of the Hotel Ventures Group is a statement that its members knew about their joint motion and agreed to jointly moving ***before*** their lead plaintiff motion was filed.[4] Moreover, of the four competing lead plaintiff movant groups, ***only*** the Puda Coal Investor Group has submitted evidence that it actively negotiated a limitation on attorneys' fees with counsel. *See Vandevelde v. China Natural Gas, Inc.*, No. 10-cv-0728, 2011 WL 2580676, at *4 (D. Del. Jun.

---

[3]  See Exhibit B to Declaration of Frederic S. Fox in Support of the Puda Coal Investor Group's Memorandum of Law In Opposition to All Other Motions For Lead Plaintiff Appointment, dated June 30, 2011,Case 1:11-cv-02598-BSJ-HBP, Document 28 ("Joint Declaration" or "Joint Decl."); Puda Coal Investor Group's Memo. of Law in Opp. to All Other Motions for Lead Plaintiff Appointment, Case 1:11-cv-02598-BSJ-HBP, Document 27 at 7-10 ("June 30 Fox Opp. Declaration").

[4]  See Declaration of Laurence Rosen in Further Support of Motion of Salomon Querub, Howard Pritchard and Hotel Ventures LLC for Appointment as Lead Plaintiff and Approval of Co-Lead Counsel and in Opposition to Competing Motion, dated June 30, 2011, Document 26 at 6-16 ("June 30 Rosen Declaration").

29, 2011) (requiring movants to provide evidence of "retainer negotiations" before appointing a lead plaintiff).[5]

The remaining competing movants – who are themselves groups – have questioned 1) the standing of certain members (*i.e,* Flor, Brandewie, and Kiel) of the Puda Coal Investor Group; 2) the cohesiveness of the Puda Coal Investor Group; 3) its financial interest in this litigation; and 4) the typicality of certain members of the Puda Coal Investor Group. As discussed below, these arguments are meritless.

The standing arguments are easily dismissed. Each member of the Puda Coal Investor Group explicitly stated that each member was authorized to assert claims on behalf of *all* securities at the time the joint motion was filed.[6] Nevertheless, the Puda Coal Investor Group respectfully submits herewith additional evidence of their authority over claimed losses.[7]

Second, the Blankenship Group and Wilkinson Group question the appropriateness of the Puda Coal Investor Group by grafting additional requirements onto the PSLRA's lead plaintiff provisions for groups, such as a pre-litigation relationship and filing a declaration *contemporaneously* with a lead plaintiff motion. These additional requirements are not found in the PSLRA nor are they supported by case law.

Finally, the Blankenship Group speculates about the typicality of certain members of the Puda Coal Investor Group because 1) they made purchases *during the Class Period* but after the

---

[5] The Hotel Ventures Group is also inadequate for its failure to explain the role of Pomerantz Haudek Grossman & Gross LLP (the "Pomerantz Firm") in this litigation. Each member of the Hotel Ventures Group states that "we also understand we had the right to select counsel as part of the lead plaintiff process. Based on the firms' substantial experience and expertise in prosecuting securities fraud actions we selected The Rosen Law Firm, P.A. and Glancy Binkow & Goldberg LLP to represent the class as co-Lead Counsel." *See* June 30 Rosen Declaration, at 7, ¶ 11; at 11, ¶ 11; at 15, ¶ 11. Indeed, there is no evidence in the record that indicates each member of the Hotel Ventures Group knows that the Pomerantz Firm has been designated "Counsel for Plaintiffs".

[6] *See* Exhibits A-E to the Declaration of Frederic S. Fox, dated June 13, 2011, Document No. 12 ("June 13, 2011 Fox Declaration.").

[7] *See* Exhibits A-C to Declaration of Frederic S. Fox in Support of the Puda Coal Investor Group's Memorandum of Law in Reply to All Other Motions for Lead Plaintiff Appointment, dated July 11, 2011 ("July 11 Fox Reply Declaration").

truth about Puda Coal began to materialize (on April 8, 2011), or 2) engaged in a handful of options trades.

As demonstrated below, these arguments ignore basic facts alleged in the related securities class actions and completely ignore applicable law. The competing movants' arguments fail to present the "proof" demanded by the PSLRA to rebut the Puda Coal Investor Group's status as the presumptively most adequate plaintiff. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(II). Accordingly, the Puda Coal Investor Group should be appointed lead plaintiff.

