UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------x
                                          :
HARRIET GOLDSTEIN, Individually and on    :
Behalf of All Others Similarly Situated,  :
                                          :
                    Plaintiff,            :
                                          :     11 Civ. 02598
          v.                              :     (BSJ)(HBP)
                                          :
                                          :     **MEMORANDUM AND ORDER**
PUDA COAL, INC., et al.                   :
                                          :
                    Defendant.            :
------------------------------------------x

**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

The present matter involves eleven related cases brought

against Puda Coal, Inc. ("Puda").[1] Although all eleven cases

have been brought against Puda, the Complaints vary with respect

to other named defendants. Examining all of the Complaints

together, it appears that they collectively state causes of

action against seven of Puda's current and former officers and

---

[1]

| Docket Number | Case Name | Date Filed |
|---------------|-----------|------------|
| 11 CV 2598 | *Goldstein v. Puda Coal, Inc. et al* | April 15, 2011 |
| 11 CV 2608 | *Tallant v. Puda Coal, Inc. et al* | April 15, 2011 |
| 11 CV 2609 | *Weissmann v. Puda Coal, Inc. et al* | April 15, 2011 |
| 11 CV 2657 | *Alexander v. Zhao et al* | April 19, 2011 |
| 11 CV 2660 | *Rosenberger v. Puda Coal, Inc. et al* | April 19, 2011 |
| 11 CV 2666 | *Korach v. Puda Coal, Inc. et al* | April 14, 2011 |
| 11 CV 2695 | *Kendall et al v. Puda Coal, Inc. et al* | April 20, 2011 |
| 11 CV 4266 | *LaDuca v. Puda Coal, Inc. et al* | June 23, 2011 |
| 11 CV 5189 | *Burquist v. Puda Col Inc. et al* | April 21, 2011 |
| 11 CV 5190 | *Thumith v. Puda Coal, Inc. et al* | June 7, 2011 |
| 11 CV 5259 | *Lin v. Puda Coal Inc. et al* | April 14, 2011 |

directors,[2] as well as, the underwriters of Puda's 2010 stock offering.[3]  The shareholder plaintiffs in all eleven cases bring federal securities class actions on behalf of investors who purchased common stock of Puda.  The majority of the Complaints define the class as investors who purchased Puda securities between November 13, 2009, and April 11, 2011 (the "Class Period").  Two of the Complaints, however, define their classes as investors who purchased Puda securities between a slightly narrower range of dates.[4]

Nine individual and groups of investors initially filed motions to consolidate the related actions, to be appointed as lead plaintiff, and to designate their lawyers as lead counsel. One group of investors, consisting of the Connie L. Douglass

---

[2] Defendant Ming Zhao ("Zhao") served, from July 15, 2005 to June 25, 2008, as Puda's President and Chief Executive Officer ("C.E.O").  Zhao has also served on Puda's Board of Directors from July 15, 2005 to present.  Defendant Liping Zhu ("Zhu") joined Puda on June 25, 2008 and now serves as Puda's President and C.E.O., as well as a director.  Defendant Qiong "Laby" Wu ("Wu") became Puda's Chief Financial Officer on July 23, 2008.  Defendant Yao Zhao is the brother of Defendant Zhao and was a manager of Puda and a beneficial owner of 5% or more of its outstanding common shares.  Defendant Jianfei Ni ("Ni") was appointed to Puda's board of directors on June 29, 2007.  Defendant C. Mark Tang ("Tang") joined Puda's board of directors on October 9, 2007, on which he is a member and Chairman of Puda's nominating and corporate governance committee, as well as a member of Puda's audit and compensation committees. Defendant Lawrence S. Wizel ("Wizel") joined Puda's board of directors on August 3, 2007, on which he served as a member and Chairman of Puda's audit committee, as well as a member of the compensation and nominating and corporate governance committees.

[3] Defendants Brean Murray, Carret & Co., LLC ("Brean")and Macquarie Capital (USA) Inc. ("Macquarie") (collectively the "Underwriter Defendants") underwrote Puda's December 8, 2010 stock offering.

[4] Plaintiff in Rosenberger v. Puda Coal, Inc. et al. defines its class of investors as those who purchased Puda securities between November 15, 2009 and April 11, 2011, whereas, Plaintiff in Lin v. Puda Coal Inc. et al., defines its class as investors who purchased Puda securities between November 13, 2009 and April 8, 2011.

