**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE PUDA COAL SECURITIES INC.
*et al.* LITIGATION

Case No: 1:11-CV-2598 (BSJ)(HBP)

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS C. MARK TANG AND LAWRENCE WIZEL'S MOTION TO DISMISS PLAINTIFFS' CORRECTED CONSOLIDATED COMPLAINT

GOODWIN PROCTER LLP
Richard M. Strassberg
Mary K. Dulka
Maryana Zubok
The New York Times Building
620 Eighth Avenue
New York, NY 10018
(212) 813-8800

*Attorneys for Defendants*
*C. Mark Tang and Lawrence Wizel*

Dated: June 1, 2012

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ........................................................................................1

STATEMENT OF PLAINTIFFS' ALLEGATIONS ......................................................4

    A.    The Parties ..........................................................................................4

    B.    Plaintiffs' Allegations .........................................................................6

    C.    Plaintiffs' Claims ...............................................................................7

ARGUMENT ...............................................................................................................8

I.    PLAINTIFFS FAIL TO STATE A CONTROL PERSON CLAIM AGAINST
THE INDEPENDENT U.S. DIRECTORS UNDER SECTION 20(A) OF THE
1934 ACT ...............................................................................................8

    A.    Culpable Participation Is A Pleading Requirement For A Section 20(a)
Claim...................................................................................................8

    B.    Plaintiffs' Section 20(a) Claim Must Be Dismissed Because The
Complaint Fails To Plead With Particularity The Independent U.S.
Directors' Culpable Participation In The Alleged Fraudulent Scheme ................11

II.    PLAINTIFFS FAIL TO STATE A CLAIM AGAINST THE INDEPENDENT
U.S. DIRECTORS UNDER SECTION 11 OF THE 1933 ACT....................................14

    A.    Because Plaintiffs' Section 11 Claim Sounds In Fraud And Fails To
Satisfy Rule 9(b)'s Heightened Pleading Standard, It Must Be Dismissed..........14

    B.    The Section 11 Claim Must Also Be Dismissed Because It Is Apparent
From The Face Of The Complaint That The Independent U.S. Directors
Did Not Know About The Fraudulent Transfer At The Time Of The
December Offering ...............................................................................19

III.    PLAINTIFFS FAIL TO STATE A CONTROL PERSON CLAIM AGAINST
THE INDEPENDENT U.S. DIRECTORS UNDER SECTION 15 OF THE 1933
ACT......................................................................................................22

    A.    Because Plaintiffs' Section 15 Claim Sounds In Fraud And Fails To
Satisfy Rule 9(b)'s Heightened Pleading Standard, It Must Be Dismissed..........22

    B.    Plaintiffs' Section 15 Claim Against The Independent U.S. Directors
Should Also Be Dismissed For Failure To Plead Culpable Participation ............23

i

C.    The Independent U.S. Directors' Affirmative Defense That They Lacked Knowledge Of The Fraudulent Transfers Is Apparent From The Face Of The Complaint, Requiring Dismissal Of The Section 15 Claim ..........................24

CONCLUSION.................................................................................................................24

LIBNY/5202087.1

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*In re AXIS Capital Holdings Ltd. Sec. Litig.*,
  456 F. Supp. 2d 576 (S.D.N.Y. 2006)....................................................................15, 16, 17, 18

*Boguslavsky v. Kaplan*,
  159 F.3d 715 (2d Cir. 1998).....................................................................................................9

*Ellison v. Am. Image Motor Co., Inc.*,
  36 F. Supp. 2d 628 (S.D.N.Y. 1999)................................................................................. 9-10

*Fisher v. Ross,*
  No. 93 CIV. 0275 (JGK), 1996 WL 586345 (S.D.N.Y. Oct. 11, 1996) ................................20

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  308 F. Supp. 2d 249 (S.D.N.Y. 2004)...................................................................................20

*Gibbons v. Malone,*
  801 F. Supp. 2d 243 (S.D.N.Y. 2011)...................................................................................13

*Iowa Pub. Emp. Ret. Sys. v. MF Global, Ltd.*,
  620 F.3d 137 (2d Cir. 2010)........................................................................................... 21, 24

*Janbay v. Canadian Solar, Inc.*,
  No. 10 Civ. 4430 (RWS), 2012 WL 1080306 (S.D.N.Y. Mar. 30, 2012) ........................... 8-9

*In re JP Morgan Chase Sec. Litig.*,
  363 F. Supp. 2d 595 (S.D.N.Y. 2005)............................................................................. 19-20

*Ladmen Partners, Inc. v. Globalstar, Inc.*,
  No. 07 Civ. 0976 (LAP), 2008 WL 4449280 (S.D.N.Y. Sept. 30, 2008)................... 15, 16-17

*Levine v. AtriCure, Inc.*,
  594 F. Supp. 2d 471 (S.D.N.Y. 2009).....................................................................................21

*In re Livent, Inc. Sec. Litig.,*
  78 F. Supp. 2d 194 (S.D.N.Y. 1999).................................................................................10, 14

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
  501 F. Supp. 2d 452 (S.D.N.Y. 2006)............................................................... 16, 18, 22-23

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
  272 F. Supp. 2d 243 (S.D.N.Y. 2003).....................................................................................21

LIBNY/5202087.1

*Mishkin v. Ageloff*,
No. 97 Civ. 2690 LAP, 1998 WL 651065 (S.D.N.Y. Sept. 23, 1998) ....................................9

*Pani v. Empire Blue Cross Blue Shield*,
152 F.3d 67 (2d Cir. 1998)........................................................................................21

*Police & Fire Ret. Sys. of the City of Detroit v. SafeNet, Inc.*,
645 F. Supp. 2d 210 (S.D.N.Y. 2009)........................................9, 10-11, 18-19, 23

*Pub. Employees' Ret. Sys. of Miss. v. Merrill Lynch & Co. Inc.*,
714 F. Supp. 2d 475 (S.D.N.Y. 2010)........................................................................23

*Rombach v. Chang*,
355 F.3d 164 (2d Cir. 2004)............................................................................ 15, 16, 18

*Schoenhaut v. Am. Sensors, Inc.*,
986 F. Supp. 785 (S.D.N.Y. 1997)................................................................15, 19

*Scibelli v. Roth*,
No. 98 Civ. 7228, 2000 WL 122193 (S.D.N.Y. Jan. 31, 2000)..............................20

*In re Sec. Capital Assurance Ltd. Sec. Litig.*,
No. 07 Civ. 11086 (DAB), 2011 WL 4444206 (S.D.N.Y. Sept. 23, 2011)...........23

*Steed Fin. LDC v. James River Capital Corp.*,
258 F. Supp. 2d 272 (S.D.N.Y. 2003)........................................................................8

*In re Twinlab Corp. Sec. Litig.*,
103 F. Supp. 2d 193 (E.D.N.Y. 2000) ...................................................................9, 10

*In re The Ultimate Corp. Sec. Litig.*,
No. 86 CIV 5944 (CSH), 1989 WL 86961 (S.D.N.Y. July 31, 1989)....................20

