UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEWYORK
------------------------------------------------------------------------x


IN RE PUDA COAL SECURITIES INC. et al.          Civil Action No.
LITIGATION                                      11-CV-2598 (BSJ) (HBP)
                                                 (Filed by ECF)



------------------------------------------------------------------------x




# MEMORANDUM OF LAW
## IN SUPPORT OF DEFENDANT MSPC CERTIFIED PUBLIC
## ACCOUNTANTS AND ADVISORS, P.C.'S MOTION TO DISMISS




Dated:  June 1, 2012



                                    BARATTA, BARATTA & AIDALA LLP
                                    Joseph A. Baratta
                                    Ottavio V. Mannarino
                                    546 Fifth Avenue
                                    New York, NY 10036
                                    (212) 750-9700
                                    Attorneys for Defendant
                                    MSPC Certified Public Accountants
                                    and Advisors, P.C. sued as
                                    Moore Stephens, P.C.

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ……………………………………………………  1

STATEMENT OF FACTS ….………………………………………………………  4

ARGUMENT ……………………………………………………………………..  10

POINT I:     PLAINTIFFS' SECTION 11 CLAIM UNDER THE SECURITIES ACT
AGAINST MSPC SHOULD BE DISMISSED   ………………………………… 10

POINT II:    PLAINTIFFS' SECTION 10(b) AND 10b-5 CLAIMS UNDER THE SECURITIES
AND EXCHANGE ACT AGAISNT MSPC SHOULD BE DISMISSED …………… 16

CONCLUSION ……………………………………………………………………  24

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ................................................................. 8

*ATSI Communications v. Sharr Fund*, 493 F.3d 87 (2007)       ............................................. 1,2

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................. 8

*Central Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164 (1994)   ............... 17

*Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 194 ....................................................... 21

*Ganino v. Citizens Utilities Co.*, 228 F.3d 154, 161 (2d Cir.2000)   ................................. 8

*Herman & MacLean v. Huddleston*, 459 U.S. 375 (1983) ............................................. 15

*In re Initial Public Offering Securities Litigation*, 358 F.Supp.2d 189, 205 (SDNY 2004)   ...... 10

*In re Kendall Square Research Corp. Securities Litigation*, 868 F. Supp. At 28   ................... 20

*In re Lehman Bros. Mortgage-Backed Securities Litigation*, 650 F.3d 167 (2011)   ............... 15

*Janus Capital Group, Inc. v. First Derivative Traders*, 131 S.Ct. 2296 (2011) ...................17,19

*Kramer v. Time Warner Inc.*, 937 F.2d 767 (1991) ............................................*passim*

*Lattanzio v. Deloitte & Touche LLP*, 476 F.3d 147 (2d Cir. 2007) .................................18,19

*Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 165 (2d Cir. 2005) ................................... 17

*Novak v. Kasaks*, 216 F.3d 300, 309 (2d.Cir. 2000) .................................................. 22

*Rombach v. Chang*, 355 F.3d 164 (2004) .............................................................. 8

*Rothman v. Gregor*, 220 F.3d 81 (2000)       ............................................................. 1

*San Leandro Emergency Med. Group Profit Sharing Plan v. Phillip Morris Cos.*,
     75 F.3d 801, 808 (2d Cir. 1996) ................................................................. 16

*Shapiro v. Cantor*, 123 F.3d 717, 720 (2d Cir. 1997)   ............................................... 18

*Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.*, 128 S. Ct. 761 (2008)   ....... 20

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S.Ct. 2499, 2501 (2007)   ....................... 21

*Wright v. Ernst & Young LLP*, 152 F.3d 169 (2d Cir. 1998) ....................................*passim*

## STATUTES AND OTHER AUTHORITIES

Page(s)

Federal Rules of Civil Procedure 8(a)(2)……………………………………………… 8

Federal Rules of Civil Procedure 12(b)(6) …………………………………………….. *passim*

Section 11 of the Securities Act  …………………………………………………….. *passim*

Section 10(b) of the Securities Act …………………………………………………….. *passim*

Section 10(b)(5) of the Securities Act  …………………………………………………… *passim*

Fed.R.Evid. 201(b)(2)  …………………………………………………………………… 8,9

Defendant MSPC Certified Public Accountants and Advisors, P.C. ("MSPC") who Plaintiff has arbitrarily grouped with other separate and independent accounting firms, Moore Stephens International Ltd. ("MSIL") and Moore Stephens[1] ("MSHK") and refers to them collectively as "Moore Stephens" or the "Auditor Defendants" (Amended Complaint ¶ 56) submit this Memorandum in support of their motion to dismiss Plaintiffs' Corrected Consolidated Complaint (the "Amended Complaint") pursuant to Federal Rule of Civil procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

<u>PRELIMINARY STATEMENT</u>

MSPC is a New Jersey corporation that is engaged in the practice of public accounting, tax and practices before the Securities and Exchange Commission ("SEC") and sued in this case under its former name Moore Stephens, P.C. (¶ 55 Amended Complaint).   The Amended Complaint refers to MSPC as if its legal name was still Moore Stephens, P.C. by referencing MSPC's Public Company Accounting Oversight Board ("PCAOB") registration. (¶ 101 of the Amended Complaint)   In 2008, prior to the allegations set forth in the Amended Complaint, Moore Stephens, P.C., changed its name to its current legal name "MSPC Certified Public Accountants and Advisors, a Professional Corporation".   MSPC has publicly reported and has practiced under its current name "MSPC Certified Public Accountants and Advisors, a Public Corporation" as reflected in its annual report filings with the PCAOB.[2]   MSPC's annual reports filed with the PCAOB on June 30, 2010 and June 29, 2011 clearly set forth that MSPC's legal name is "MSPC Certified Public Accountants and Advisors, a Professional Corporation" and that its former legal name was Moore Stephens, P.C.

