GLANCY BINKOW & GOLDBERG LLP
ATTORNEYS AT LAW

NEW YORK OFFICE
122 EAST 42ND STREET, SUITE 2920
NEW YORK, NY 10168
TELEPHONE (212) 682-5340
FACSIMILE (212) 382-3944

1925 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CALIFORNIA 90067

TELEPHONE (310) 201-9150
FACSIMILE (310) 201-9160
Info@glancylaw.com

SAN FRANCISCO OFFICE
ONE EMBARCADERO CENTER, SUITE 760
SAN FRANCISCO, CA 94111
TELEPHONE (415) 972-8160
FACSIMILE (415) 972-8166

VIA E-FILING

March 7, 2014

Hon. Katherine B. Forrest
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Courtroom 15A
New York, New York 10007-1312

      Re:   *In re Puda Coal Securities Inc. et al. Litigation*
             Civil Action No.11-cv-2598 (KBF)

Dear Judge Forrest:

      As required by the Court's Memorandum Decision & Order, dated February 21, 2014 (the "Order"), Plaintiffs filed a letter on February 28, 2014, stating their position with respect to the impact of the Court's most recent ruling on the intervention appeal and the current pre-trial schedule. Dkt. No. 309. In response, a lot of ink has been spilled. Counsel for underwriter Brean Murray Carret & Co., former Puda Coal, Inc. directors Lawrence Wizel and C. Mark Tang, and auditor Moore Stephens Hong Kong, all filed letters addressing the same subjects. Dkt. Nos. 307, 310, 313 and 314.[1] Underwriter Macquarie Capital (USA) Inc. filed two letters *and* a motion. Dkt. Nos. 306, 315-317. Plaintiffs and Trellus Management LLC look forward to addressing all of the issues raised at the upcoming Status Conference. To ensure that nothing is inadvertently overlooked, however, the following response is respectfully submitted.

### Plaintiffs' Understanding of the Effect of the Court Granting Trellus's Intervention Motion

      The Court's Order indicated that it would grant Trellus's Rule 60(b) motion and, in turn, its May 13, 2013, intervention motion. Order at 2 and 4. The Court held that Trellus satisfied the requirements to intervene as of right, finding that: (i) excluding it from the action would "impede [its] ability to protect its interest," and (ii) its motion was timely. Order at 4 (citing *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 389 (2d Cir. 2006) (stating conditions for granting intervention pursuant to Rule 24(a)). Because the Court's timeliness analysis expressly referenced the Kroll Report and the Section 10(b) claim against Macquarie,

---

[1] Counsel for MSHK wrote on behalf of itself and Moore Stephens, P.C. ("MSPC") (collectively, the "Auditors").

*see* Order at 3-4, Brean Murray argues that the Court's Rule 24(a)(2) determination applies exclusively to Macquarie. This argument is erroneous for three reasons.

***First***, an intervenor as of right is "entitled to litigate fully on the merits once intervention has been granted." 7C Fed. Prac. & Proc. Civ. § 1920 (3d ed.); *see also In re Oceana Int'l, Inc.*, 49 F.R.D. 329, 333-34 (S.D.N.Y. 1969). Having satisfied the requirements of Rule 24(a)(2), Trellus's intervention permits it to prosecute the Securities Act claims that already survived motions to dismiss. Trellus is entitled to assert these claims against *all* defendants, regardless of which ones may have received the Kroll Report: "The very purpose of intervention, whether of right or permissive, is to enable those satisfying the requirements of Rule 24 to assert their interests in all pending aspects of the lawsuit, within the limitations of purpose imposed at the time of intervention." *United States v. Bd. of Ed.*, 605 F.2d 573, 576 (2d Cir. 1979).

***Second***, Brean Murray cites no case holding that Rule 24(a)(2) must be satisfied for each defendant. Moreover, Brean Murray fails to explain how Trellus's motion could be timely only as to Macquarie but not as to Brean Murray and the former directors. "The timeliness inquiry focuses on the prejudice the parties would suffer if an intervenor were permitted to join the litigation at the point intervention was first sought." *United States v. New Jersey*, Civ. No. 10-91 (KSH) (MAS), 2012 WL 3265905, at *30 (D.N.J. June 12, 2012) *aff'd*, 522 F. App'x 167 (3d Cir. 2013). When Trellus sought intervention, both underwriters and the former directors were in the case. If Trellus's motion was timely as to Macquarie, *see* Order at 4, it was timely as to all.

