UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
                                                          :

IN RE PUDA COAL SECURITIES INC., et al.  :
LITIGATION                                                :      Case No. 11-CV-2598 KBF
                                                          :

------------------------------------------------------------x

## THE UNDERWRITERS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR CERTIFICATION OF A SECURITIES EXCHANGE ACT CLASS AND APPOINTMENT OF ITS CLASS REPRESENTATIVES, CERTIFICATION OF SECURITIES ACT SUBCLASSES AND APPOINTMENT OF ITS CLASS REPRESENTATIVE, AND REAPPOINTMENT OF CLASS COUNSEL

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Tel: (212) 310-8000
Fax: (212) 310-8007

*Attorneys for Macquarie Capital (USA) Inc.*

- and -

MOSES & SINGER LLP
The Chrysler Building
405 Lexington Avenue, 12th Floor
New York, New York 10174
Tel: (212) 554-7800
Fax: (212) 554-7700

*Attorneys for Brean Murray, Carret & Co.*

Dated: November 12, 2014

# TABLE OF CONTENTS

**Page**

ARGUMENT ..................................................................................................................................1

PLAINTIFFS' PROPOSED CLASS AND SUB-CLASS DEFINITIONS SHOULD BE
MODIFIED ......................................................................................................................................1

    A.    "In-and-Out" Traders Should be Excluded ..................................................................1

    B.    The Section 12(a)(2) Definition Should Be Revised ..................................................4

    C.    The Section 11 Definition Should Be Modified ........................................................5

CONCLUSION ................................................................................................................................6

Defendants Macquarie Capital (USA) Inc. ("Macquarie") and Brean Murray, Carret & Co. ("Brean Murray" and, together with Macquarie, the "Underwriters") respectfully submit this memorandum of law in opposition to Plaintiffs' October 1, 2014 Motion for Certification of a Securities Exchange Act Class and Appointment of its Class Representatives, Certification of Securities Act Subclasses and Appointment of its Class Representative, and Reappointment of Class Counsel.

To the extent that the Court concludes that class certification is appropriate, the Underwriters respectfully submit that the proposed class definitions should be modified as set forth below to ensure that persons who have no claims against the Underwriters are excluded and that the parties have the benefit of clearly defined classes going forward.[1]

## ARGUMENT

## PLAINTIFFS' PROPOSED CLASS AND SUB-CLASS DEFINITIONS SHOULD BE MODIFIED

### A. "In-and-Out" Traders Should Be Excluded

While Plaintiffs acknowledge that "the parties are not writing on a blank slate" (Pls. Mem. at 1), they nevertheless ask the Court to ignore its October 1, 2013 decision and include in-and-out traders – those persons who purchased shares in the December 2010 Offering (the "December Offering"), but sold them before the fraud was revealed on April 8, 2011 – in both the 1933 Act and 1934 Act classes. In re Puda Coal Sec. Inc. Litig., 2013 WL 5493007, at *17-19 (S.D.N.Y. Oct. 1, 2013) (excluding on typicality grounds such traders from the then

---

[1] In addition to the arguments contained herein, the Underwriters adopt and incorporate herein the arguments made by the Independent U.S. Directors in their opposition papers as they relate to the Section 11 claim.

pending Section 10(b) claims against the auditor defendants).[2] Plaintiffs do so even though their own Complaint expressly excludes such investors from the proposed 1933 Act class. See Plaintiffs' Second Consolidated Amended and Supplemental Complaint For Violations of the Federal Securities Laws, dated April 21, 2014 (the "Complaint") ¶ 62 (alleging that a putative class should only include persons who bought in the December offering and "did not sell all of those shares prior to April 8, 2011").

In their memorandum, Plaintiffs fail to demonstrate why the Court should revisit its prior holding and thereby allow them to amend their pleading. Plaintiffs do not cite any authority demonstrating the law has changed in any respect since the October 1, 2103 decision or that the prior ruling was in any way erroneous (indeed, it is entirely consistent with both controlling Second Circuit precedent and this Court's own prior and subsequent rulings). See, e.g., IBEW Local 90 Pension Fund v. Deutsche Bank AG, 2013 WL 5815472, at *19 (S.D.N.Y. Oct. 29, 2013) (Forrest, J.) ("[E]ach of the current named plaintiffs is an 'in-and-out-trader.' . . . This fact alone defeats certification.") (citing cases). Plaintiffs have not pled in the current Complaint any corrective disclosures prior to issuance of the April 8, 2011 Alfred Little report (the "Little Report") concerning Puda's ownership of Shanxi Puda Coal that were inconsistent with the December Offering materials.[3] And Plaintiffs fail to show how the Court's concerns

---

[2] While the Court did not reach this issue in the context of the 1933 Act claims, having dismissed those claims earlier in its October 1 decision, the bar on including such traders applies with equal force to Section 11 and Section 12(a)(2) given that each contains a negative causation defense, which precludes any claim for losses that the defendant can prove flow from something other than the alleged misstatement or omission. 15 U.S.C. §§ 77k (e), 77l(b). See, e.g., In re Flag Telecom Holdings, Ltd. Sec. Litig., 574 F.3d 29, 33-36, 41 (2d Cir. 2009); In re SMART Techs., Inc. S'holders Litig., 295 F.R.D. 50, 59-60 (S.D.N.Y. 2013) (Forrest, J.).