## II. ARGUMENT

### A. The Puda Coal Investor Group Is the Presumptively Most Adequate Plaintiff

The PSLRA creates a rebuttable presumption that the most adequate plaintiff is "the person or group of persons" that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii). Of the four remaining competing motions before this Court, only the Puda Coal Investor Group meets these requirements.

#### 1. Each Member of the Puda Coal Investor Group Has Standing to Assert Claims

Competing movants speculation that Messrs. Kiel, Flor and Brandewie, may not have authority over all of their claimed losses is baseless.[8] Each of these movants' certifications explicitly state that they are authorized to assert claims on behalf of ***all*** securities attached to their respective certifications. *See* June 13 Fox Declaration, Exhibits A-E, Case 1:11-cv-02598-BSJ-HBP. This authority was present when the motions were filed and continues through today.

---

[8] See Hotel Ventures Group Opp., Document 25, at 7-10, Case 1:11-cv-02598-BSJ-HBP; Wilkinson Group Opp., Document 23, at 13-15, Case 1:11-cv-02598-BSJ-HBP; Blankenship Group Opp., Document No. 38, at 7-8 Case 1:11-cv-02666-BSJ-HBP.

**Michael Kiel.** Michael Kiel's financial interests is based on losses suffered in his individual account, accounts controlled by his father, David Kiel (individually and as trustee), and by Allied Plumbing Services Inc. Profit Sharing Plan and Trust ("Allied Plumbing Plan"). Mr. Kiel obtained a pre-motion assignment of claims from David Kiel that assigns to him "all rights, titles and interests" to prosecute claims belonging to David Kiel and entities for which David Kiel is a trustee. *See* July 11 Fox Reply Decl., Ex. A. Accordingly, arguments against Mr. Kiel's authority over these losses are easily dismissed. *See W.R. Huff Asset Management Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 108 (2d Cir. 2011). *See also Sprint Comms. Co., L.P. v. APCC Services, Inc.*, 554 U.S. 269, 290 (2008) (approving assignment that transferred all "rights, title and interest"); *Northstar Fin. Advisors, Inc. v. Schwab Inv.*, No. 08-cv-4119, 2011 WL 1312044, at *4 (N.D. Cal. 2011) (allowing assignment of claims).

As for Allied Plumbing Plan's losses, Mr. Kiel's Certification clearly states that Mr. Kiel is asserting claims for his individual losses and "***as trustee for the [Allied Plumbing Plan].***" *See* June 13 Fox Declaration, Ex. E, n.1, Case 1:11-cv-02598-BSJ-HBP. To address any ambiguity over Mr. Kiel's authority, his Declaration submitted herewith clarifies that he is "authorized to act on" behalf of the Allied Plumbing Plan "***without seeking permission from any other person or entity***." *See* July 11 Fox Reply Declaration, Ex. B at ¶¶3-4. Given the scope of Mr. Kiel's authority and his status as a trustee of Allied Plumbing Plan, there is no reason that the Plan itself be named as a movant in order to have its losses represented by Mr. Kiel. *See* Hotel Ventures Group Opp. at 9 ("***but Plumbing Services has not moved*** to be appointed lead plaintiff").

*Seidel v. Noah Educ. Holdings Ltd.,* No. 08-cv-9203, 2009 WL 700782, at **3-4 (S.D.N.Y. Mar. 9, 2009), is instructive. In *Seidel*, a movant argued that an individual could not be appointed lead plaintiff because all relevant purchases were made by a trust. *See id.* at *3.

Refusing the movant's invitation to elevate form over substance, Judge Sullivan appointed the individual after he provided a declaration stating that he "is Trustee for the Trust [and] further represented to the Court that he is sole Trustee of the Trust, as well as being its sole beneficiary." *Id.* at *4. The court also dismissed speculative arguments questioning the individual's authority to pursue appointment as lead plaintiff. *See id.* ("[competing movant] adduces no evidence that [the individual] . . . ***does not have authority to act on behalf of the Trust***.").[9] Thus, there is no requirement that the Allied Plumbing Plan itself move when its trustee, who is fully authorized to recover losses on its behalf, is seeking to be appointed lead plaintiff. *Compare id.* at *3 *with* Hotel Ventures Group Opp. at 9.