1996 Revocable Trust, Trinity Global Growth & Income Fund, L.P.,
and Greg and Jana Womack Living Trust (collectively the "Womack
Group"), has now withdrawn their motion. Three other movants,
Ho Wing Sit, Cesare Crognale, and the Puda Coal Shareholder
Group,[5] concede in their responses that they do not have the
largest financial interest in the relief sought by the class.
Although these three movants all express a readiness to assume
the role of lead plaintiff, they have revised their original
submissions to acknowledge that their motions to be appointed as
lead plaintiff are contingent on the Court first finding that
the movants with larger financial interests are unwilling or
unable to satisfy the Private Securities Litigation Reform Act
of 1995 ("PSLRA") requirements of appointment. Finally, one
movant, Sal LaDuca has never filed a responsive motion to the
briefs opposing his selection as lead plaintiff, nor has he
filed any objections to the competing motions.

As a result of the subsequent responsive filings, in
addition to the nine outstanding motions to consolidate the
related actions, there remain four investor groups seeking to be
appointed as lead plaintiff and to designate their lawyers as
lead counsel. The four movants who continue to seek appointment
as lead plaintiff are: Salomón Querub, Howard Pritchard, and

---

[5] The Puda Coal Shareholder Group is composed of three unrelated investors:
Charles Irle, Steve McManus, William Harrison, and Jack Hoffman.

Hotel Ventures LLC (the "Querub Group"); N&D Faulkner, Ltd., A. David Flor, Jan Louis Bradewie, Avadhesh Agarwal, and Michael Kiel (the "Puda Coal Investor Group"); Donald Wilkinson and Robert Thumith ("Wilkinson and Thumith"); and Kayla Clarke Blankenship, Jo Blankenship, and Samuel Aaron Blankenship (the "Blankenship Family Group").  The Court now turns to all of the outstanding motions.

**FACTUAL BACKGROUND**

Puda is a Delaware corporation with its headquarters in Taiyuan, which is a city in the Shanxi Province of northern China.  It supplies premium cleaned coal used to produce coke for steel manufacturing in China.  Puda was traded on the American Stock Exchange ("AMEX") during the Class Period.

From November 2009 through 2010, Puda stated in public statements and filings with the Securities and Exchange Commission ("SEC") that its only business operations were conducted by a separate Chinese corporate entity, Shanxi Puda Coal Group Co., Ltd. ("Shanxi Coal"), which owns all of Puda's reported mining assets, coal washing plants, cash and receivables.  In these statements, Puda represented that it controlled Shanxi Coal through a 90% indirect equity ownership stake.  Additionally, Puda made various representations regarding the accuracy of both its published financial statements and the descriptions of its operations.

4

On December 8, 2010, Puda conducted an offering of its securities (the "Offering") and filed with the SEC a series of Registration Statements and Prospectuses (collectively, the "Offering Materials"). Through the Offering, Puda sold 9 million shares of Puda stock to investors at a price of $12.00 per share, resulting in total proceeds of $108 million. The Offering Materials incorporated by reference the materials that Puda had previously filed with the SEC in 2009 and 2010.

Throughout the early part of 2011, Puda's public statements and SEC filings continued to paint a picture of the company consistent with the earlier representations from 2009 and 2010.

On April 8, 2011, Alfred Little ("Little"), an investor who researches and blogs about Chinese companies, reported that Puda did not actually indirectly own Shanxi Coal (the "Little Article"). Little further reported that, in contradiction of Puda's public statements, Defendants Ming Zhao ("Zhao") and Yao Zhao had transferred Puda's assets such that Puda had become an empty shell company as early as September 2009. On April 8, 2011, Puda issued a press release announcing that it was currently reviewing the allegations regarding improper share transactions by Zhao. In reaction to the Little Article and the press release, shares of Puda stock declined more than 34% on April 8, 2011.

On April 11, 2011, Puda announced in a press release that it had unanimously ratified the Audit Committee's decision to launch a full investigation into the allegations raised in the Little Article. In addition, the press release noted that "evidence supports the allegation that there were transfers by Mr. Zhao in subsidiary ownership that were inconsistent with disclosure made by the Company in its public securities filings." In response to the announcement, trading in Puda stock was halted on April 11, 2011.

## CONSOLIDATION

Federal Rule of Civil Procedure 42(a) provides that "[i]f actions before the court involve a common question of law or fact, the court may ... consolidate the actions ...." Fed. R. Civ. P. 42(a). Trial courts retain broad discretion in determining whether or not consolidation is appropriate. Ellenburg III v. JA Solar Holdings Co., Ltd., et al., 262 F.R.D. 262, 264 (S.D.N.Y. 2009) (citing Johnson v. Celotex Corp., 899 F.2d 1281, 1284 (2d Cir.1990)).