*Zirkin v. Quanta Capital Holdings Ltd.*,
No. 07 Civ. 851 (RPP), 2009 WL 185940 (S.D.N.Y. Jan 23, 2009)......................18

STATUTES AND OTHER AUTHORITIES

Rule 10b-5, 17 C.F.R. § 240.10b-5.....................................................................2, 8, 10

Fed. R. Civ. P. 9(b) ...................................................................................... *passim*

Fed. R. Civ. P. 12(b)(6)...................................................................................1, 21

Section 11 of the Securities Act of 1933, 15 U.S.C. § 77k.............................. *passim*

Section 12 of the Securities Act of 1933, 15 U.S.C. § 77l..............................8, 16, 22

Section 15 of the Securities Act of 1933, 15 U.S.C. § 77o.............................. *passim*

iv

Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j ...................................2, 8

Section 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t ............................. *passim*

Private Securities Litigation Reform Act, 15 U.S.C. §§ 78u-4 and -5 ....................................2, 9

Wright & Miller, 5B Federal Practice and Procedure § 1357 (3d ed. 2004) ...............................21

v

Defendants C. Mark Tang and Lawrence Wizel (together, the "Independent U.S. Directors") submit this memorandum in support of their motion, pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure, to dismiss Plaintiffs' Corrected Consolidated Complaint ("Complaint").

## PRELIMINARY STATEMENT

Messrs. Tang and Wizel are U.S.-based former independent directors of Defendant Puda Coal, Inc. ("Puda" or the "Company"), a Chinese supplier of coal for Chinese steel manufacturers. The Complaint alleges a "brazen fraudulent scheme in which a Puda insider," the Company's Chairman of the Board and major shareholder, Defendant Ming Zhao ("Zhao"), "improperly transferred the Company's sole revenue operating subsidiary," Shanxi Puda Coal Group Co., Ltd. ("Shanxi Coal"), to himself and then to third parties, while "falsely portray[ing] to investors that Puda still possessed this operating subsidiary." (Compl. ¶¶ 3-4.)

Notably, Plaintiffs do *not* allege that the Independent U.S. Directors participated in or knew about this "brazen fraudulent scheme" by Zhao. To the contrary, the Complaint acknowledges that this fraudulent transfer was not disclosed to the Independent U.S. Directors, and that Zhao continued to cover up the transfer through forged documents provided to the Independent U.S. Directors long after Puda's December 8, 2010 offering of common stock ("December Offering"). (Compl. ¶¶ 153, 156, 158.) The Complaint also references an investigation by the SEC regarding Zhao's alleged scheme (Compl. ¶ 30) that recently resulted in the SEC's filing of a complaint. The SEC Complaint, like the Complaint here, accuses Zhao and others of fraud, and alleges that Zhao deceived the Independent U.S. Directors, characterizing them as victims of Zhao's alleged fraud. No claims have been brought against the Independent U.S. Directors by the SEC or any other regulatory body.

1

Apparently recognizing the weakness of any fraud claims against the Independent U.S. Directors, Plaintiffs do not name them in Count IV of their Complaint alleging violations of Section 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934 ("1934 Act"). Instead, Plaintiffs assert that the Independent U.S. Directors and others were "controlling persons of Puda" and therefore liable under Section 20(a) of the 1934 Act.

Plaintiffs' procedural machinations, however, cannot save their claims. The heightened pleading requirements of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §§ 78u-4 and -5, and Federal Rule of Civil Procedure 9(b) apply to their Section 20(a) claim and require them to plead with specificity particularized facts as to the Independent U.S. Directors' culpable participation in the alleged fraud. This the Plaintiffs have wholly failed to do.

In the entire 205-paragraph Complaint, only four paragraphs specifically reference the Independent U.S. Directors by name. (*See* Compl. ¶¶ 47, 48, 49, 74.) Three of those paragraphs merely allege that during the putative class period, the Independent U.S. Directors were members of the Company's Audit and other Committees and signed the Company's annual reports and registration statements. The fourth paragraph simply lumps the Independent U.S. Directors together with Zhao, the alleged mastermind of the fraudulent scheme, to state in conclusory fashion that all of those individual defendants controlled the Company. In the remainder of the Complaint, Plaintiffs make broad, generalized allegations that "Defendants" concealed the fraudulent transfer of Shanxi Coal's ownership from investors in Puda, thereby causing Plaintiffs to suffer damages, but fail to make any specific allegations about the Independent U.S. Directors' culpable participation in the fraudulent transfer. This omission occurred for a reason, as Plaintiffs' own Complaint acknowledges that Zhao concealed the facts of that alleged

2

fraudulent transfer from the Independent U.S. Directors.  Plaintiffs thus fail to state a Section 20(a) claim against the Independent U.S. Directors.

Plaintiffs also assert a claim against the Independent U.S. Directors under Section 11 of the Securities Act of 1933 ("1933 Act") because they signed the December Offering's registration statement which allegedly failed to disclose that Puda's ownership of Shanxi Coal was fraudulently transferred by Zhao.  As a threshold matter, the Section 11 claim sounds in fraud because it is based entirely on that alleged secret, unauthorized fraudulent transfer.  Second Circuit law requires such claims to be pled with particularity under Rule 9(b), despite any boilerplate recitation in the Complaint that the Section 11 claim "does not sound in fraud." (Compl. ¶ 164.)  For the same reasons that the Section 20(a) claim fails to plead specific facts demonstrating the Independent U.S. Directors' culpable participation in the alleged fraud, the Section 11 claim also fails to satisfy the requirements of Rule 9(b) and must be dismissed.

Even if Rule 9(b) did not apply to Plaintiffs' Section 11 claim (which it does), that claim still should be dismissed.  In order to state a Section 11 claim, Plaintiffs must allege facts demonstrating that the Independent U.S. Directors possessed information about the fraudulent transfer at the time of the December Offering.  Yet, Plaintiffs' own Complaint alleges that Zhao concealed from the Independent U.S. Directors Puda's transfer of its ownership of Shanxi Coal and, months after the December Offering, provided them with forged documents purportedly showing that no transfer took place.  The Second Circuit has held that where an affirmative defense is apparent from the face of the complaint, it can be considered on a motion to dismiss. By Plaintiffs' own admission, the Independent U.S. Directors did not possess information about the alleged fraudulent transfer at the time of the December Offering, and therefore, they cannot

3

be held liable under Section 11 for failing to disclose that information in the registration statement.

Plaintiffs' final claim against the Independent U.S. Directors – that they are liable as "control persons" of Puda under Section 15 of the 1933 Act – fails for similar reasons.  As with the Section 11 claim, the Section 15 claim is based entirely upon the alleged fraudulent transfer by Zhao, and Plaintiffs have not pled the Independent U.S. Directors' alleged participation or scienter regarding that fraud with the particularity required by Rule 9(b).  Even if Rule 9(b) did not apply (which it does), courts have held that some "meaningful culpable conduct" must be pled to state a Section 15 claim, and Plaintiffs here plead no facts in support of their wholly conclusory allegation that the Independent U.S. Directors engaged in such conduct. Additionally, as with the Section 11 claim, the Independent U.S. Directors' affirmative defense to the Section 15 claim that they had no knowledge of the fraudulent transfer of Shanxi Coal's ownership at the time of the December Offering is apparent from the face of the complaint and also requires dismissal of this claim.