---

[1] The Moore Stephens firm domiciled in Hong Kong is referred to as Moore Stephens Hong Kong ¶54 of the Amended Complaint.

[2] On a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) a District Court may take judicial notice of "any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." *ATSI Communications v. Sharr Fund*, 493 F.3d 87, 98 (2007) (citing *Rothman v. Gregor*, 220 F.3d 81, 88 (2000))

The Amended Complaint cites the MSIL website and attempts to group MSIL, MSHK and MSPC as one entity by referencing the three separate entities as "Moore Stephens[3]."   (Amended Complaint ¶¶ 53-56)  To the contrary, the MSIL website shows that MSIL is a consulting network with independent firms and does not operate as a collective unit in providing accounting services.[4]   PCAOB filings further verify MSPC and MSHK are separate and independent accounting firms which have their own respective accounting practices, clients, officers, directors, employees and stockholders.

Plaintiffs' Amended Complaint alleges that all Defendants violated Section 11 of the Securities Act (Amended Complaint ¶¶ 163-173).  Specifically, Plaintiffs allege that Defendants violated Section 11 of the Securities Act by being "responsible for the content of the December offering materials" (Amended Complaint ¶167) and "did not make a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the registration statements were true and without omissions of any material facts and were not misleading" (Amended Complaint ¶168).

An auditor can only be liable under Section 11 if it consented to the incorporation of its audit report in a registration statement or accompanying filings or consented to be identified as an expert. [5] MSPC is not liable under Section 11 because MSPC did neither.  MSPC did not audit or consent to be named nor was it named as an expert with respect to the Puda Coal, Inc. ("Puda Coal" or the "Company") consolidated financial statements.  MSPC merely acted as an Appendix K reviewer retained by MSHK who was the auditor of Puda Coal.  Resultantly, MSPC is not subject to a claim of liability under Section 11 of the Securities Act.

---

[3] Moore Stephens is a word of art in Plaintiffs Amended Complaint which erroneously aggregates the independent and separate legal entities MSIL, MSHK and MSPC.  As noted in PCAOB and SEC filings, the firm Moore Stephens is a separate accounting firm domiciled in Hong Kong which served as the auditor for Puda Coal during the events alleged in Plaintiffs' Amended Complaint.
[4] See *ATSI Communications v. Sharr Fund*, 493 F.3d 87, 98 (2007) which finds that a District Court may take judicial notice of "statements or documents incorporated into the complaint by reference."
[5] Section 11 of the Securities Act of 1933.

Further, the Amended Complaint alleges that Puda Coal and Defendants Ming Zhao ("Zhao"), Liping Zhu ("Zhu"), Wu and "Auditor Defendants" violated Section 10(b) and 10b-5 of the Securities and Exchange Act (Amended Complaint ¶¶ 191-200).  Specifically, the Amended Complaint alleges that the Defendant "Moore Stephens" violated Sections 10(b) and 10b-5 by alleging "the interim reports for the quarters ending September 30, 2009, May 17, 2010, August 16, 2010, and November 15, 2010 on Forms 10-Q, as well as the Company's S-3 prospectuses supplement and registration statements issued pursuant to the December offering and the Company's 2009 and 2010 annual reports, which were all filed with the SEC, were then materially false and misleading.  Defendants Wu, Zhu, and Zhao are liable for the false statements pleaded herein, as those statements were each 'group-published' information, the result of their collective actions as officers and directors and Defendant Moore Stephens. Additionally, Defendant Moore Stephens fraudulently certified the financial statements contained in each of the annual reports identified herein, without qualification…" (Amended Complaint ¶¶ 196 and 197)

An auditor is liable under Section 10(b) and 10b-5 if it (i) makes a statement (misstatement or otherwise) regarding the specific documents causing plaintiffs to purchase the fraudulent securities, and (ii) has the requisite scienter to defraud plaintiffs in purchasing the fraudulent securities.[6]  MSPC is not liable under Section 10(b) and 10b-5 because MSPC made no such statement (misstatement or otherwise) regarding any documents that plaintiffs relied upon when purchasing the securities.  MSPC was not the auditor of Puda Coal, it merely performed an Appendix K review.  Additionally, there are no facts alleged or that show, with particularity, that MSPC had a cogent and compelling inference of scienter.

---

[6] Section 10(b) and 10b-5 of the Securities and Exchange Act of 1934

Separately, the SEC has asserted claims related to the Puda Coal consolidated financial statements.[7]  Totally absent from the SEC Complaint, is any allegation that fraud was committed by "Moore Stephens" or the "Auditor Defendants" or that there was any violation of securities law on the part of "Moore Stephens" or the "Auditor Defendants".

<u>STATEMENT OF FACTS</u>

Puda Coal is a Delaware Corporation whose principal offices are located in Taiyuan, Shanxi Province, People's Republic of China.  It is registered with the SEC and, at one time, its stock was traded on the New York Stock Exchange until trading was haulted on April 11, 2011 and subsequently delisted August 17, 2011.  Puda Coal had only one active subsidiary known as Shanxi Puda Coal Group Co. Ltd. ("Shanxi Coal") which was actively engaged in the Company's coal mining business in China.  Shanxi Coal was designated by the Shanxi Provincial Government to be authorized to acquire and assemble small coal mines in the Shanxi Province and to combine ownership of those mines so that Puda Coal became an attractive investment to stockholders as a result of obtaining the acquisition and consolidation designation rights.