***Third***, although the 1966 advisory note to Rule 24 states that an intervention of right "may be subject to appropriate conditions or restrictions," most courts have held that no conditions can be placed on intervention of right. *See Columbus-Am. Discovery Grp. v. Atl. Mut. Ins. Co.*, 974 F.2d 450, 469 (4th Cir. 1992) (citations omitted) ("[H]istorically most courts and commentators have held that conditions cannot be imposed on such intervention [of right]."). Moreover, any conditions imposed are to be "of a housekeeping nature" and not limit intervenors' substantive claims. *See* 7C Fed. Prac. & Proc. Civ. § 1922 (3d ed.); *United States v. Exxon Corp.*, 773 F.2d 1240, 1306 (Temp. Emer. Ct. App. 1985) (permitting intervention only for the purpose of appeal is "contrary to Rule 24(a)"). Consequently, only in the interest of fairness and efficiency, have courts: (i) "subject[ed] [intervenors] to limitations prohibiting them from raising claims outside the scope of those raised by the original parties or from raising collateral issues," *Brady Campaign to Prevent Gun Violence v. Salazar*, 612 F. Supp. 2d 1, 11 n.8 (D.D.C. 2009); and (ii) excluded intervenors from matters in the litigation not affecting their interests or affecting interests that are already being adequately represented, *San Juan Cnty., Utah v. United States*, 503 F.3d 1163, 1189 (10th Cir. 2007).

Here, Trellus only seeks to assert claims already alleged by Class Plaintiffs; limiting the defendants against whom Trellus and the class may assert Securities Act claims not only goes beyond mere "housekeeping," but would seriously "impede [Trellus's] ability to protect its interest" in the litigation. Order at 4. By comparison, whereas defendants' letters make clear that they anticipate taking discovery from each other, Brean Murray and the former directors will be involved with discovery in connection with the remaining parties' efforts to mount a due diligence affirmative defense. Their presence as party-defendants does not impede the efficient

resolution of the action.[2]

**The Status of the Pleadings**

      Macquarie expresses outrage at the fact that the amended complaint filed on February 28, 2014, is, with the exception of removing redactions following de-designation of the Kroll Report, the same one that was proposed on January 6, 2014. Dkt. No. 315. Of course it is: Macquarie is well aware that what was filed is all that is legally permitted to have been filed at this point in time. The Court granted Class Plaintiffs leave to file the amended complaint submitted for its review on January 6, 2014, and the Auditors agreed not to oppose the filing of *that* complaint. Although the Court later indicated its intention to grant Trellus Management LLC's motion to intervene, that provides no basis for Class Plaintiffs to have filed a complaint also containing Trellus's claims. The Second Circuit retains jurisdiction over Trellus's intervention motion until such time as Trellus files a Fed. R. App. P. 12.1 notification that this Court intends to grant its Rule 60(b) motion, should jurisdiction be returned to it. Only after jurisdiction is returned to this Court, and the Rule 60(b) motion and intervention are formally granted, may Trellus proceed to add its claims to those of the class in a single complaint. If Macquarie agrees to stop contesting Trellus's intervention, Plaintiffs do not oppose a stay of Macquarie's obligation to respond to the Section 10(b) claim until one consolidated pleading is filed upon Trellus's intervention.[3]

---

[2] Defendants appear to be trying to convince the Court to revert to its initial position denying intervention by threatening a lengthy delay in the matter going to trial, with MSHK estimating that additional discovery might take "a year or more." Dkt. No. 313 at 4. Such claims are both irrelevant and overstated – especially in light of the fact that the Auditors have produced substantial discovery to date, as have Tang, Wizel, Macquarie and Brean Murray (although to a lesser extent). Moreover, ***defendants only find themselves in this position because they decided not to take discovery from one another after their motions to dismiss were denied.***

Both in its most recent letter and in its opposition to Plaintiffs' earlier request for a continuance of the fact discovery cut-off, MSHK roundly criticized Plaintiffs for not completing fact discovery quickly enough. However, from the time the Auditors' document production was finally completed in early October (and, as MSHK explained, its production simply could not be accomplished sooner, *see* Dkt. No. 269 at 2), through the close of fact discovery on December 20, 2013, Plaintiffs: (1) reviewed hundreds of thousands of pages of documents produced by MSHK (which proved nearly impossible because MSHK refused to produce the workpapers in native format and instead provided a completely disorganized mass of .tiff images) and MSPC and subpoenaed from the underwriters, the former directors, Shearman & Sterling, Sidley Austin, and Goodwin Proctor; (2) took 11 depositions; and (3) served and responded to several sets of written discovery. Suddenly, now that the shoe is on the other foot, the Court and Plaintiffs are told it may take more than a year to complete what discovery remains to be taken on the Section 10(b) claims and the affirmative defense of due diligence. Counsel for Macquarie assured the Court last July, that discovery on the Section 11 claims could be completed in less than two months (between September 27, 2013, summary judgment hearing date and the then-discovery cut-off of November 21, 2013). Dkt. No. 233 at 2-3. While that prediction may be too optimistic, defendants should be held to as tight a schedule as Plaintiffs have been.

[3] Macquarie's assertion that its motion for reconsideration and its proposed opposition to the Rule 60(b) motion are not two separate attempts to make the same argument is spurious. Dkt. No. 315 at 1-2. By its nature, a Rule 62.1 motion sets forth the underlying Rule 60(b) motion the movant wants the Court to issue an indicative ruling upon. Macquarie is well aware of Trellus's arguments as to why its Securities Act claims are neither time-barred nor untimely. The Motion for Reconsideration argues, and any Rule 60(b) opposition would argue, the contrary.