[3] While Plaintiffs have, at various times, suggested that "leakage" may have occurred prior to issuance of the Little Report on April 8, 2011, the earliest disclosure actually alleged in the Complaint is a website report after the market closed on April 7, 2011 stating that the authors had "uncovered issues that are potentially of grave concern to US investors." Complaint ¶ 171.

2

about in-and-out traders – that their inclusion would "require considerable time and resources, and indeed threaten to become the focus of the litigation" – have been addressed, either by subsequent developments or otherwise. In re Puda, 2013 WL 5493007, at *18.

Rather, Plaintiffs offer the novel argument that "the unique circumstances of this case" – circumstances that were present at the time of the October 1, 2013 decision – somehow compel a different result. Pls. Mem. at 13. In making this contention, Plaintiffs seek to distinguish this action from the legion of decisions excluding in-and-out traders on the grounds that Puda was an "empty shell," without other assets or operations, and thus its stock was "worthless" throughout the class period. Pls. Mem. at 13-14. Not surprisingly, they offer no authority supporting this artificial distinction, which runs counter to the settled law requiring that Plaintiffs demonstrate a causal connection between any loss that may have been suffered by investors who sold before the Little Report and the fraudulent conduct.[4] The scope of the fraud or the degree of inflation is irrelevant in this context.

Here, Plaintiffs allege misstatements and omissions with respect to Puda's ownership of Shanxi Coal, but nothing they have submitted links any disclosure prior to April 8, 2011 to any losses caused by these misstatements and omissions. Indeed, their own Complaint (which expressly excludes investors who sold their shares prior to April 8, 2011) only seeks to connect the alleged losses to disclosures beginning on April 8, 2011. See Complaint ¶¶ 19-20,

---

[4] See Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 342-43 (2005) ("[A]n inflated purchase price will not itself constitute or proximately cause the relevant economic loss. . . . To 'touch upon' a loss is not to cause a loss, and it is the latter that the law requires."); In re SMART Techs., 295 F.R.D. at 59-60 (excluding in-and-out traders on typicality grounds as "any losses on sales prior to [the corrective disclosure] necessarily would be attributable to something other than the alleged misstatements or omissions in the Offering Documents"); In re Moody's Corp. Sec. Litig., 274 F.R.D. 480, 487 (S.D.N.Y. 2011) ("If a Plaintiff owns no stock before any corrective disclosures, there cannot be any harm caused by a 'materialization of the concealed risk,' and thus loss causation cannot be established.").

3

62, 172-74.[5] Accordingly, Plaintiffs' request to amend their complaint to include in-and-out traders should be denied.

### B. The Section 12(a)(2) Definition Should Be Revised

Plaintiffs' Section 12(a)(2) proposed class definition – which once again differs from the definition contained in their pleading – should be modified because, as drafted, it would include persons who do not have such claims against the Underwriters.

Under Section 12(a)(2), a buyer may recover only from his statutory seller, i.e., the person who either sold the securities directly to him or successfully "solicited" his actual purchase "motivated at least in part by a desire to serve [its] own financial interests or those of the securities owner." Pinter v. Dahl, 486 U.S. 622, 642-47 (1988). As this Court previously held in its October 1, 2013 decision, a claimant who cannot show that "he purchased his securities from a defendant, [] must demonstrate that he at least purchased them as a result of a defendant's solicitation." In re Puda, 2013 WL 5493007, at *9. Indeed, the definition Plaintiffs are currently proposing is broader than the one contained in their Complaint, which properly reflects the limitations on Section 12(a)(2) standing. See Complaint ¶ 1(claim is brought on behalf of those investors who "were directly solicited to make such purchase by one of the underwriters"); ¶ 62 (seeking to certify class of persons that includes those who "were directly solicited to make purchases by one of the underwriters").

The Section 12(a)(2) class definition proposed by Plaintiffs in their motion should be adjusted accordingly.

---

[5] For the same reason, and as argued by the Independent U.S. Directors, investors who purchased shares after April 8, 2011 should not be included in the proposed class. See In re SMART Techs., 295 F.R.D. at 58-59.

4

### C. The Section 11 Definition Should Be Modified

Similarly, Plaintiffs' Section 11 proposed class definition – which seeks to include all those who purchased "pursuant to or traceable to the public offering" (Pls. Mem. at 3) – should be revised to exclude any investor who did not receive an allocation directly from one of the Underwriters in the December Offering.