**David Flor**. As stated in his certification (June 13 Fox Decl., Exhibit B), Mr. Flor is asserting claims on behalf of losses suffered in his and Country Neighbors, Inc.'s ("Country Neighbors") accounts. To clarify his authority over all asserted losses, Mr. Flor submits herewith a Declaration setting forth his role as Country Neighbors' president and sole shareholder. *See* July 11 Fox Reply Decl., Ex. C, ¶3. Mr. Flor's Declaration makes clear that he is able to assert claims for Country Neighbors' losses "without seeking permission from any other person or entity." *See id.* And that "any decision to move for appointment as lead plaintiff [by Country Neighbors] can (and is made) solely by [Mr. Flor]." *See id.* Other than Mr. Flor, Country Neighbors has no other officers, investors, shareholders, beneficiaries, directors or customers. Thus, it makes little sense to require Country Neighbors to seek appointment when Mr. Flor is the true party at risk. *See Grubb v. Federal Deposit Ins. Corp.*, 868 F.2d 1151, 1161-62 (10th Cir. 1989) (a shareholder had standing to assert claims for his company's losses under

---

[9] Compare Seidel, 2009 WL 700782, at *4 ("There are no facts before the Court that suggest Atkins is an inadequate or atypical lead plaintiff") with Wilkinson Group Opp. at 14 (stating that nothing is known about Allied Plumbing Plan's adequacy).

6

Section 10(b) because he "was the actual party at risk in the transaction"). *Cf. Chiaretti v. Orthodontic Ctrs. of Am., Inc.,* No. 03-cv-1027, 2003 U.S. Dist. LEXIS 25264, at *7 (E.D. La. Sept. 2, 2003) ("The argument that a trustee is not a purchaser of securities is rejected.").10

**Jan Brandewie**. Aside from a total of $9,000, Mr. Brandewie's entire loss – over $162,000 – was suffered personally by him.11 The $9,000 in additional losses were sustained by his sister and daughter, both of whom authorized Mr. Brandewie to assert claims on their behalf, before Mr. Brandewie moved for appointment as lead plaintiff. *See* Document 12, Exhibit C, n.1, Case 1:11-cv-02598-BSJ-HBP. *See also Huff*, 549 F.3d at 107 (no "particular form" is needed to transfer title or ownership). However, even if these losses are not included in Mr. Brandewie's losses, his financial interest is left largely intact.12

### 2. The Puda Coal Investor Group is Adequate

As discussed in its opposition brief and noted above, the Puda Coal Investor Group has provided the Court the necessary evidence to justify its appointment, including a Joint Declaration. *See generally,* Joint Decl.[13] Unlike the competing groups, only the Puda Coal

---

10 Competing movants' reliance on *Huff* to attack Mr. Flor's authority over Country Neighbors' losses [*see e.g.*, Hotel Ventures Group Opp. at 8] is questionable. *Huff* focused on situations where the actual purchaser is different from the beneficial owner. Here, they are one in the same. Unlike the investment advisor in Huff who does not suffer direct injuries if its clients are defrauded, a reduction in Country Neighbors' assets due to fraud directly impacts Mr. Flor and only Mr. Flor. *See Grubb*, 868 F.2d at 1161-62. In any case, in Huff the Second Circuit limited its discussion to cases involving named plaintiffs and expressly refused to expand its holding to cases involving the appointment of a lead plaintiff under the PSLRA. *See Huff*, 549 F.3d at 106 n.5 ("we need not decide when, in the context of a class action under the PSLRA, an investment advisor could qualify as a suitable lead plaintiff").

11 See Hotel Ventures Group Opp., Document No. 25, at 8 (questioning total of $9,000 in losses).

12 Unable to provide any actual evidence of N&D Faulkner's inadequacy, the Wilkinson Group's opposition includes a list of search results purportedly from "Google.com" and "http://ohuiginn.net/panama" on a Noel and Danielle Faulkner. *See* Wilkinson Group Opp. and Declaration, Documents Nos. 24, 24-1. The relevance of these Google results is not explained and the Wilkinson Group does not articulate how its Google results prove N&D Faulkner's inadequacy. *See In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 346-47 (S.D.N.Y. 2009) ("**google search results are insufficient**" to establish inadequacy). *See also* 15 U.S.C. §78u-4(a)(3)(B)(iii)(II).