The Court finds that consolidation is appropriate here. The movants each seek consolidation and no party has raised any opposition to consolidation. In addition, the allegations supporting the claims asserted in each class action are almost identical. See Sofran v. LaBranche & Co., Inc., 220 F.R.D. 398, 401 (S.D.N.Y.2004) (consolidating securities fraud class actions

6

where both groups of plaintiffs requested consolidation and each
action "assert[ed] essentially similar and overlapping claims
brought on behalf of purchasers of [the defendant's] securities
[during the class period] who purchased in reliance of the
materially false and misleading statements and omissions at all
relevant times"). All of the Complaints turn on allegations
that defendants failed to disclose or indicate that: (1) Puda's
Chairman engaged in unauthorized transfers of the ownership of
Shanxi Coal; (2) such transfers were not disclosed to investors;
(3) Puda's ownership stake in Shanxi coal was substantially less
than what Puda detailed to investors; (4) Puda improperly
consolidated Shanxi Coal's financial results into Puda's
financial results; (5) Puda lacked adequate internal controls;
(6) Puda's financial statements were materially false and
misleading at all relevant times; and (7) the materials
disseminated in connection with the Offering were materially
misleading when issued. While the Court acknowledges that there
are minor differences in the Complaints, since the underlying
factual and legal questions appear to be indistinguishable,
these differences do not recommend against consolidation. See
Kaplan v. Gelfond, et al., 240 F.R.D. 88, 91 (S.D.N.Y. 2007)
("Differences in causes of action, defendants, or the class
period do not render consolidation inappropriate if the cases
present sufficiently common questions of fact and law, and the

differences do not outweigh the interests of judicial economy served by consolidation.") Furthermore, given that no party has objected, the Court finds it unlikely that any party will suffer prejudice as a result of consolidation. Id. at 91 ("[W]e note that all the movants support consolidation and that no party objects, a consideration which weighs heavily against the potential for prejudice.") The Court therefore grants the motions to consolidate.

## LEAD PLAINTIFF

### Procedure

Having granted the motions to consolidate, the Court now turns to the question of who should be appointed lead plaintiff in the consolidated class action. "Under the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), the district court must 'appoint as lead plaintiff the member or members that the court determines to be most capable of adequately representing the interests of class members ....'" Ellenburg, 262 F.R.D. at 265 (citing 15 U.S.C. § 78u-4(a)(3)(B)(i)). In order to determine which class member is "most capable of adequately representing" the interests of the class, the Court engages in a two-step process.

"The first step establishes as presumptive lead plaintiff the person or group of persons who meet(s) the following three criteria: (1) the candidate must have filed the complaint or

8

made a motion in response to a notice; (2) the candidate must have the largest financial interest in the relief sought by the class, and (3) the candidate must otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure."  In re Tronox, Inc. Secs. Litig., 262 F.R.D. 338, 343-44 (S.D.N.Y. 2009) (internal citations omitted).

Having identified the presumptive lead plaintiff through the first step, the Court takes the second step of providing other members of the class with the opportunity to rebut the presumptive designation.  "In order to rebut the designation, class members must prove either that the presumptive lead plaintiff will not fairly and adequately protect the interests of the class or is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  Id. at 344 (internal citations omitted).

Should the Court decide that the original presumptive lead plaintiff has been successfully rebutted, that candidate is disqualified and the Court will return to the first phase of the process to identify a new presumptive lead plaintiff.  This process repeats itself until a candidate succeeds in both the first and second phases of the process.  See Id.

### Presumptive Lead Plaintiff

In the instant action, all four of the proposed lead plaintiffs filed timely motions in response to a notice, thereby

9

satisfying the first prong of the inquiry into the presumptive
lead.  The Court therefore looks first to the financial
interests of each candidate.

### *Largest Financial Interest*

The PSLRA does not specify how a financial interest in the
litigation is to be determined, but courts have looked at four
factors to determine which plaintiff has the greatest financial
interest in the outcome of a securities litigation: "(1) the
number of shares purchased during the class period; (2) the
number of net shares purchased during the class period; (3) the
total net funds expended during the class period; and (4) the
approximate losses suffered ...." Ellenburg, 262 F.R.D. at 265
(citing In re eSpeed, Inc. Sec. Litig., 232 F.R.D. 95, 100
(S.D.N.Y.2005)).  Of these four factors, financial loss is the
most important element of the analysis.  See Varghese et al., v.
China Shenghuo Pharm. Holdings, Inc. et al., 589 F. Supp. 2d
388, 395 (S.D.N.Y. 2008) ("Financial loss, the last factor, is
the most important element of the test.")