Plaintiffs' Complaint should be dismissed in its entirety, with prejudice, as against the Independent U.S. Directors.

### STATEMENT OF PLAINTIFFS' ALLEGATIONS

### A.    The Parties

While Puda is organized as a Delaware corporation, its headquarters and all of its operations are located in the Shanxi Province of China.  (Compl. ¶ 6.)  Puda is a purported supplier of cleaned coking coal used to produce coke for Chinese steel manufacturers.  (Compl. ¶ 40.)  According to the Complaint, Puda's operations "are conducted exclusively" through Shanxi

LIBNY/5202087.1

Coal, "which owned all of Puda's mining assets, coal washing plants, cash and receivables," and Shanxi Coal's operations "were the sole source of Puda's revenues and profits." (Compl. ¶ 5.)

Defendant Zhao was formerly the President and CEO of Puda from July 2005 to June 2008, as well as Shanxi Coal's CEO from 1995 to June 2008. (Compl. ¶ 41.) During the relevant time period in this lawsuit, Zhao was Chairman of Puda's Board and owned approximately 36% of Puda's common stock, and also was Chairman of Shanxi Coal's Board. (Compl. ¶ 41.) Other Puda executives named as defendants are Liping Zhu ("Zhu"), who was President, CEO and a director of Puda from June 2008 until his resignation on September 22, 2011, and Defendant Qiong Wu ("Wu"), who was Puda's CFO from July 2008 and Puda's secretary from April 2010 until she resigned from both positions on September 27, 2011. (Compl. ¶¶ 44-45.) Zhao, Zu and Wu are collectively referred to herein as the "Officer Defendants."

During the relevant time period, Puda's Board of Directors consisted of Zhao, Zu, the two Independent U.S. Directors, and Defendant Jianfei Ni ("Ni"). Ni resigned from Puda's Board on December 20, 2011. The Independent U.S. Directors (Tang and Wizel), along with Ni, comprised the Audit Committee of Puda's Board of Directors. (Compl. ¶¶ 46-48.)

In addition, Plaintiffs name as defendants the two underwriters for Puda's December Offering, Brean Murray, Carret & Co., LLC and Macquarie Capital (USA) Inc. (collectively the "Underwriter Defendants") (Compl. ¶¶ 50-52), and the accounting firm that served as Puda's independent auditor during the relevant time period, Defendant Moore Stephens International Ltd., together with its affiliates (Defendants Moore Stephens Hong Kong and Moore Stephens P.C.) (collectively the "Auditor Defendants") (Compl. ¶¶ 53-56).

Lead Plaintiffs Salomon Querub, Howard Pritchard and Hotel Ventures LLC, as well as named Plaintiffs Steven Weissmann, Thomas Rosenberger ("Rosenberger") and Sal LaDuca, purportedly purchased shares of Puda between November 13, 2009 and October 3, 2011 (the "Class Period").  (Compl. ¶¶ 1, 36-39.)  Named Plaintiff Rosenberger also allegedly purchased Puda common stock pursuant to the Company's December Offering.  Lead Plaintiffs and named Plaintiffs bring this class action on behalf of themselves and all others who purchased Puda's common stock or call options, or sold put options, during the Class Period as well as on behalf of a subclass of all persons who purchased Puda's common stock in the December Offering. (Compl. ¶ 1.)

### B.    Plaintiffs' Allegations

Plaintiffs allege that in September of 2009, Zhao fraudulently transferred all of Puda's shares of Shanxi Coal to himself and his brother.  (Compl. ¶¶ 4, 9.)  The Complaint further alleges that in July 2010, Zhao then transferred 49% of the Shanxi Coal shares to CITIC Trust Co. ("CITIC"), a Chinese private equity fund, in exchange for shares in a trust valued at $179 million.  (Compl. ¶ 11.)  Next, Zhao allegedly pledged the remaining 51% of the Shanxi Coal shares to CITIC in exchange for a $369 million 3-year loan at 14.5% annual interest plus fees. (Compl. ¶ 13.)  Despite this transfer, Plaintiffs allege, the Company continued to file SEC reports and conducted two public offerings in 2010 without disclosing that the Company did not own Shanxi Coal and had almost no revenue or profit.  (Compl. ¶¶ 17-18.)

On April 8, 2011, an investigative report was published accusing Zhao of secretly transferring ownership of Shanxi Coal to himself.  (Compl. ¶ 19.)  Immediately following that report, Puda's Board of Directors commenced an investigation into the allegedly fraudulent transfer.  (Compl. ¶¶ 21-22, 144.)  On September 1, 2011, Puda's Audit Committee disclosed the

6

interim findings of its investigation, while noting that its investigation was hampered by uncooperative third parties and Chinese confidentiality laws that limited the availability of accurate information.  (Compl. ¶ 153.)  Among other things, the Audit Committee "essentially confirmed the fraudulent transfers" by Zhao, finding that only Zhao and Zhu were aware of the fraudulent transfers of Shanxi Coal and that neither of them "disclose[d] it to any other director … [or] to the Audit Committee."  (Compl. ¶ 153.)  The Audit Committee's investigation also exposed other previously unknown "instances of ownership changes relating to the Company's Chinese subsidiaries that were also not disclosed to the Audit Committee at the time they were executed."  (Compl. ¶ 153.)

Plaintiffs allege that, even after those interim findings by Puda's Audit Committee, Zhao continued to deceive the Audit Committee by providing it with a forged letter from CITIC on August 31, 2011 stating that CITIC did not have any ownership in or claims against Shanxi Coal. (Compl. ¶ 153.)  Puda's Audit Committee first became aware that the letter was a forgery on September 23, 2011, when Zhu admitted the forgery and tendered his resignation as Puda's CEO.  (Compl. ¶ 156.)  On September 29, 2011, the Audit Committee received a letter from CITIC confirming that it did not issue that letter, and Puda publicly disclosed that fact on October 3, 2011.  (Compl. ¶ 158.)

### C.    Plaintiffs' Claims

Plaintiffs' Complaint asserts the following claims against the Independent U.S. Directors:

- Count I, against all Defendants, alleging that Puda's registration statement for the December Offering was materially false and misleading in violation of Section 11 of the 1933 Act for failure to disclose that Puda's ownership of Shanxi Coal was fraudulently transferred by Zhao;

- Count III, against the Independent U.S. Directors, Director Ni, and the three Puda Officer Defendants (Zhao, Zhu and Wu), alleging that they are "control persons"

of Puda and are responsible for its false and misleading statements in the December Offering documents in violations of Sections 11 and 12 of the 1933 Act, and thus are liable under Section 15 of the 1933 Act; and

- Count V, against the Independent U.S. Directors, Director Ni, and the three Puda Officer Defendants, alleging that they are "control persons" of Puda and had the power to influence and control the fraudulent transfer at issue in violation of Section 10(b) and Rule 10b-5 of the 1934 Act, and thus are liable under Section 20(a) of the 1934 Act.[1]

Plaintiffs also assert a claim under Section 12 of the 1933 Act against Puda and the Underwriter Defendants (Count II, Compl. ¶¶ 174-182), and a claim under Section 10(b) and Rule 10b-5 of the 1934 Act against Zhao, Zhu, Wu, Puda and the Auditor Defendants (Count VI, Compl. ¶¶ 191-200).   Neither of these latter two claims are asserted against the Independent U.S. Directors.