It is alleged in the SEC Complaint that the Company's Former Chairman and largest stockholder was Zhao (SEC Complaint ¶10).  Zhao and the Company's Former Chief Financial Officer, Zhu, were directly involved in the required financial reporting, accounting and disclosure functions with respect to the Puda Coal's operation. (SEC Complaint ¶18).   Zhao was listed as owning 8%, and his brother Yao Zhao 2% of Shanxi Coal, and that the Company owned the remaining 90% (SEC Complaint ¶14).  The ownership of 90% permitted the Company under accounting rules (i.e. Generally Accepted Accounting Principles ["GAAP"] and Generally Accepted Auditing Standards ["GAAS"]) to consolidate the financial statements of its only operating business into the Company's consolidated financial statements for the fiscal years

---

[7]  See SEC v. Ming, Zhao and Liping Zhu, Southern District of New York Case No.: 12-CV-1316 (the "SEC Complaint").

ended December 31, 2008, December 31, 2009 and December 31, 2010.   The consolidated financial statements of Puda Coal were audited by MSHK and filed with the SEC as required by rules and regulations governing public companies[8].

It is further alleged in the SEC Complaint that, in September 2009, Zhao and Zhu had an opportunity to enrich themselves by engaging in a scheme at the expense of Puda Coal stockholders to secretly steal and sell the Company's only revenue-producing asset, Shanxi Coal, while continuing to fraudulently raise funds from investors by falsely representing that the Company continued to own 90% of Shanxi Coal (SEC Complaint ¶19), when Zhao and Zhu had transferred the ownership of Shanxi Coal to Zhao and an administrative employee, and then sold and pledged a combination of 49% and 51% of the ownership of Shanxi Coal respectively to a Chinese government company known as Citic Juxinhuijin Coal Industry Trust Fund No. I Collective Trust Plan (the "Citic Trust Plan").   The Citic Trust Plan then sold interests in the Citic Trust Plan to Chinese investors in China.   Zhao received payment for his fraudulently obtained ownership interest by receiving over 1.2 billion preferred shares in the Citic Trust Plan in exchange for fraudulently transferring ownership of Shanxi Coal to the Citic Trust Plan (SEC Complaint ¶2).   Additionally, Zhao also signed agreements with the Citic Trust Plan to obtain $369,000,000 in financing for Shanxi Coal from the Citic Trust Plan (a secured loan at 14.5% annual interest) by pledging 51% of the ownership of Shanxi Coal to the Citic Trust Plan, all of which is claimed to have been unknown and not approved or disclosed by Puda Coal to its stockholders, Board of Directors, Audit Committee or auditors.

In 2009, Puda Coal filed a public offering with the SEC, which sold 2.86 million shares of its common stock, and raised $14,500,000.   In 2010, Puda Coal completed a second public financing by offering and selling 7.85 million shares of its common stock, which resulted in

---

[8] Form 10-K Report for Puda Coal fiscal year ended December 31, 2009 filed with the SEC March 31, 2010 and Form 10-K Report for Puda Coal fiscal year ended December 31, 2010 filed with the SEC March 16, 2011.

raising approximately $101,500,000, so that approximately $116,000,000 was raised for the Company by the two offerings (SEC Complaint ¶17). The Company filed Form S-3 Registration Statements with the SEC for the shares sold by the Company in the offerings. During this period, the Company's stock was trading on the public market, and there were shares bought and sold at various prices by investors that are alleged to have relied upon the public information disclosed by Puda Coal in its public filings and press releases.

As a fully reporting issuer, all Puda Coal financial reports were required to be in compliance with GAAP, GAAS, SEC accounting regulations, as well as PCAOB standards. As set forth in the SEC Complaint, MSHK served as Puda Coal's outside auditor and audited its annual financial statements for all of its SEC filings and subsequent public distribution during the time of the events alleged in the Amended Complaint (SEC Complaint ¶29).

As a result of the alleged fraud perpetrated by Zhao and Zhu, an internet report appeared on the Company on April 8, 2011 describing some of the asset transfers and transactions between Zhao and Zhu, and the Citic Trust Plan. Thereafter, there was a steep decline in the price of the Company's common stock and market capitalization (SEC Complaint ¶27). A press release was issued by the Company on April 11, 2011 about an investigation into the transfer of the assets, and the evidence that supported the transfer, and the NYSE halted trading in the Company's stock on that day (SEC Complaint ¶28).

The SEC Complaint further states that "[O]n July 7, 2011, Moore Stephens Hong Kong ("Moore Stephens"), an accounting firm which served as Puda's outside auditor during the time of the events alleged [herein], sent Puda a letter resigning from the engagement and stating that further reliance should no longer be placed on its previously issued audit reports for Puda's fiscal years ended December 31, 2009 and 2010." (SEC Complaint ¶29)

Subsequently, Zhao was alleged to have used a forged letter from the Citic Trust Plan stating that no funds had been invested in Shanxi Coal, and that the Citic Trust Plan had no ownership and would not assert a claim of ownership in Shanxi Coal (SEC Complaint ¶31).  The forged letter was thereafter repudiated by the Citic Trust Plan (SEC Complaint ¶33).

It was alleged by the SEC that Zhu signed materially false and misleading management representation letters that were provided to MSHK in connection with its audits of Puda Coal's annual financial statements and its review of Puda Coal's interim financial statements.  The fraud as alleged in the SEC Complaint was as a result of the deception and manipulation of Puda Coal's former Chairman Zhao and Chief Financial Officer Zhu, and is not alleged to have been attributed to Defendant "Moore Stephens".

MSPC and MSHK are separate accounting firms with distinct clients, officers, directors, employees and ownership.  While MSPC and MSHK are members of the MSIL consulting network, all firms that are members or affiliates are independent and operate separately.