Hon. Katherine B. Forrest
March 7, 2014
Page 4

### The Bases for Plaintiffs' Suggestion that the
### Summary Judgment Motion Briefing Should Be Adjourned

Although the Auditors attempt to portray it otherwise (Dkt. No. 313 at 5-6), Plaintiffs' request that summary judgment briefing be adjourned until the end of all discovery relating to the various claims added and returned to the action is based entirely upon the Court's February 21, 2014, Order—and not any great revelation contained in the Auditors' summary judgment motions.[4] Clearly, Plaintiffs' view of the Order as a potential "game changer" with respect to all of the parties to the litigation, was shared by others: Both underwriters' strongly-worded letters, and Macquarie's motion, clearly reveal that they do not wish to be back before the Court defending Securities Act claims in a case where their due diligence uncovered *before* the December 8, 2010, offering that Puda no longer owned its sole operating subsidiary, Shanxi Puda Coal Group, Ltd. ("Shanxi Coal").[5] Although former Puda directors Wizel and Tang profess to have had no knowledge of the Kroll Report (commissioned by the underwriters), even they recognize that they would need to take additional discovery of other defendants and/or third parties and that their expert would have to resume his work on their due diligence defense once Trellus intervenes.

Only counsel for the Auditors contends that the Order has little relevance to their liability to Plaintiffs, under either Section 11 or Section 10(b). Indeed, they argue that they should be able to escape *all* liability herein based upon the summary motions *as currently drafted*. Should the Court *not* adjourn the briefing on summary judgment, the Auditors should not be given two bites at the apple: Because they believe that no facts that will be uncovered with respect to the claims arising from the December Offering have any relevance to their liability, they should be barred from filing new summary judgment motions on either the Section 11 claim or the Section 10(b) claim at the close of discovery should the instant ones not be granted in its entirety as to all claims. In the interests of judicial economy, however, what makes more sense is to adjourn all briefing until the close of all discovery. Although the Auditors *now* claim that Plaintiffs should have immediately sought to reopen discovery when they became aware of the Kroll Report the day before fact discovery concluded, their likely response would have been to vehemently oppose a fact discovery extension (as they had before), claiming, as they do now, that Plaintiffs should have moved more expeditiously to obtain the third-party discovery from Macquarie. It is the Auditors, not Plaintiffs who have a hole in their case on the purported dispositive motions.[6]

---

[4] After Plaintiffs voluntarily withdrew one of their experts on January 20, 2014, it was clear that the Auditors would argue that Plaintiffs do not have sufficient evidence to oppose summary judgment. Plaintiffs did not first learn of this argument when the motions were filed on February 14, 2014, determine the sky is falling, and suddenly decide to use the belated production of the Kroll Report as an excuse to delay resolution of the Auditors' liability.

[5] MSHK's bizarre suggestion that Plaintiffs are "uncertain about the viability of the potential Section 11 claim," Dkt. No. 313 at 3, is further belied by the underwriters' efforts to block Trellus's intervention, to obtain summary judgment against Mr. Rosenberger, and to obtain a stay on merits discovery pending a ruling on summary judgment.

[6] As this Court's ruling on their pleadings motions already demonstrated, the subjective falsity argument is not the magic bullet the Auditors claim it to be. In *In re Longtop Fin. Techs. Ltd. Sec. Litig.*, 910 F. Supp. 2d 561, 580 (S.D.N.Y. 2012), a case cited by MSHK (Dkt. No. 313 at 4), the Court recognized that subjective falsity was not

Hon. Katherine B. Forrest
March 7, 2014
Page 5

      In conclusion, Class Plaintiffs and Trellus are eager to notify the Second Circuit that intervention will be granted and they can move forward against Puda's auditors, underwriters, and former directors to determine which of them should be held responsible for selling investors stock in an empty corporate shell. We look forward to discussing these matters in person on Monday, March 10, 2014.

                                      Respectfully submitted,

                                      Robin Bronzaft Howald

cc:      All Counsel via CM/ECF

---

always required to state a *Section 10(b)* claim. *Id.* In *In re OSG Sec. Litig.*, No. 12 Civ. 7948 (SAS), 2013 WL 4885890 (S.D.N.Y. Sept. 10, 2013), the same court held that subjective falsity only applies in Section 11 cases "where the statements at issue are 'inherently subjective' as opposed to 'matters of objective fact'.... The Auditor Defendants' broad reading of *Fait* would undercut the statutory language establishing strict liability for accountants based on the materials they have certified. It is difficult to imagine what Congress might have meant by an accountant's certification if not an audit affirming the accuracy of the documents in question." *Id.* at *6. Unlike reserves and goodwill valuations, whether or not Puda owned 90% of Shanxi Coal is not subjective.