As this Court previously held, "standing for Section 11 claims is limited to those who have purchased securities that are the direct subject of a specified prospectus or registration statement." In re Puda, 2013 WL 5493007, at *5. In its October 1, 2013 Order, the Court applied this strict standing rule in dismissing the claim of Thomas Rosenberger, who did not receive an allocation from one of the Underwriters. The Court found, following extensive discovery, that Mr. Rosenberger could not satisfy this requirement by means of tracing his shares back to the December Offering even though he could link those shares to an account that had purchased in the offering as they had been routed through the electronic DTCC system. Id. at *5-9. The Court's ruling, which reflects the virtual impossibility of demonstrating traceability in securities transactions executed electronically, has class-wide applicability. Id. at *3-9.

Accordingly, the class should be limited to include only those purchasers who bought directly from the Underwriters in the December Offering. See In re IPO Sec. Litig., 227 F.R.D. 65, 118 (S.D.N.Y. 2004), overruled on other grounds, 471 F.3d 24 (2d Cir. 2006) (refusing to include in Section 11 class on predominance grounds investors who "purchased their shares after untraceable shares entered the market" and holding that, even though some individual investors "might be able to trace their shares successfully," the "resulting inquiry would fragment the class action into myriad mini-trials on the subject of tracing").

The Underwriters acknowledge that the Court declined in SMART Technologies to so limit the proposed class. But that case entailed an IPO, not a secondary offering where

5

undifferentiated, fungible shares were already in the marketplace at the time the securities were issued. Moreover, the extensive discovery undertaken regarding Mr. Rosenberger's open-market purchases provides the Court not only a record upon which to conclude that it will essentially be impossible for investors who did not receive an allocation in the December Offering to demonstrate traceability, but illustrates that the potential for the type of distracting and exhaustive mini-trials described by Judge Scheindlin is very much a real, not a hypothetical, concern. In re IPO, 227 F.R.D. at 119 n.402 ("Because of the impossibility of tracing shares once they have mingled with unregistered shares, reserving the tracing issue until a future claims process would be of limited utility.").

## CONCLUSION

For all of the foregoing reasons, as well as those set forth in the separate opposition filed by the Independent U.S. Directors, the Underwriters respectfully request that, if the Court determines that class certification is appropriate, Plaintiffs' proposed class definitions should be modified to provide as follows:

> Section 11: Those persons or entities who: (a) received allocations in the December 8, 2010 Offering from one of the Underwriters; (b) did not sell those shares prior to April 8, 2011; and (c) were damaged thereby.
>
> Section 12: Those persons or entities who purchased Puda shares: (a) directly in the December 8, 2010 public offering from one of the Underwriters or were directly solicited to make such purchase by one of the Underwriters and in fact purchased Puda shares as a result of the solicitation; (b) did not sell those shares prior to April 8, 2011; and (c) were damaged thereby.
>
> Section 10(b): Those persons or entities who purchased Puda common stock and call options and sellers of put options on Puda common stock: (a) during the period commencing December 8, 2010, through the market close on April 7, 2011; (b) who did not sell those securities prior to April 8, 2011; and (c) were damaged thereby.

Dated: November 12, 2014
New York, New York

        WEIL, GOTSHAL & MANGES LLP

        By:    */s/ Greg Danilow*
                  Greg Danilow
                  Seth Goodchild
                  767 Fifth Avenue
                  New York, New York 10153
                  Tel: (212) 310-8000
                  Fax: (212) 310-8007

*Attorneys for Macquarie Capital (USA) Inc.*

- and -

MOSES & SINGER LLP

By:    */s/ Robert S. Wolf*
        Robert S. Wolf
        The Chrysler Building
        405 Lexington Avenue
        New York, New York 10174
        Tel: (212) 554-7800
        Fax: (212) 554-7000

*Attorneys for Brean Murray, Carret & Co.*

## CERTIFICATE OF SERVICE

I hereby certify that on November 12, 2014, I caused a true and correct copy of the Underwriters' Memorandum of Law in Opposition to Plaintiffs' Motion for Certification of a Securities Exchange Act Class and Appointment of its Class Representatives, Certification of Securities Act Subclasses and Appointment of its Class Representative, and Reappointment of Class Counsel to be served by electronic means, via the Court's CM/ECF system, on all counsel registered to receive electronic notification. I also certify that I have served copies of the aforementioned document via first class mail upon the following non-ECF participants:

POMERANTZ HAUDEK GROSSMAN & GROSS LLP
Patrick V. Dahlstrom, Esq.
10 South LaSalle Street, Suite 3505
Chicago, IL 60603

*Additional Attorneys for Plaintiffs*

KIRBY MCINERNEY LLP
Daniel Hume, Esq.
825 Third Avenue
New York, NY 10022

*Additional Attorney for Plaintiffs*

Myron Harris
South 106-Park Tower Place
22nd & Benjamin Franklin Pkwy
Philadelphia, PA 19130

*Attorney for Plaintiff Harriet Goldstein*

_____
Ariel Rothstein
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Telephone (212) 310-8000
Facsimile: (212) 310-8007

8