13 The Wilkinson Group's argument against post-motion declarations is not supported by the PSLRA or its own cited authority. As discussed above, the key factors courts examine when considering whether to appoint a

Investor Group has jointly approved a negotiated fee schedule to limit attorneys' fees. *See* Joint Decl. at ¶ 17. The Puda Coal Investor Group's commitment to protect the class by aggressively negotiating (rather than simply accepting) a fee agreement further establishes the Group's adequacy and its ability to act independently of counsel. *See In re Cendant Corp. Litig.,* 264 F.3d 201, 265 (3d Cir. 2001); *see also Vandevelde*, 2011 WL 2580676, at *3.[14]

Moreover, the PSLRA does not require that a group be related in some way if it can establish its ability to effectively prosecute an action. *See Reimer v. Ambac Fin. Group, Inc.,* No. 08-cv-0411, 2008 WL 2073931, at *2 (S.D.N.Y. May 9, 2008) (describing cases disfavoring groups as "minority view"). Indeed, numerous courts have appointed small, cohesive groups with no pre-litigation relationship that have cooperated and agreed on their organization and conduct – just as the Puda Coal Investors Group has done here. *See e.g., Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 112, 118-19 (S.D.N.Y. 2010) (groups without a pre-litigation relationship may be acceptable); *Weltz v. Lee*, 199 F.R.D. 129, 133 (S.D.N.Y. 2001); *In re Oxford Health Plans Inc., Sec. Litig.*, 182 F.R.D. 42, 46 (S.D.N.Y. 1998).[15] Accordingly, the Court should reject the Blankenship Group's argument that a preexisting relationship is required.

---

group is its cohesiveness, organization and ability to manage counsel (and not the timing of a declaration). Moreover, the only case cited by the Wilkinson Group for the proposition that post-motion declarations are not permitted -- *Schriver v. Impac Mortg. Holdings, Inc.*, No. 06-cv-0031, 2006 U.S. Dist. LEXIS 40607 (C.D. Cal. May 2, 2006) [Wilkinson Opp. at 8] – does not support their argument. The full quote from the case actually states, "there is no reason the [the group] could not have submitted such evidence in connection with their initial motions ***or stipulation to combine into one group***." *Impac*, 2006 U.S. Dist. LEXIS 40607, at *27 n.10. Moreover, there is nothing in *In re Satyam Computer Services, LTD. Sec. Litig*. that even remotely suggests that a lead plaintiff must file a declaration contemporaneously with a lead plaintiff motion. Accordingly, the Joint Declaration is properly before the Court.

[14] *See* Puda Coal Investor Group Opp., Document 27 at 7-10.

[15] Moreover, the record before the Court concerning the Puda Coal Investor Group's cohesiveness and ability to organize and lead this litigation, as set forth in the Joint Declaration, stands in stark contrast to the groups found deficient by the authorities cited by the competing lead plaintiff movants in support of their arguments. *See In re McDermott Int'l Sec. Litig.*, No. 08-cv-9943, 2009 U.S. Dist. LEXIS 21539, at *9, **14-15 (S.D.N.Y. Mar. 6, 2009) (rejecting lead plaintiff group that was formed after motions for lead plaintiff were filed); *Impac*, 2006 U.S. Dist. LEXIS 40607, at *20 (same); *In re Level 3 Comm., Inc. Sec. Litig.*, No. 09-cv-0200, 2009 U.S. Dist. LEXIS 44706

Finally, deficiencies with the Hotel Ventures Group's motion – *e.g.*, no evidence of a fee agreement, willingness to abandon the group's motion, no explanation about the Pomerantz law firm's role and whether each member of the Hotel Ventures Group knows that the Pomerantz Firm has been designated "Counsel for Plaintiffs", and no evidence that its members knew about their joint motion and agreed to jointly moving ***before*** their lead plaintiff motion was filed – renders each of the members *individually* inadequate.[16]

For these reasons, only the Puda Coal Investor Group is adequate and all competing group motions should be denied.