The Court finds that, having suffered a collective
financial loss of over $2 million, the Querub Group has the
largest financial interest in the outcome of the litigation.  To
the extent that competing movants have challenged the size of
the Querub Group's financial loss on the basis that the group

should be disaggregated, the Court finds these arguments
unavailing.  As discussed in further detail in the next section,
the Court finds that the Querub Group is a proper group to be
selected as lead plaintiff under the PSLRA.  Having decided that
aggregation is appropriate, the collective losses of the Querub
Group clearly constitute the largest financial loss of any
movant.  Furthermore, although the Blankenship Family Group and
the Puda Coal Investor Group have contested the proper
calculation of the losses suffered by individual members of the
Querub Group, the Court need not resolve this dispute.  Once
aggregated, the Querub Group suffers the greatest losses even
adopting the valuations proposed by competing movants.  See Id.
at 397 ("[T]he Court need not resolve the proper formula for
calculating the approximate losses suffered in this case, as
Bennett has suffered greater losses under both proposed
valuations.")

### Requirements under Rule 23

In order to satisfy the requirements under Rule 23 of the
Federal Rules of Civil Procedure, the prospective lead plaintiff
must demonstrate at the consolidation stage both "typicality"
and "adequacy."  See Constance Sczesny Trust v. KPMG LLP, et
al., 223 F.R.D. 319, 323-4 (S.D.N.Y. 2004).  "The typicality
threshold is satisfied where the claims arise from the same
conduct from which the other class members' claims and injuries

11

arise." Foley v. Transocean Ltd., et al., 272 F.R.D. 126, 131 (S.D.N.Y. 2011). "The adequacy requirement is satisfied where: (1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." Id.

The Court finds that the Querub Group's claims arise from the same fraudulent conduct as the other class members' claims and injuries. The Court also notes that there have been no challenges to the adequacy of the Querub Group's chosen counsel, its lack of conflict with the class, and its sufficiency of interest. Competing movants have, however, raised several otherconcerns regarding both the typicality and adequacy of the Querub Group. These concerns are that (1) the group is atypical because Salomón Querub purchased shares following the April 8, 2011 Little Article reporting the fraud; (2) investors, like Hotel Ventures LLC ("Hotel Ventures"), who traded options cannot represent the class; and (3) the group is improperly aggregated.

Purchases following April 8, 2011

The Blankenship Family Group has argued that any investor, like Querub Group member Salomón Querub, who purchased Puda stock after the fraud was initially reported in the Little Article on April 8, 2011, cannot serve as lead plaintiff. This

12

argument rests on an assumption that such investors could not
have relied on market information in their purchase of Puda
stock.  Since the claims in this case rest on a theory of fraud
on the market, it follows that such investors are atypical of
the class and cannot satisfy Rule 23's typicality requirement.
The Court does not agree that Puda stock purchases following the
publication of the Little Article are *prima facie* atypical or
made without reliance on the market.

Although the Little Article made allegations regarding the
underlying fraud, at the time of its publication, the article
was merely a third-party report that remained unconfirmed by
Puda itself.  Since the article could not "actually concede[]
the existence of the fraudulent schemes at issue in this
litigation," such a disclosure cannot have provided "any
curative disclosure."[6]  Dietrich v. Bauer, 192 F.R.D. 119, 125 n.
1 (S.D.N.Y. 2000).  See also In re Ronox, Inc. Secs. Litig., 262
F.R.D. 338, 346 (S.D.N.Y. 2009) (Finding that purchases
following partial corrective disclosures that do not
"sufficiently correct…prior false and misleading statements" do
not render proposed lead plaintiff atypical.)  In addition,
given that the Blankenship Family Group has itself proposed a

---

[6] The Blankenship Family Group points to the Little article as evidence of an
April 8, 2011 disclosure that "Puda gave away the company and converted
itself into a holding company," but their briefs notably do not make any
reference to a specific disclosure by Puda itself on that date.  Indeed,
Puda's own public statements on April 8, 2011 acknowledged only that the
company was looking into the allegations of the Little Report.

class period that extends until the date of Puda's corrective
disclosure on April 11, 2011, the Court disagrees that purchases
made following the publication of the Little Article on April 8,
2011 would be atypical of those made by other class members.
See Memorandum of Law in Support of the Motion to Consolidate
Related Cases, to Appoint the Blankenship Family as Lead
Plaintiff, and to Approve the Selection of Lead Counsel, Korach
v. Puda Col, Inc., et al., No. 11 Civ. 2666 at 1 (S.D.N.Y. June
13, 2011).