## ARGUMENT

## I.

## PLAINTIFFS FAIL TO STATE A CONTROL PERSON CLAIM AGAINST THE INDEPENDENT U.S. DIRECTORS UNDER SECTION 20(A) OF THE 1934 ACT

### A.    Culpable Participation Is A Pleading Requirement For A Section 20(a) Claim

As this Court has held, "[t]o state a claim under § 20(a) of the [1934 Act] . . . for control person liability, a plaintiff 'must show a primary violation by the controlled person and control of the primary violator by the targeted defendant, . . . and show that the controlling person was in some meaningful sense a culpable participant in the fraud perpetrated by the controlled person.'" *Steed Fin. LDC v. James River Capital Corp.*, 258 F. Supp. 2d 272, 280 (S.D.N.Y. 2003) (Jones, J.) (dismissing Section 20(a) claim) (quoting *S.E.C. v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1472 (2d Cir. 1996)).  *Accord Janbay v. Canadian Solar, Inc.*, No. 10 Civ. 4430 (RWS), 2012

---

[1]    The Complaint's heading for Count V states that it also asserts the Section 20(a) control person claim against Puda, but that appears to be a mistake, as the language within that Count alleges that the Officer and Director Defendants are liable for controlling Puda.  (*See* Compl. ¶ 205.)

WL 1080306, at *17 (S.D.N.Y. Mar. 30, 2012) (dismissing Section 20(a) claim for failure to plead that the control persons were "culpable participants" in the alleged fraud); *In re Twinlab Corp. Sec. Litig.*, 103 F. Supp. 2d 193, 208 (E.D.N.Y. 2000) (holding that for the Section 20(a) claim against the company's officers, "the complaint must allege acts demonstrating culpable conduct"); *Ellison v. Am. Image Motor Co., Inc.*, 36 F. Supp. 2d 628, 642 (S.D.N.Y. 1999) (a plaintiff must allege "the nature of the controlling person's 'culpable participation' in the fraud" to state a Section 20(a) claim). *See also Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998) ("we note that a determination of § 20(a) liability requires an individualized determination of a defendant's control of the primary violator as well as a defendant's particular culpability").

The heightened pleading requirements of Federal Rule of Civil Procedure 9(b) and the PSLRA apply to the Section 20(a) claim here, requiring dismissal of that claim if Plaintiffs fail to plead particularized facts as to the Independent U.S. Directors' culpable participation in the alleged fraud. *See, e.g., Police & Fire Retirement System of the City of Detroit v. SafeNet, Inc.*, 645 F. Supp. 2d 210, 227 (S.D.N.Y. 2009) ("*SafeNet*") ("[t]he PSLRA's heightened pleading standards apply to Section 20(a) claims"); *Mishkin v. Ageloff*, No. 97 Civ. 2690 LAP, 1998 WL 651065, at *25-26 (S.D.N.Y. Sept. 23, 1998) (applying PSLRA's heightened pleading standard and granting motion to dismiss Section 20(a) claim for failure to "adequately allege what [defendant] did" in the course of exercising purported control, because "the Complaint must provide some detail about what [the control person] is alleged to have done, and when he did it, in order for [the court] to hold that the Complaint provides 'particularized facts' of [the control person's] culpable participation" in the alleged fraud); *Ellison*, 36 F. Supp. 2d at 642 (S.D.N.Y. 1999) (dismissing Section 20(a) claim for failure to plead with particularity the "culpable

9

participation by these individuals" in the fraudulent conduct ascribed to the corporate defendants).

For example, in a case with allegations that parallel those against the Independent U.S. Directors in this case, *In re Livent, Inc. Securities Litigation,* 78 F. Supp. 2d 194, 222 (S.D.N.Y. 1999), the court dismissed Section 20(a) claims against the outside directors because, "as the previous discussion regarding the Outside Directors' liability for the 10(b) and 10b-5 claims indicated, the Complaint [did] not allege particularized facts as to the Outside Directors' 'culpable participation' in the fraud."  Among other things, the court noted:

> [N]ot once in the paragraphs of the Complaint describing the fraud are any of the Outside Directors mentioned by name.  The Complaint does not allege that the Outside Directors participated in the five fraudulent revenue generating transactions.  In fact, the SEC complaint alleges that such transactions were explicitly hidden from the Outside Directors by the [company] staff on orders from Drabinsky and Gottlieb, and that, with respect to the Dundee transaction, Gottlieb caused Dundee's CEO to draft a fake letter confirming the cancellation of the Put agreement.  In short, Plaintiffs have not alleged facts sufficiently particular to infer that the Outside Directors had knowledge of the fraud.

*Id.* at 220 (internal citations omitted).

Similarly, in *Twinlab*, 103 F. Supp. 2d at 208, the plaintiffs' Section 20(a) claim alleging that the company's individual officers "had access to and knowledge of Twinlab's operational and financial information, and the ability to prevent the issuance of the statements alleged to be fraudulent" was insufficient to withstand a motion to dismiss.  The court concluded that dismissal of the Section 20(a) claim was required because "Plaintiffs do not specifically allege facts demonstrating that the officers of Twinlab culpably participated in the scheme, rather than, for example, unknowingly approving credible but fraudulent financial reports prepared by subordinates."  *Id.  See also SafeNet*, 645 F. Supp. 2d at 241 (dismissing Section 20(a) claim

10

where "the weight of the allegations is that neither the Compensation Committee members nor Mueller had any significant knowledge or role in the backdating practice" and thus plaintiffs failed to adequately allege their culpable participation in the alleged stock-options misrepresentations).

These legal principles require dismissal of Plaintiffs' Section 20(a) claim against the Independent U.S. Directors.

> **B.**   **Plaintiffs' Section 20(a) Claim Must Be Dismissed Because The Complaint Fails To Plead With Particularity The Independent U.S. Directors' Culpable Participation In The Alleged Fraudulent Scheme**

Plaintiffs' Complaint here fails to satisfy the required pleading standard for the requisite elements of their Section 20(a) claim because Plaintiffs fail to plead *any* culpable participation in the fraudulent scheme by the Independent U.S. Directors, let alone the particularized allegations of culpable participation necessary to sustain a claim.  Instead, the Complaint merely alleges that the "Officer and Director Defendants" held high level positions, had power to influence the decision making of the company, had access to Company reports and other statements, and had supervisory involvement in the operation of the Company.  (Compl. ¶¶ 203-204.)  In fact, in the entire 205 paragraphs of the Complaint, the only paragraphs that contain specific allegations as to the Independent U.S. Directors are as follows:

- They signed the Company's 2009 Form 10-K filed on 3/31/2010;

- They signed the Company's 2010 Form 10-K filed on 3/16/2011; and

- They were members of the Puda's Audit Committee, as well as its Nominating, Corporate Governance and Compensation Committees.