MSPC did not consent to be named as an expert or sign a consent with respect to the Puda Coal financial statements, or in any SEC filings[9], or in any public press releases by Puda Coal, so that MSPC is not subject to Section 11 of the Securities Act claims as alleged in the Amended Complaint by Plaintiffs.

With respect to the claims by the Plaintiffs under sections 10(b) and 10b-5 of the Securities Act, MSPC had no actual knowledge of the alleged fraud perpetrated by Puda Coal's former Chairman (Zhao) or its Chief Financial Officer (Zhu), and MSPC never made or published any statement and/or assisted Zhao or Zhu with respect to the Company's consolidated financial statements.

---

[9] See Form 10-K Reports, Form 10-Q Reports or Form S-3 Registration Statements, as referenced in the Amended Complaint.

STANDARD OF REVIEW

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), the Supreme Court establishes the test to judge the sufficiency of a complaint.  The test now is whether plaintiffs have stated a claim for relief that is "plausible on its face." *Id*. at 1949.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief.' Fed.R.Civ.P. 8(a)(2)."  In determining whether this standard has been met, conclusory allegations, such as plaintiffs' allegations that MSPC performed the audit work of Puda Coal with MSHK and MSIL, are not entitled to "the assumption of truth." *Id*. at 1950.  As the Court explained in *Iqbal*, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice… Rule 8 marks a notable and generous departure from the hyper-technical, codepleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id*. at 1949-1950

When determining a motion to dismiss a complaint pursuant to Fed.R.Civ.P. 12(b)(6), "[the court should] accept[ing] all factual allegations in the complaint as true and draw[ing] all reasonable inferences in the plaintiff's favor.  We uphold a dismissal only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Rombach v. Chang*, 355 F.3d 164, 169 (2004) (Citing *Ganino v. Citizens Utilities Co*., 228 F.3d 154, 161 (2d Cir.2000).  Although courts may normally consider "facts alleged in the

complaint and any documents attached to the complaint or incorporated by reference" Id. at 169, in *Kramer v. Time Warner Inc.*, 937 F.2d 767 (1991) the Court of Appeals for the Second Circuit lists additional documents that are outside of the complaint that a district court may consider when determining whether to grant a 12(b)(6) motion to dismiss.  The rule that the *Kramer* court found is that "a district court may take judicial notice of the contents of relevant public disclosure documents required to be filed with the SEC as facts "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Id*. at 774 (partially quoting Fed.R.Evid. 201(b)(2)).  The Court, therefore, need not only consider certain documents attached to or referenced by the Amended Complaint, but may contemplate any documents required by law to be filed with the SEC.

POINT I

**PLAINTIFFS' SECTION 11 CLAIM UNDER THE SECURITIES ACT AGAINST MSPC SHOULD BE DISMISSED.**

The relevant language of Section 11 of the Securities Act states as follows:

"a.   In case any part of the registration statement, when such part became effective,    contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading,    any person acquiring such security (unless it is proved that at the time of such acquisition    he knew of such untruth or omission) may, either at law or in equity, in any court of    competent jurisdiction, sue—

> 4.  every accountant, engineer, or appraiser, or any person whose profession gives authority to a statement made by him, who has with his consent been named as having prepared or certified any part of the registration statement, or as having prepared or certified any report or valuation which is used in connection with the registration statement, with respect to the statement in such registration statement, report, or valuation, which purports to have been prepared or certified by him;"

**a.   Plaintiffs have failed to allege that MSPC, separate and distinct from the other Moore Stephens defendants, was retained by Puda Coal or affirmatively consented to be named as an Expert to audit or certify Puda Coal's financial statements.**

To state a claim under Section 11 of the Securities Act of 1933, "plaintiffs must allege that the registration statement… contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading…[A] claim under this section can only be asserted against every person who signed the registration statement, the directors of the issuer and the underwriter of security." *In re Initial Public Offering Securities Litigation*, 358 F.Supp.2d 189, 205 (SDNY 2004). Additionally, under Section 11(a)(4) of the Securities Act, every accountant that has consented as having prepared or certified any part of the registration statement, or any report or valuation in connection with the registration statement may be liable.  It is, however, well established that liability under Section 11 is subject to several limitations.  As implemented under the Securities

and Exchange Commission Release No. 33-8501 "independent registered public accounting firms and other experts cannot be held liable under Section 11 unless they affirmatively consent to be named in the registration statement.   Their affirmative consent is evidenced by a manually signed consent which is attached to the SEC filing by a registrant.   Section 11(a)(4) authorizes Plaintiffs to sue an Expert only if the Expert has with his consent been named as having prepared or certified part of the registration statement."   MSPC is not liable under Section 11 because MSPC did not consent to be named as an expert in preparing or certifying any part of the Puda Coal registration statements and they did not consent to be named as an expert regarding any report of valuation in connection with the Puda Coal registration statements.   Further, the complaint does not allege, nor will the Court find any manually signed consent by MSPC attached to the Puda Coal SEC filed documents.   Instead the consents and reports referenced in the Amended Complaint are actually signed by MSHK "Moore Stephens Certified Public Accountants Hong Kong." (Amended Complaint ¶¶ 89, 90, 118,

Plaintiffs' Section 11 claim against MSPC is based on the erroneous and unsupported premise that MSPC, MSIL and MSHK are one combined single legal entity.   Paragraphs 56, 88 – 113, 118, 119, 163 – 173, 192, 193, 197 and 200 of the Amended Complaint refer to the Moore Stephens Defendants.   In fact, MSPC, MSIL and MSHK are separate and independent accounting firms which have their own respective accounting practices, officers, directors, employees and stockholders.   MSPC's Form 2 annual reports, filed with the PCAOB and other public records show that MSPC is a separate legal entity.   The PCAOB annual reports also show that Puda Coal is not one of MSPC's clients.   In addition the audited financial statements of Puda Coal were only signed by MSHK indicating that it is a separate and distinct firm.   MSHK is also registered with the PCAOB as a separate accounting firm.   MSIL and Moore Stephens North America ("MSNA")

do not perform accounting services, as they perform promotional, organization and networking services for the independent members of MSIL.[10]