### 3. The Puda Coal Investor Group is Typical

The Blankenship Group speculates about the adequacy of Agarwal, Brandewie and Flor 1) because each purchased Puda Coal common stock after certain risks concealed by Puda Coal began to materialize to the market on April 8, 2011 through a short-seller's report questioning certain conduct of the Company's CEO, ***but before the end of the Class Period***; and 2) according to the Blankenship Group, Mr. Brandewie is an "options trader." Document 38, at 9-12.

Agarwal, Brandewie and Flor purchased after a partial disclose on April 8, 2011, but before the end of the Class Period. There is nothing atypical about investors purchasing shares before a fraud is fully revealed. *See e.g., In re Tronox*, 262 F.R.D. at 345-46; *In re LDK Solar Sec. Litig.*, 255 F.R.D. 519, 528-30 (N.D. Cal. 2009). Indeed, even the Blankenship Group acknowledges that purchasers after April 8, 2011 are members of the class. *See* Document 9, at 5 (noting in the Blankenship Group's opening brief that "[t]he class consists of those investors

---

(D. Colo. May 4, 2009) (rejecting group failing to explain, *inter alia*, how its members would function collectively and how disputes would be resolved).

[16] Accordingly, the Hotel Venture Group's argument (Opp. at 11-12) that because one of its members has the largest financial interest in the litigation, the group should be appointed, is off the mark as it completely ignores that individually each member has irreparable disqualifying infirmities.

who purchased Puda securities between November 13, 2009, and April 11, 2011 (the 'Class Period')."[17]

Further, the Blankenship Group argues that Brandewie is an atypical options trader. But the record is clear that Brandewie only engaged in transactions in Puda Coal common stock during the Class Period.[18] He did not purchase or sell *any* options *during* the Class Period (*see* June 13 Fox Declaration, Exhibits C, H); rather, *a fraction* of his Class Period trades resulted from the sale of Puda stock. *Id.* (options transactions resulted in Class Period sales of 1,200 Puda Coal common shares). There is nothing to establish that these handful of options trades render Mr. Brandewie inadequate. *See Freudenberg v. E*Trade Financial Corp.*, No. 07-cv-8538, 2008 WL 2876373, at *6 (S.D.N.Y. Jul. 16, 2008) ("Courts have also certified options traders"). Indeed, Mr. Brandewie's significant loss establishes his typicality in all respects.

## III. CONCLUSION

For the foregoing reasons and the reasons set forth in the Puda Coal Investor Group's opening and opposition briefs (Documents 11, 27), the Puda Coal Investors Group respectfully requests that the Court grant its motion in all respects.

Dated: July 11, 2011

Respectfully submitted,

/s/ *Frederic S. Fox*
**KAPLAN FOX & KILSHEIMER LLP**
Frederic S. Fox
Jeffrey P. Campisi
850 Third Avenue, 14th Floor
New York, NY 10022
Telephone: (212) 687-1980

---

[17] In making this argument, the Blankenship Group has shown it is willing to put its own interests above the best interests of the proposed class. Such self-serving arguments spotlight the Blankenship Group's inadequacy to represent the proposed class in this action. The Blankenship Group's motion should be denied for this reason alone.

[18] The Blankenship Group's authority is distinguishable. *See Starkman v. Warner Comm's, Inc.*, 671 F. Supp. 297, 298 (S.D.N.Y. 1987) (involving claims of plaintiff that only purchased options); *Laventhall v. Gen. Dynamics Corp.*, 704 F.2d 407, 408 (8th Cir. 1983) (same); *In re Elan Corp. Sec. Litig.*, No 08-cv-8761, 2009 U.S. Dist. LEXIS 39859, at *6 (S.D.N.Y. May 8, 2009) (finding trader who traded exclusively in call options was atypical).

Facsimile: (212) 687-7714

-and-

**KESSLER TOPAZ
MELTZER & CHECK, LLP**
Sean M. Handler
Naumon A. Amjed
Ryan T. Degnan
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

*Counsel for Puda Coal Investor Group and
Proposed Co-Lead Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on July 11, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List.

I certify under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on July 11, 2011 in New York.

*/s/ Frederic S. Fox*
Frederic S. Fox