Options Trading

Along with its arguments regarding purchases after April 8,
2011, the Blankenship Family Group has also challenged the
Querub Group's appointment on the basis that its member Hotel
Ventures is an atypical investor because of its sale of put
options in Puda Stock. Citing Laventhall v. Gen. Dynamics
Corp., 704 F.2d 407 (8th Cir. 1983), and a number of cases from
this district, the Blankenship Family Group argues that
individuals who trade in options cannot be considered typical of
a class of shareholders. See In re Elan Corp. Sec. Litig., No.
08-cv-8761, 2009 U.S. Dist. LEXIS 39859, at *6 (S.D.N.Y. May 8,
2009); Andrada v. Atherogenics, Inc., No. 05 Civ. 00061, 2005
U.S. Dist. LEXIS 6777 (S.D.N.Y. Apr. 18, 2005); and Starkman v.
Warner Commc'n, Inc., 671 F. Supp. 297 (S.D.N.Y. 1987). The
Court finds that the cases cited by the Blankenship Family Group

14

are inapplicable to its consideration of the Querub Group.  In
contrast to the plaintiffs in the cases cited by the Blankenship
Family Group, Hotel Ventures traded in both common stock and
options during the class period.  The Court also notes that
investors who traded in options can be appointed lead plaintiff
when the focus of the typicality analysis is, as here, "whether
the same or similar injuries arose out of or were caused by
Defendants' alleged wrongful course of conduct."  In re Oxford
Health Plans, Inc. Sec. Litig., 199 F.R.D. 119, 123-24 (S.D.N.Y.
2001).  See also In re Donkenny Inc. Sec. Litig., 171 F.R.D. 156
(S.D.N.Y. 1997).

Proper "Group"

     The PSLRA expressly permits a "person or group of persons"
to be appointed lead plaintiff.  15 U.S.C. § 78u-
4(a)(3)(b)(iii)(I).  The PSLRA does not, however, define how
members of a "group" should be related to one another.
Varghese, 589 F. Supp. 2d at 392.  Although there is some
disagreement amongst district courts as to whether unrelated
investors can form a "group of persons" that may be appointed
lead plaintiff, the majority of courts "have adopted an
intermediate position, permitting unrelated investors to join
together as a group seeking lead-plaintiff status on a case-by-
case basis."  Id.  Although courts will resist appointing as
lead plaintiff a group that is "simply an artifice cobbled

15

together by cooperating counsel for the obvious purpose of creating a large enough grouping of investors to qualify as lead plaintiff," "a group consisting of persons that have no pre-litigation relationship may be acceptable as a lead plaintiff candidate so long as the group is relatively small and therefore presumptively cohesive." Janbay v. Canadian Solar, Inc., et al., 272 F.R.D. 112, 119 (S.D.N.Y. 2010).

In the instant action, the competing movants have primarily argued that the Querub Group is an improperly aggregated group because: (1) its members lack a pre-existing relationship, and (2) its original motion papers provided insufficient information regarding the group and its members. Additionally, the competing movants have also raised concerns regarding: (1) the Querub Group's willingness to sever in order to serve as individual lead plaintiffs; and (2) the group's decision to put forward only two of their retained law firms as co-lead counsel, leaving the third firm with the designation of "Counsel for Plaintiffs."

None of these arguments leads the Court to find that the Querub Group fails to satisfy the requirements of Rule 23. With the exception of the Blankenship Family Group, whose aggregate financial loss is less than the loss of any single member of the Querub Group, none of the proposed lead plaintiffs have a relationship outside of this litigation. In addition, although

16

these materials were not submitted when their motion to appoint

lead plaintiff was first filed, all three members of the Querub

Group have now submitted sworn declarations which describe: why

the individual members chose to work as a group; how the group

intends to function collectively, including how they plan to

communicate; the protocol the group will use to address

disagreements; background information regarding individual

members of the group; and the members' willingness to accept the

role and responsibilities of lead plaintiff.

With respect to concerns regarding the Querub Group's

willingness to sever and the roles played by its various

counsel, the Court finds these arguments unpersuasive.