(Compl. ¶¶ 47, 48, 74.)

11

The remainder of the Complaint makes allegations as to "Defendants" or "Officer and Director Defendants" – thus lumping together the alleged fraudulent scheme's mastermind, Zhao, with the Independent U.S. Directors – but fails to identify any specific participation in that scheme by the Independent U.S. Directors.  *See, e.g.,* Compl. ¶ 19 ("Defendants concealed from investors that Puda no longer had any ownership interest in Shanxi Coal"); *see also id.* at ¶ 49. Tellingly, the Complaint contains no specific allegations that the Independent U.S. Directors participated in or knew of the alleged secret transfers by Zhao and Zhu in China.   To the contrary, Plaintiffs' own allegations demonstrate that the Independent U.S. Directors were unaware of the alleged fraudulent scheme, and instead were innocent victims of that fraud. (Compl. ¶¶ 153, 156, 158.)

The Complaint repeatedly states that the alleged securities violations were conducted by "insider[s]" Zhao and Zhu and were a "brazen fraudulent scheme" to "steal" the Company through "fraudulent transfers" in Shanxi Province, China.  (Compl. ¶¶ 4, 6, 9, 142, 145.)  The Complaint also incorporates and quotes from the findings by Puda's Audit Committee that only Zhao and Zhu were aware of Zhao's fraudulent transfers of Shanxi Coal and neither of them "disclose[d] it to any other director … [or] to the Audit Committee."  (Compl. ¶ 153.)[2]

Additionally, the Complaint alleges that Zhao and Zhu attempted to deceive the Independent U.S. Directors during the Audit Committee investigation about the true nature of the alleged fraudulent transfers by causing a forged letter from CITIC to be submitted to the Audit Committee in an attempt to cover up their actions.   (Compl. ¶¶ 156, 158.)  Specifically, the

---

[2]     The Complaint also quotes the Audit Committee investigation findings wherein the Audit Committee exposed Zhao's other previously unknown "instances of ownership changes relating to the Company's Chinese subsidiaries that were also not disclosed to the Audit Committee at the time they were executed."  (Compl. ¶ 153.)

12

Complaint states that "Defendant Zhao . . . forged a letter purporting to be from CITIC and . . . provided the forged letter to Puda's Audit Committee," and that Zhu "provided the letter to the SEC in a failed attempt to convince the SEC that Puda really did own Shanxi Coal." (Compl. ¶ 27.)  *See also id.* at ¶ 28 (discussing Puda's disclosure on October 3, 2011 that "Zhao had provided Puda's directors with a false letter purportedly from CITIC claiming that CITIC did not actually fund the loan," and that Zhu "admitted that he had provided this fraudulent letter to the SEC").

The Complaint also refers to a SEC investigation into Zhao's surreptitious transfers of Shanxi Coal stock. (Compl. ¶ 30; *see also id.* at ¶ 155.)  On February 22, 2012, as a result of this investigation, the SEC issued a complaint against Defendants Zhao and Zhu.  *See SEC v. Zhao, et al*, No. 12 Civ. 1316 (S.D.N.Y. filed Feb. 22, 2012) ("SEC Complaint").[3]  The SEC Complaint acknowledges that the Independent U.S. Directors did not participate in the fraudulent scheme and does not name them as defendants.  (SEC Compl. ¶ 1.)  Specifically, the SEC Complaint alleges that Zhao, with assistance from Zhu, "looted Puda" when they "*secretly* transferred Puda's controlling interest in its operating subsidiary" to Zhao who then sold it to third parties, and "[n]one of these assets transfers were approved by Puda's board."  (SEC Compl. ¶¶ 1, 2; emphasis added.)  *See also id.* at ¶ 20 ("[i]n September 2009, Zhao caused Puda's 90% indirect interest in Shanxi Coal to be transferred to himself without the approval or knowledge of Puda's . . . board of directors").

---

[3]   A copy of the SEC Complaint is attached to the June 1, 2012 Declaration of Richard M. Strassberg as Exhibit A.  The SEC Complaint was filed shortly after Plaintiffs' Complaint, but Plaintiffs' Complaint at ¶ 30 expressly references and relies upon the SEC's investigation of Zhao for allegedly violating the federal securities laws and its intent to file a complaint against him, and therefore this Court can consider it on a motion to dismiss.  *See, e.g., Gibbons v. Malone,* 801 F. Supp. 2d 243, 245-46 (S.D.N.Y. 2011) (Jones, J.) ("[i]n deciding [a] motion to dismiss, the Court may consider documents . . . incorporated in the complaint by reference").

The SEC also alleges that Zhu "was aware of" those transfers "at the time they occurred, but he did not tell anyone at Puda about those transactions," including the Independent U.S. Directors.  (SEC Compl. ¶ 26; *see also id.* at ¶ 74 ("Zhu failed to disclose his knowledge of, and participation in, the fraudulent scheme to deprive Puda of its ownership interest in Shanxi Coal to Puda's audit committee and auditors").)  The SEC further alleges that the fraud continued, even after the illegal transfers were discovered, when Zhao and Zhu attempted to cover up their scheme by Zhao having "his U.S. counsel give [a] forged letter to the [SEC] and to Puda's audit committee in an effort to create the false impression that Puda had not been harmed by the asset transfers."  (SEC Compl. ¶ 4.)

Thus, the allegations of both Plaintiffs' Complaint and the SEC Complaint confirm that this case is about an alleged secret and massive fraud committed by two corporate insiders without any culpable participation of the Independent U.S. Directors.  As in *Livent*, the Complaint alleges that those corporate insiders explicitly hid the fraud from the Independent U.S. Directors with falsified documents.  *Livent,* 78 F. Supp. 2d at 220.  Because Plaintiffs' Complaint contains no particularized facts supporting any inference that the Independent U.S. Directors were culpable participants in the alleged fraud, and instead sets forth facts that refute such an inference, Plaintiffs' Section 20(a) claim against them must be dismissed.

## II.

### PLAINTIFFS FAIL TO STATE A CLAIM AGAINST THE INDEPENDENT U.S. DIRECTORS UNDER SECTION 11 OF THE 1933 ACT

#### A.     Because Plaintiffs' Section 11 Claim Sounds In Fraud And Fails To Satisfy Rule 9(b)'s Heightened Pleading Standard, It Must Be Dismissed

To state a claim under Section 11 of the 1933 Act, a complaint must allege that the registration statement at issue "contained an untrue statement of a material fact or omitted to

state a material fact required to be stated therein or necessary to make the statements therein not misleading."  15 U.S.C. §§ 77k.  While fraud is not an element of a Section 11 claim, because claims under that section "may be – and often are – predicated on fraud," the Second Circuit requires that "the heightened pleading standard of Rule 9(b) applies to Section 11 . . . claims insofar as the claims are premised on allegations of fraud."  *Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004).