MSPC was never retained as an Expert by Puda Coal, nor did MSPC sign a consent of any kind regarding Puda Coal's financial statements or reports as filed by Puda Coal with the SEC which include the Form S-3 Registration Statement filed by Puda Coal, Form 10-K Annual Report filed with the SEC, for fiscal years 2009 and 2010 and 10Q Reports, as stated in the Amended Complaint.  In fact, Puda Coal's financial statements show that MSHK was the only auditor that consented to the documents that Puda Coal filed with the SEC.  MSPC did not sign off on or certify any of the financial statements.    MSPC was only retained by MSHK to perform an Appendix K review.

As published on the PCAOB website, an Appendix K reviewer's procedures are limited to the following:

a. *Procedures for Certain Filings by SEC Registrants*—The policies and procedures should address the performance of procedures with respect to certain SEC filings by SEC registrants that are clients of foreign associated firms by a person or persons knowledgeable in accounting, auditing, and independence standards generally accepted in the U.S., independence requirements of the SEC and ISB, and SEC rules and regulations in areas where such rules and regulations are pertinent (the "filing reviewer"). The procedures are performed to provide assistance to the partner of the foreign associated firm responsible for the audit (the "audit partner-in-charge of the engagement") and the foreign associated firm. Such filings are limited to registration statements, annual reports on Form 20-F and 10-K, and other SEC filings that include or incorporate the foreign associated firm's audit report on the financial statements of an SEC registrant.

The procedures performed by the filing reviewer should generally include the following:

(1) Reading the document to be filed with the SEC with particular attention given to compliance as to form of the financial statements (and related schedules) and auditors' report with the applicable accounting and financial reporting requirements for such filings by the SEC registrant.

---

[10] See MSIL website  as referenced in Amended Complaint

Discussing with the audit partner-in-charge of the engagement:

(2)

   (i)  the engagement team's familiarity with and understanding of the applicable U.S. auditing, accounting, financial reporting, and independence standards, including independence requirements of the SEC and the ISB;

  (ii)  the significant differences between: (a) the accounting and financial reporting standards used in the presentation of the financial statements included or incorporated in the document to be filed with the SEC and those applicable in the U.S., and (b) the auditing and independence standards of the foreign associated firm's domicile country and those applicable in the U.S.; and

(iii)  any significant auditing, accounting, financial reporting, and independence matters that come to the attention of the filing reviewer when performing the procedures described above, including how any such matters were addressed and resolved by the audit partner-in-charge of the engagement.

Documenting the results of the procedures performed.

(3)

The procedures performed by the filing reviewer described above do not relieve the audit partner-in-charge of the engagement of any of the responsibilities for the performance of the audit of, and the report rendered by the foreign associated firm on, the financial statements included in the document to be filed with the SEC. Also, the filing reviewer does not assume any of the responsibilities of the audit partner-in-charge of the engagement or of any concurring reviewer.

Because of the limited nature of the procedures described above, it is recognized that the filing reviewer can not and does not assume any responsibility for detecting a departure from, or noncompliance with, accounting, auditing, and independence standards generally accepted in the U.S., independence requirements of the SEC and ISB, or SEC rules and regulations.

b.  *Inspection Procedures*—The policies and procedures should address the review of a sample of audit engagements performed by foreign associated firms for clients that are SEC registrants. Such reviews may be performed as part of an annual inspection program of the international organization or the individual foreign associated firms. The reviews of engagements should be performed by a person or persons knowledgeable in accounting, auditing, and independence standards generally accepted in the U.S., independence requirements of the SEC and ISB, and SEC rules and regulations in areas where such rules and regulations are pertinent (the "inspection reviewer"). The need for knowledge of relevant specialized industry practices should be considered.

Based on the procedures performed, the inspection reviewers should determine whether anything came to their attention to cause them to believe that:

(1) the financial statements were not presented in all material respects in conformity with accounting principles generally accepted in the U.S. or, if applicable, the footnote reconciliation of the financial statements to U.S. GAAP did not include appropriate treatment of the material reconciling items,

(2) the audit engagement was not performed in accordance with auditing standards generally accepted in the U.S.,

(3) the document(s) filed with the SEC did not comply as to form of the financial statements (and related schedules) with pertinent SEC rules and regulations for such filings,

(4) the foreign associated firm did not comply with the applicable U.S. independence standards, including independence requirements of the SEC and ISB with respect to the SEC registrant, or

(5) the foreign associated firm did not comply with procedures consistent with those described in .01a. above.

c.  *Disagreements*—The policies and procedures should provide that if the filing or inspection reviewer and the audit partner-in-charge of the engagement have conflicting views as to the resolution of matters that came to the attention of the filing or inspection reviewer when performing the procedures for certain filings or inspection described above, that disagreement should be resolved in accordance with the applicable policy of the international organization or of the filing or inspection reviewer's firm.

As an Appendix K reviewer, MSPC reviewed the audited work of a foreign accounting firm, MSHK.   It is clear that MSHK was the only accounting firm to audit Puda Coal's financial statements for two reasons.   First, MSHK is the only entity to have signed and consented to the financial statements.[11]  Second, the procedures of an Appendix K reviewer is limited and do not relieve the audit partner in charge of responsibilities for the performance of the audit and is recognized that the filing reviewer cannot and does not assume any responsibilities for detecting a departure from or noncompliance with accounting, auditing and independence standards.   It is not the procedure for an Appendix K reviewer to consent or certify any audited financial

---

[11] As referenced in the Puda Coal SEC filed documents and the Amended Complaint.

statements.   Since MSPC could not consent to any financial statements as an Appendix K reviewer, Section 11 liability cannot attach to MSPC.