Particularly in light of the degree to which the Querub Group's

individual financial losses dwarf those of the competing

movants, the arguments raised on these two issues do not lead

the Court to find that the Querub Group is inadequate to serve

as lead plaintiff.

Individual Querub Group members, Salomón Querub and Howard

Pritchard, have the largest and second-largest individual losses

of any of the competing movants. Furthermore, Salomón Querub's

individual losses exceed all but one of the competing movants'

collective losses. The single competing movant whose collective

losses rival Salomón Querub's is the Puda Coal Investor Group,

and this group only manages to achieve its collective loss

17

figure by aggregating a long list of individual shareholder

interests, none of whom has an interest which is even half of

Salomón Querub's.

Given that the Querub Group has now submitted evidence that

its unrelated members "will be able to function cohesively and

to effectively manage the litigation apart from their lawyers,"

Janbay, 272 F.R.D. at 119, the degree to which Salomón Querub's

losses overshadow those of the other movants further supports

the Court's appointment of the Querub Group as lead plaintiff.

See Freudenberg v. E*Trade Fin. Corp., et al., No. 07 Civ. 8538,

2008 WL 2876373, at *5 (S.D.N.Y. July 16, 2008) ("The

appropriateness of KSG's appointment is further supported by the

fact that, as noted above, Straxton's [individual member of KSG]

losses alone would qualify it as the party with the largest

financial interest in the litigation.")  The Court therefore

finds that the Querub Group is properly a group for purposes of

appointment as lead plaintiff under the PSLRA.

## Rebutting Presumption of Adequacy

Finally, in an attempt to rebut the Querub Group's status

as presumptive lead plaintiff, Wilkinson and Thumith argue that

the Querub Group will be subject to the unique defense that the

group lacks standing.  Wilkinson and Thumith base this argument

on their claim that the Querub Group's original motion papers

provide insufficient information regarding the relationship

18

between Derek Stebner ("Stebner"), signatory to Hotel Ventures'
certification, and Hotel Ventures.  In light of the fact that
the motion was filed on behalf of Hotel Ventures and Stebner is
the sole owner of Hotel Ventures, the Court finds that Wilkinson
and Thumith have failed to rebut the Querub Group's presumptive
lead plaintiff status.

**APPOINTMENT OF LEAD COUNSEL**

The Querub Group has selected the Rosen Law Firm P.A. and
Glancy Binkow & Goldberg LLP as co-lead counsel.  The PSLRA
provides that "[t]he most adequate plaintiff shall, subject to
the approval of the court, select and retain counsel to
represent the class."  15 U.S.C. § 77z-1(a)(3)(B)(v).  "Courts,
however, may decline to approve Lead Plaintiff's suggested
counsel "to protect the interests of the class." Ferrari v.
Impath, Inc., et al., No. 03 Civ. 5667, 2004 WL 1637053 at *7
(S.D.N.Y. July 20, 2004) (internal citations omitted).

Since the Court finds the Querub Group's choice of counsel
qualified to prosecute this securities class action, and has
received no objections with respect to counsel's qualifications,
the Court approves the selection of the Rosen Law Firm P.A. and
Glancy Binkow & Goldberg LLP as co-lead counsel.

**CONCLUSION**

Having considered the motions for consolidation,
appointment of lead plaintiff, and lead counsel, the Court

consolidates the actions listed in footnote 1, appoints Salomón
Querub, Howard Pritchard and Hotel Venutures LLC as Lead
Plaintiffs, and approves the selection of the Rosen Law Firm
P.A. and Glancy Binkow & Goldberg LLP as Co-Lead Counsel.

**The parties are advised that the Court has also entered on
today's date a separate Case Management Order in this case.  The
Case Management Order provides for deadlines and filing
instructions to be followed by the parties moving forward.**

The Clerk of the Court is directed to terminate the
following motions:

- From Docket 11-CV-2598, the following ECF documents: 7, 10, 13, and 16.

- From Docket 11-CV-2608, ECF document 14.

- From Docket 11-CV-2609, ECF document 9.

- From Docket 11-CV-2657, ECF document 16.

- From Docket 11-CV-2660, ECF document 10.

- From Docket 11-CV-2666, the following ECF documents: 8, 11, 14, 19, 20, 25, 28.

- From Docket 11-CV-2671, ECF document 5.

- From Docket 11-CV-2695, ECF document 8.

**SO ORDERED:**

Dated:    New York, New York
          December 6, 2011

BARBARA S. JONES
United States District Judge