Rule 9(b) "[b]y its terms . . . applies to all averments of fraud," which "wording is cast in terms of the conduct alleged, and is not limited to allegations styled or denominated as fraud or expressed in terms of the constituent elements of a fraud cause of action."  *Rombach*, 315 F.3d at 171; *see* Fed. R. Civ. P. 9(b).  In determining whether to apply Rule 9(b), then, "[t]he ultimate question is whether, at its core, the complaint is predicated on allegations of fraudulent conduct."  *Ladmen Partners, Inc. v. Globalstar, Inc*., No. 07 Civ. 0976 (LAP), 2008 WL 4449280, at *11 (S.D.N.Y. Sept. 30, 2008).  *See also In re AXIS Capital Holdings Ltd. Sec. Litig.*, 456 F. Supp. 2d 576, 597 (S.D.N.Y. 2006) (stating that when the same course of conduct supporting a Rule 10b-5 fraud claim is offered in support of a Section 11 or 12(a)(2) claim, "such claims are subject to the test of Rule 9(b)"); *Schoenhaut v. Am. Sensors, Inc.,* 986 F. Supp. 785, 795 (S.D.N.Y. 1997) (Jones, J.) (holding that although "fraud is not an element" of a Section 11 claim, "plaintiffs nonetheless have alleged fraudulent intent" and therefore "must comply with the requirements of Rule 9(b)").

The Second Circuit in *Rombach* squarely rejected the plaintiffs' argument that Rule 9(b) should not apply because their complaint states that their Section 11 claims do not "sound in fraud," explaining that such self-serving language in a complaint will not prevent application of Rule 9(b) where "the wording and imputations of the complaint are classically associated with

15

fraud." *Rombach*, 355 F.3d at 172.  Similarly, in *In re Marsh & McLennan Companies, Inc. Securities Litigation*, 501 F. Supp. 2d 452, 492 (S.D.N.Y. 2006), the court applied Rule 9(b) where "prior to the statement of the Section 11 count, the entire Complaint sound[ed] in fraud," and cautioned that "Plaintiffs cannot 'repeat and reallege each and every allegation contained' in the Complaint . . . , and then attempt to disclaim those allegations in the very next paragraph" by stating that all preceding allegations of fraud are excluded from the Section 11 count.  *See also Ladmen Partners*, 2008 WL 4449280, at *11 n.10 (holding that plaintiff's contention was "without merit" that they pled only negligence because of disclaimers that the asserted claims do not sound in fraud); *AXIS Capital,* 456 F. Supp. 2d at 598 ("[c]ourts have repeatedly noted that the insertion of a simple disclaimer of fraud is insufficient" to demonstrate that a plaintiff's 1933 Act claims do not sound in fraud).

In *AXIS Capital*, the court noted that the complaint was "rife with allegations of fraud," and dismissed the plaintiffs' Section 11 claim for failure to comply with Rule 9(b).  *AXIS Capital*, 456 F. Supp. 2d at 597.  The plaintiffs alleged that an insurance company's registration statement was materially false and misleading for omitting to disclose its "illicit agreements" to pay brokerage commissions to steer business to the company, and did not allege any other untrue statement or omission independent of those allegations.  *Id.*  The court held that "[b]ecause the sole allegations supporting the falsity element of the Section 11 and Section 12(a)(2) claims are all inextricably intertwined with the allegations underlying plaintiffs' fraud claims . . . , these claims undisputedly sound in fraud." *Id.* at 598.

Similarly, in *Ladmen Partners*, the court concluded that Rule 9(b) should apply to the Section 11 claims because the complaint was "riddled with allegations of essentially fraudulent conduct" in connection with the company's offering, and dismissed the Section 11 claim with

16

prejudice for failure to satisfy Rule 9(b)'s pleading requirements.  *Ladmen Partners,* 2008 WL 4449280 at *11.  The court in *Ladmen Partners* found that "Plaintiff basically assert[ed] that not only did Globalstar have actual knowledge of the degradation of its satellite constellation prior to the IPO, but it deliberately withheld that information from investors because it needed money from the IPO to finance a new generation of satellites."  *Id.*   The court also found that the "underlying theory regarding the Individual Defendants is the same as it is with respect to Globalstar, namely that they *knew* that the Company's satellites were failing and participated in an essentially fraudulent scheme to deceive investors about the true status of its assets" in connection with the company's offering.  *Id.* at *12.

Here, as in *AXIS Capital* and *Ladmen Partners*, the entire Complaint is "rife" with "allegations of fraudulent conduct," which fraudulent conduct is "inextricably intertwined" with the sole allegations forming the basis for the Section 11 claim.  For example, Plaintiffs allege:

- "This action arises from a brazen *fraudulent* scheme in which a Puda insider improperly transferred the Company's sole revenue producing operating subsidiary to third parties and then falsely portrayed to investors that Puda still possessed this operating subsidiary" (Compl. ¶ 4, emphasis added);

- "Puda reported *fraudulent* financial results and continued to issue financial statements that incorporated its false claim of ownership of 90% of Shanxi Coal – *fraudulently* consolidating Shanxi Coal's operating results in its financial statements, despite the fact that Puda no longer maintained any ownership interest in Shanxi Coal" (*id.* at ¶ 10, emphasis added);

- "Puda conducted two separate public offerings in 2010 without disclosing these transfers or that it no longer had any operating business at all[,]" thus netting "*illicit* proceeds" from offerings that sold shares "in what was effectively an empty shell company" (*id.* at ¶ 18, emphasis added);

- After Alfred Little's investigative report, Puda's board of directors "commenced an investigation into the allegations of *fraud*" (*id.* at ¶ 21, emphasis added); and

- During the course of that investigation, Zhao provided a "*forged* letter" to Puda's Audit Committee, and Zhu provided that "*fraudulent* letter" to the SEC, attempting to

17

convince them "that Puda really did own Shanxi Coal" (*id.* at ¶¶ 27-28, emphasis added).

Plaintiffs' Complaint makes clear that, absent the allegedly fraudulent transfer of Shanxi Coal, there is no basis for the Section 11 claim.   Under the heading "Materially False and Misleading Statements Contained in the December Offering Documents" (Compl. at p. 35), the Complaint states:

- The registration statement for the December Offering was "materially false and misleading" because it "represented that Shanxi Coal was 90% owned by [Puda]" (Compl. ¶ 116); and

- The registration statement was "materially false and misleading" because it failed to disclose "that Defendant Zhao had transferred ownership/shares of Shanxi Coal to himself through a series of transactions" and "that, as a result, Puda did not possess the ownership interests in Shanxi Coal that the Company claimed to possess" (*id.* at ¶ 117).

As in *AXIS Capital*, Plaintiffs do not allege any other false or misleading statement in the December Offering's registration statement that is independent of the allegedly fraudulent transfer of Shanxi Coal.  Similar to *Marsh & McLennan*, the entire Complaint here leading up to the Section 11 claim sounds in fraud, and the Section 11 claim "repeats and incorporates each allegation contained above."  (Compl. ¶ 163.)  Plaintiffs' statement in the very next paragraph that the Section 11 claim "does not sound in fraud" should thus be rejected.  (Compl. ¶ 164.)  *See Marsh & McLennan*, 501 F. Supp. 2d at 492; *see also Rombach*, 355 F.3d at 171.