In Both the Supreme Court's decision in *Herman & MacLean v. Huddleston*, 459 U.S. 375 (1983) and the United States Court of Appeals, 2nd Circuit case *In re Lehman Bros. Mortgage-Backed Securities Litigation*, 650 F.3d 167 (2011) the Courts have found that accountants that have not consented to be named or that have not certified any of Plaintiffs' financial or registration statements as an auditor, cannot be held liable under Section 11.   Therefore, since Plaintiffs have failed to allege in the Amended Complaint that MSPC consented to or certified any of Puda Coal's financial statements, the Section 11 claim should be dismissed as to defendant MSPC.

**POINT II**

**PLAINTIFFS' SECTION 10(b) AND 10b-5 CLAIMS UNDER THE
SECURITIES AND EXCHANGE ACT AGAINST MSPC SHOULD BE
DISMISSED.**

The relevant law of Section 10(b) the Securities and Exchange Act states as follows:

*"It shall be unlawful for any person, directly or indirectly, by the use of any means or
instrumentality of interstate commerce or of the mails, or of any facility of any national
securities exchange—*
*b.       To use or employ, in connection with the purchase or sale of any security registered
on a national securities exchange or any security not so registered, or any securities-based
swap agreement (as defined in section 206B of the Gramm-Leach-Bliley Act), any
manipulative or deceptive device or contrivance in contravention of such rules and
regulations as the Commission may prescribe as necessary or appropriate in the public
interest or for the protection of investors."*

The relevant law of Section 10b-5 of the Securities and Exchange Act states as follows:

*"It shall be unlawful for any person, directly or indirectly, by the use of any means or
instrumentality of interstate commerce, or of the mails or of any facility of any national
securities exchange,*

*a.       To employ any device, scheme, or artifice to defraud,*
*b.       To make any untrue statement of a material fact or to omit to state a material fact
necessary in order to make the statements made, in the light of the circumstances under
which they were made, not misleading, or*
*c.       To engage in any act, practice, or course of business which operates or would operate
as a fraud or deceit upon any person,*

*in connection with the purchase or sale of any security."*

To state a claim under Section 10(b) and Rule 10b-5 promulgated thereunder based on

employing devices, schemes and artifices to defraud and material misrepresentations and

omissions, "a plaintiff must plead that the defendant made a false statement or omitted a

material fact, with scienter, and that plaintiff's reliance on defendant's action caused plaintiffs

injury." *San Leandro Emergency Med. Group Profit Sharing Plan v. Phillip Morris Cos.*, 75 F.3d 801,

808 (2d Cir. 1996).  Plaintiffs' 10(b) claim against Defendant MSPC is based on the certification

by MSHK's of Puda Coal's Form 10K and Form S-3 registration statements as well as the audited

financial statements of Puda Coal for the fiscal years ending December 31, 2009 and December

31, 2010.    Plaintiffs allege that the Moore Stephens Defendants" (MSPC, MSHK and MSIL) prepared, consented to and signed the audit reports contained in the registration statements. However, MSPC is a separate legal entity which did not perform any of the audits contained in the registration statements.  Although case-law suggests that "in reviewing a dismissal pursuant to Federal Rules of Civil Procedure 12(b)(6) we assume plaintiffs' allegations to be true" *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 165 (2d Cir. 2005) these allegations can not be relied upon when there is documentary evidence establishing the falsity of the allegations. Instead, on a 12(b)(6) motion to dismiss the Court may look to outside documents which may prove the falsity of the allegations.  See *Kramer* supra.

Arbitrarily grouping separate and independent accounting firms into one aggregate entity (Moore Stephens Defendants) to allege conclusory statements of fraud, without actually alleging any of the specific misstatements or specific omissions of fraud committed by MSPC does not satisfy the pleading requirements under Sections 10(b) and 10b-5 of the Exchange Act.  *Central Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164 (1994) and *Janus Capital Group, Inc. v. First Derivative Traders*, 131 S.Ct. 2296 (2011) and the Second Circuit's holdings in *Wright v. Ernst & Young LLP*, 152 F.3d 169 (2d Cir. 1998) and *Lattanzio v. Deloitte & Touche LLP*, 476 F.3d 147 (2d Cir. 2007) all held that there is no 10(b) or 10b-5 claims against a defendant where the defendant does not actually make the statement or omission that is false, and lacks the requisite scienter to defraud purchasers of securities.  The Amended Complaint fails to allege that MSPC as an Appendix K reviewer made any statement at all regarding the audited financial statements (whether a misstatement or omission), that MSPC did not participate in a scheme to defraud, and that MSPC had the requisite scienter to defraud purchasers.

a.     PLAINTIFFS' SECTION 10(b) AND 10b-5 CLAIM FAILS BECAUSE PLAINTIFFS HAVE NOT IDENTIFIED OR PLEAD WITH PARTICULARITY ANY MISSTATEMENT THAT WAS SPECIFICALLY MADE OR OMMITTED BY AND ATTRIBUTED TO MSPC.

In *Central Bank*, the Supreme Court held that Section 10(b) of the Securities and Exchange Act does not reach any individuals or entities who aid and abet the individuals or entities that make misstatements or omissions "[but] prohibits only the making of a material misstatement (or omission) or the commission of a manipulative act." *Id*. at 177. Therefore, the Supreme Court has found that a party must actually make a material misstatement (or omission) to be liable under Section 10(b).