To satisfy the heightened pleading requirements of Rule 9(b) for a Section 11 claim that sounds in fraud, "a complaint must convey by factual allegations that the defendants made materially false statements, and that they did so with scienter."  *Zirkin v. Quanta Capital Holdings Ltd.*, No. 07 Civ. 851 (RPP), 2009 WL 185940, at *12 (S.D.N.Y. Jan 23, 2009) (dismissing Section 11 claim for failure to adequately plead scienter).  For example, in *SafeNet,*

18

645 F. Supp. 2d at 241, the court applied Rule 9(b)'s scienter requirement to the fraud-based Section 11 claims and held that "Plaintiffs must allege [defendants'] fraudulent intent with more specificity."  The court dismissed the Section 11 claim against the director defendants "because Plaintiffs fail to specify any details about [the directors'] or the Compensation Committee's knowing participation in making the allegedly fraudulent misrepresentations in the . . . registration statement."  *Id.  See also In re JP Morgan Chase Sec. Litig.*, 363 F. Supp. 2d 595, 635 (S.D.N.Y. 2005) (where the entire complaint sounded in fraud, court dismissed Section 11 claim for failure to satisfy Rule 9(b) because "plaintiffs have failed to plead a strong inference of scienter properly"); *Schoenhaut*, 986 F. Supp. at 795-96 (dismissing Section 11 claim for failure to satisfy Rule 9(b) because plaintiffs failed to allege how the defendants knew that the allegedly fraudulent statements in the prospectus were misleading when made).

As discussed in Point I *supra*, Plaintiffs fail to plead with particularity *any* facts – let alone sufficient facts – demonstrating the Independent U.S. Directors' participation or scienter in connection with the alleged fraudulent transfer of Shanxi Coal's ownership by Zhao.  To the contrary, Plaintiffs' allegations show that Zhao fraudulently concealed those facts from the Independent U.S. Directors.  Plaintiffs thus fail to satisfy Rule 9(b)'s heightened pleading requirement applicable to their Section 11 claim, requiring its dismissal.

    **B.**    **The Section 11 Claim Must Also Be Dismissed Because It Is Apparent From The Face Of The Complaint That The Independent U.S. Directors Did Not Know About The Fraudulent Transfer At The Time Of The December Offering**

Even if the Section 11 claim were not subject to Rule 9(b) (and it is), that claim still should be dismissed as against the Independent U.S. Directors.  "In order to state a claim pursuant to Section 11, a plaintiff must allege facts demonstrating the defendant possessed the omitted information at the time the registration statement became effective . . . ."  *JP Morgan*

19

*Chase,* 363 F. Supp. 2d at 635 (internal quotations and citation omitted).  *Accord In re Flag*

*Telecom Holdings, Ltd. Sec. Litig.*, 308 F. Supp. 2d 249, 255 (S.D.N.Y. 2004) (granting motion

to dismiss the plaintiff's Section 11 claim where the plaintiff "has not pleaded facts indicating

that on the effective date [defendants] had information" that allegedly should have been

disclosed); *Scibelli v. Roth*, No. 98 Civ. 7228, 2000 WL 122193, at *3 (S.D.N.Y. Jan. 31, 2000)

(dismissing Section 11 claim where, from the complaint's allegations, "it cannot be reasonably

inferred that the defendants had the allegedly omitted data at the time the prospectus was

issued").  *See also Fisher v. Ross,* No. 93 CIV. 0275 (JGK), 1996 WL 586345, at *9-10

(S.D.N.Y. Oct. 11, 1996) (holding that no Section 11 claim exists where plaintiff failed to

identify any evidence that defendants were aware of the allegedly undisclosed facts at the time of

the offering at issue); *In re The Ultimate Corp. Sec. Litig.*, No. 86 CIV 5944 (CSH), 1989 WL

86961, at *1 (S.D.N.Y. July 31, 1989) (holding that Section 11 liability should not be imposed

on a defendant for failure to include in the offering materials "information of which it had no

knowledge at the time of the offering").

Here, Plaintiffs have not – and cannot – plead facts demonstrating that at the time of the

December Offering, the Independent U.S. Directors knew that Zhao had fraudulently transferred

Puda's ownership of Shanxi Coal.  Again, the Complaint incorporates and quotes from Puda's

Audit Committee's conclusions in September 2011 – months after the December Offering –

which found that *only* Zhao and Zhu were aware of Zhao's fraudulent transfers of Shanxi Coal

and that neither of them "disclose[d] it to any other director … [or] to the Audit Committee."

(Compl. ¶ 153.)   The Complaint also acknowledges that during the Audit Committee

investigation in September 2011, Zhao and Zhu attempted to cover up the fraudulent transfer by

presenting the Independent U.S. Directors with a forged letter from CITIC that the Audit Committee later exposed as a fraud.  (Compl. ¶¶ 156, 158.)

Plaintiffs' own allegations thus demonstrate that the Independent U.S. Directors did *not* have knowledge of the fraudulent transfer at the time of the December Offering, and this Court may consider this defense to the Section 11 claim on a motion to dismiss.  As the Second Circuit has long recognized, "[a]n affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6) … if the defense appears on the face of the complaint."  *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998); *accord Iowa Pub. Emp. Ret. Sys. v. MF Global, Ltd.*, 620 F.3d 137, 145 (2d Cir. 2010) ("*MF Global*").  This "well-settled aspect of federal pleading practice . . . recognizes that a litigant may plead itself out of court by unintentionally alleging facts (taken as true) that establish an affirmative defense."  *Levine v. AtriCure, Inc.*, 594 F. Supp. 2d 471, 474 (S.D.N.Y. 2009); *see also* Wright & Miller, 5B Fed. Practice and Procedure § 1357, at 708-13 (3d ed. 2004) (this aspect of pleading practice applies where "the plaintiff's own allegations show that a defense exists that legally defeats the claim for relief").  Accordingly, courts in this Circuit have granted motions to dismiss Section 11 claims when the affirmative defense was apparent on the face of the plaintiff's complaint.  *See, e.g., MF Global,* 620 F.3d at 145; *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 272 F. Supp. 2d 243, 254-55 (S.D.N.Y. 2003).

Because it is apparent from the face of the Complaint that the Independent U.S. Directors had no knowledge about the fraudulent transfer at the time of the December Offering, Plaintiffs have failed to state a Section 11 claim against them, and the Section 11 claim against them must be dismissed.

21

### III.

### PLAINTIFFS FAIL TO STATE A CONTROL PERSON CLAIM AGAINST THE INDEPENDENT U.S. DIRECTORS UNDER SECTION 15 OF THE 1933 ACT

A.   **Because Plaintiffs' Section 15 Claim Sounds In Fraud And Fails To Satisfy Rule 9(b)'s Heightened Pleading Standard, It Must Be Dismissed**

In Count III of their Complaint, Plaintiffs assert a Section 15 claim against the Independent U.S. Directors (as well as other individual defendants) as alleged "control person[s]" of Puda.  (Compl. ¶ 186.)  Section 15 states that a person who "controls" any person liable under Sections 11 or 12 of the 1933 Act shall be liable to the same extent as the controlled person "unless the controlling person had no knowledge of or reasonable ground to believe in the existence of the facts by reason of which the liability of the controlled person is alleged to exist." 15 U.S.C. § 77o.