The Second Circuit in both *Wright v. Ernst & Young LLP*, 152 F.3d 169 (2d Cir. 1998) and *Lattanzio v. Deloitte & Touche LLP*, 476 F.3d 147 (2d Cir. 2007)*,* applied *Central Bank's* principle and dismissed Section 10(b) claims against an auditor based on an allegedly false press release that was not made by, or attributed to, the auditor in *Wright*, or to an auditing firm that was hired to perform services as a Filing Reviewer of financial statements in *Lattanzio* similar to the Appendix K Review services performed by MSPC of MSHK in the within case.

In *Wright*, the Court reasoned that "if *Central Bank* is to have any real meaning, a defendant must actually *make* a false or misleading statement in order to be held liable under Section 10(b). Anything short of such conduct is merely aiding and abetting, and no matter how substantial that aid may be, it is not enough to trigger liability under Section 10(b)." *Id*. at 175 (emphasis added) (quoting *Shapiro v. Cantor*, 123 F.3d 717, 720 (2d Cir. 1997)). Moreover, because Section 10(b) requires a showing that the plaintiff relied on the defendant's misstatement, "the misrepresentation must be attributed to that specific actor at the time of public dissemination." *Id*. at 175. The Court's holding was clear: "accountants… may no longer be held primarily liable under § 10(b) for mere knowledge and assistance in the [alleged] fraud." *Id*. at 176.

18

In *Lattanzio*, the Court also found that the financial reports "did not purport to be audited by Deloitte, did not contain an audit opinion by Deloitte, and were not attributed to Deloitte when they were disseminated.  Under the principles in *Central Bank*, Deloitte was not liable for merely assisting in the drafting and filing of the quarterly statements." *Lattanzio*, 476 F.3d at 154 (citing *Wright*, 152 F.3d at 174).  Since the auditor did not make any statement as to the financial statements, they could not be held liable under Sections 10(b) or 10b-5 of the Securities and Exchange Act.  MSPC did not audit, provide an opinion or disseminate any of the Puda Coal financial statements.  Here again, Plaintiffs have not specifically alleged that MSPC was the auditor or made any statement or omission of any of the Puda Coal Financial Statements other than alleging that MSPC is part of the Moore Stephens Defendants, which is contrary to the PCAOB Form 2 annual reports and the MSIL website.

The Supreme Court further clarified this holding in *Janus* where the Court held that "to be liable (a defendant) must have "*made*" the material misstatements." 131 S.Ct. at 2301 (emphasis added).  The Court went on to define "maker" of a statement under 10b-5 purposes: "the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it." *Id.* at 2298.

In their limited role as an Appendix K reviewer, MSPC did not publish or make any such statements, whether a misstatement or not, regarding the Puda Coal financial statements, Registration Statements or audited Financial Statements.  In all the aforesaid cited cases that were dismissed, all the defendants in some way were alleged to have been involved in aiding and abetting misstatements about the companies the plaintiffs had invested in.  However, the Courts have held with respect to accounting firms that there is no Section 10(b) and 10b-5 liability for mere aiding and abetting.

In the instant case, MSPC did not make any statement whether a misstatement or not about Puda Coal.  MSPC was retained by MSHK to prepare an Appendix K file review, which it did.   As the Court held in *Wright*, "where an accountant did not issue a report on the company's financial statements, but merely "reviewed and approved" them, the accountant could not be liable for a material misrepresentation." *Wright* at 175 (quoting *In re Kendall Square Research Corp. Securities Litigation*, 868 F. Supp. At 28) MSHK's audits of Puda Coal in no way attributed MSPC to any of the audits of the financials or registration statements to be offered to the public. MSPC had no agreement with Puda Coal; its agreement was with MSHK to provide only the services performed of an Appendix K reviewer.  See *Supra*   Therefore, Plaintiffs' Section 10(b) and 10b-5 claims should be dismissed because MSPC did not make any statements regarding the Puda Coal financial statements.

Plaintiffs attempt to gloss over the lack of liability by attempting to bring a Section 10(b) and 10b-5 claim under a theory that does not require proof that MSPC made any statement regarding the Puda Coal financial statements.  Instead, Plaintiffs allege that MSPC (as well as MSHK and MSIL the Moore Stephens defendants collectively and Defendants Wu, Zhu and Zhao) are all liable under Section 10(b) and 10b-5 because they "employed devices, schemes, and artifices to defraud…and engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Puda's securities." (Amended Complaint ¶192.)  However, as the Amended Complaint failed to allege that MSPC made any statement regarding the Puda Coal's Securities, the Amended Complaint again fails to allege facts, with particularity, that MSPC participated in any such scheme.  Further, the Supreme Court in *Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.*, 128 S. Ct. 761 (2008) decided that Plaintiffs are precluded from bringing a Section 10(b) and 10b-5 claim premised upon such a theory.  The

throwing of a wide fishnet into the water with the hope of catching a specific fish does not work under applicable case-law.

In *Stoneridge*, the Court held that a Plaintiff could not use "scheme liability" to impose Section 10(b) liability on a defendant that did not make any misstatement (or omission). *In Stoneridge*, the Court discussed whether business partners of an issuer were primarily liable under Section 10(b) by enabling the issuer's misleading statements, while not actually making the misstatements themselves. The Petitioner's argument in *Stoneridge* maintained that the business partners "engaged in conduct…of creating a false appearance of material fact to further a scheme to misrepresent…revenue." *Id*. at 770. The Court rejected this argument as an attempt to circumvent *Central Bank's* holding, stating "were this concept of reliance to be adopted, the implied cause of action would reach the whole marketplace in which the issuing company does business; and there is no authority for this rule." *Id*. at 770. It is evidence that Section 10(b) liability does not attach to a defendant unless they make the misstatement (or omission).