Here, the alleged basis for Section 15 liability against the Independent U.S. Directors is that they were "culpable participant[s]" in Puda's fraudulent misrepresentations about its ownership of Shanxi Coal in the registration statement and prospectus for the December Offering.  (Compl. ¶ 188.)  Plaintiffs' Section 15 claim thus sounds in fraud, despite their disclaimers to the contrary (*see* Compl. ¶ 184).  The "materially false and misleading statements contained in the December Offering documents" that Plaintiffs identify are "that Defendant Zhao had transferred ownership/shares of Shanxi Coal to himself through a series of transactions" and "that, as a result, Puda did not possess the ownership interests in Shanxi Coal that the Company claimed to possess."  (Compl. ¶ 117; *see id.* at p. 35).  For the same reasons stated in Point II.A *supra*, Rule 9(b)  applies to Plaintiffs' Section 15 claim here and requires its dismissal because Plaintiffs fail to plead with particularity the Independent U.S. Directors' participation and scienter regarding the fraudulent statements about Puda's ownership of Shanxi Coal.  *See, e.g.,*

*Marsh & McLennan*, 501 F. Supp. 2d at 493 (stating that where the Section 11 claim is premised on allegations of fraud, Rule 9(b)'s heightened pleading requirements should also apply to the corresponding Section 15 control person claim, and dismissing the Section 15 claim because "Plaintiffs have not raised a strong inference of scienter for any of the named Section 15 defendants at the time the relevant registration statement was filed").  Thus, Plaintiffs' Section 15 claim should be dismissed for failure to satisfy the pleading requirements of Rule 9(b).

**B.    Plaintiffs' Section 15 Claim Against The Independent U.S. Directors Should Also Be Dismissed For Failure To Plead Culpable Participation**

Even if Rule 9(b) did not apply to the Section 15 claim (and it does), courts have held that in order to state a Section 15 claim, a plaintiff must allege the controlling person's culpable participation in the primary violation.  *See, e.g., In re Sec. Capital Assurance Ltd. Sec. Litig.*, No. 07 Civ. 11086 (DAB), 2011 WL 4444206, at *7 (S.D.N.Y. Sept. 23, 2011).  Thus, "plaintiffs must also allege, to make out a Section 15 claim, 'meaningful culpable conduct [by an individual defendant] beyond mere status as a director or officer.'"  *Pub. Employees' Ret. Sys. of Miss. v. Merrill Lynch & Co. Inc.*, 714 F. Supp. 2d 475, 485 (S.D.N.Y. 2010).[4]

Here, Plaintiffs' conclusory allegation, devoid of any factual support, that each Section 15 defendant – including the Independent U.S. Directors – was a "culpable participant" in the registration statements' fraudulent representations that Puda owned Shanxi Coal hardly suffices to plead any "meaningful" conduct.  (Compl. ¶ 188.)  As discussed in Point I above, the Complaint alleged no facts showing *any* participation by the Independent U.S. Directors in the

---

[4]    Other courts do not view culpable participation as an element of a Section 15 claim, but even in those cases, such claims will be dismissed for failure to adequately allege control where, as here, the directors "are alleged to be only passive players in any scheme to defraud," because directors will not be held liable "simply because of their titles within the company."  *SafeNet,* 645 F. Supp. 2d at 242.

fraudulent scheme, and Plaintiffs therefore fail to plead this requisite element of their Section 15 claim.

      **C.**    **The Independent U.S. Directors' Affirmative Defense That They Lacked Knowledge Of The Fraudulent Transfer Is Apparent From The Face Of The Complaint, Requiring Dismissal Of The Section 15 Claim**

Additionally, Plaintiff's Section 15 claim must be dismissed because it is apparent from the face of the Complaint that the Independent U.S. Directors lacked knowledge of the alleged fraudulent transfer. Section 15 allows for an affirmative defense that the defendant "had no knowledge of or reasonable ground to believe in the existence of the facts" by which the controlled person allegedly is liable. 15 U.S.C. § 77o. Here, as with the Section 11 claim, the Independent U.S. Directors' affirmative defense that they had no knowledge at the time of the December Offering that Zhao had fraudulently transferred Puda's ownership of Shanxi Coal from Puda is apparent from the face of the Complaint. (*See, e.g.,* Compl. ¶ 153 (*only* Zhao and Zhu were aware of Zhao's fraudulent transfers of Shanxi Coal and neither of them "disclose[d] it to any other director … [or] to the Audit Committee").) Thus, this affirmative defense can be considered on a motion to dismiss. *See MF Global,* 620 F.3d at 145. For the same reasons cited above with respect to the Section 11 claim, dismissal of Plaintiffs' Section 15 claim against the Independent U.S. Directors is also warranted because they lacked knowledge of the alleged fraudulent transfer.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs' Complaint should be dismissed in its entirety with prejudice as against the Independent U. S. Directors.

LIBNY/5202087.1

Dated:  June 1, 2012                    Respectfully submitted,


                                        GOODWIN PROCTER LLP


                                        _____/s/ Richard M. Strassberg_____
                                        Richard M. Strassberg
                                        (rstrassberg@goodwinprocter.com)
                                        Mary K. Dulka
                                        (mdulka@goodwinprocter.com)
                                        Maryana Zubok
                                        (mzubok@goodwinprocter.com)
                                        The New York Times Building
                                        620 Eighth Avenue
                                        New York, New York  10018
                                        Telephone:  (212) 813-8800
                                        Facsimile:  (212) 355-3333

                                        *Attorneys for Defendants*
                                        *C. Mark Tang and Lawrence Wizel*

25

CERTIFICATE OF SERVICE

I hereby certify that on June 1, 2012, I caused a true and correct copy of the foregoing to

be served by electronic means, via the Court's CM/ECF system, on all counsel registered to

receive electronic notices.  I also certify that I have caused copies of the aforementioned

document to be served via first class mail, postage prepaid upon the following non-CM/ECF

participants:

Myron Harris
South 106-Park Tower Place
22nd & Benjamin Franklin Pkwy
Philadelphia, PA 19130
*Counsel for Plaintiff Harriet Goldstein*

Steven R. Popofsky
Moses & Singer LLP
The Chrysler Building
405 Lexington Avenue
New York, NY  10174-1299
*Counsel for Defendant Brean Murray, Carret & Co. LLC*

Joseph A. Baratta
Baratta, Baratta & Aidala LLP
546 5th Ave, 6th Floor
New York, NY 10036
*Counsel for Defendant Moore Stephens, P.C.*

The Corporation Trust Company
Corporation Trust Center 1209 Orange Street
Wilmington, DE 19801
*Agent for Service of Defendant Puda Coal, Inc.*


                                        /s/Richard M. Strassberg
                                          Richard M. Strassberg