In the instant case, MSPC did not engage in any conduct with a purpose of furthering a scheme to misrepresent investors about Puda Coal's revenue. Plaintiffs have made no such specific allegation against MSPC. However, assuming arguendo, even if MSPC participated in such conduct, under *Stoneridge*, Section 10(b) liability would not attach to them. The Court has made clear that liability attaches only to those who make the public statements relating to a security, not the transactions or efforts behind those public statements. *Id*. at 770-771.

**b.   PLAINTIFFS FAILED TO PLEAD WITH PARTICULARITY THE REQUISITE SCIENTER UNDER SECTION 10(b) AND 10b-5.**

The pleading requirement to sufficiently allege scienter under Section 10(b) is well established. The Supreme Court in *Tellabs, Inc. v. Makor Issues & Rights, Ltd.* addresses the requirement as listed under the Private Securities Litigation Reform Act of 1995 ("PSLRA").

> "The PSLRA requires plaintiffs to state with particularity both the facts constituting the alleged violation, and the facts evidencing scienter, i.e. the defendant's intention to deceive, manipulate, or defraud." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S.Ct. 2499, 2501 (2007) (quoting, Ernst & Ernst v. Hochfelder, 425 U.S. 185, 194.

Accordingly, the Court held that "the inference of scienter must be more than merely reasonable or permissible – it must be cogent and compelling, thus strong in light of other explanations.  A Complaint will survive…only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged" Id. at 2510.

The Plaintiffs' Complaint against MSPC must be dismissed because they fail to allege the requisite scienter under Section 10(b) to maintain a securities fraud action.  As the Court in Novak v. Kasaks found, "the failure…to identify problems with…accounting practices does not constitute reckless conduct sufficient for § 10(b) liability… allegations of GAAP violations or accounting irregularities, standing alone, are insufficient to state a securities fraud claim.  Only where such allegations are coupled with evidence of corresponding fraudulent intent, might they be sufficient.  Novak v. Kasaks, 216 F.3d 300, 309 (2d.Cir. 2000) (citations omitted).

Even if the Plaintiffs Section 10(b) claim were not otherwise precluded for the reasons given above, the claim must be dismissed as to MSPC because plaintiffs fail to allege facts sufficient to support a "strong inference" of scienter.  MSPC only performed an Appendix K file review; they did not perform any audits of Puda Coal  financial statements.  The most that can be inferred from the amended complaint about MSPC's state of mind is that it took its Appendix K responsibilities seriously, and tried in good faith to discharge any responsibilities by apprising MSHK of SEC filing requirements.  The Amended Complaint contains no facts that MSPC consciously avoided learning of the fraud nor can it support an inference that MSPC counseled MSHK to misrepresent Puda Coal's financial condition.   Indeed, it contains little more than boilerplate allegations that recite stautory language.

The Amended Complaint is devoid of any allegations suggesting that MSPC was involved in a fraud.  Again, the Amended Complaint arbitrarily aggregates  the separate legal entities and alleges that MSPC is a part of Defendant Moore Stephens.  However, as clearly shown, MSPC is a separate legal entity that did not perform any audits of the Puda Coal financial statements.  Further, there are no facts alleged in the Amended Complaint that MSPC audited any of Puda Coal's financial statements or that MSPC acted reckless in preparing their Appendix K review.  Therefore, the Section 10(b) and 10b-5 claims should be dismissed.

<u>CONCLUSION</u>

Plaintiffs Amended Complaint is deficient under Section 11 of the Securities Act, as both the applicable case law and the plain meaning of the statute shows that no action lies against Defendant MSPC as an Appendix K Reviewer when it did not audit or consent to be named as an Expert with respect to the Puda Coal financial statements filed with the SEC.

With respect to Sections 10(b) and 10b-5 of the Securities and Exchange Act, Plaintiffs have failed to allege that MSPC specifically made any false statements or omission or engaged in any scheme or device to defraud or artifice to defraud stockholders or the public with respect to Puda Coal's consolidated financial statements.

Therefore the Section 11, 10(b) and 10b-5 claims should be dismissed, and the Court should grant MSPC such other and further relief as to this Court may seem just and proper.

Respectfully submitted,

BARATTA, BARATTA & AIDALA LLP

By:   <u>/s/ Ottavio Mannarino</u>
Joseph A. Baratta
Ottavio V. Mannarino
Attorneys for Defendant
MSPC Certified Public Accountants
and Advisors, P.C. sued as
Moore Stephens, P.C.
546 Fifth Avenue
New York, NY 10036
(212) 750-9700

G:\BB&A\Current\2012\Clients\MSPC\Puda Coal\Pleadings\MOL 5-31-12 VER JAB clean.doc

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 1, 2012, I caused a true and correct copy of the foregoing to be served by electronic means, via the Court's Company/ECF system, on all counsel registered to receive electronic notices.  I also certify that I have caused copies of the aforementioned documents to be served via first class mail, postage prepared upon the following non-CM/ECF participants:

Myron Harris
South 106-Park Tower Place
22nd & Benjamin Franklin Parkway
Philadelphia, PA 19130

*Counsel for Plaintiff Harriet Goldstein*

Steven R. Popofsky
Moses & Singer LLP
The Chrysler Building
405 Lexington Avenue
New York, NY  10174-1299

*Counsel for Defendant Brean Murray, Carret & Co. LLC*

The Corporation Trust Company
Corporation Trust Center 1209 Orange Street
Wilmington, DE  19801

*Agent for Service of Defendant Puda Coal, Inc.*

<u>/s/ Ottavio Mannarino</u>
Ottavio Mannarino