**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE PUDA COAL SECURITIES INC.
*et al.* LITIGATION

Case No: 11-CV-2598 (DLC)

**ORAL ARGUMENT REQUESTED**

**DEFENDANTS LAWRENCE S. WIZEL AND C. MARK TANG'S
LOCAL CIVIL RULE 56.1 STATEMENT OF MATERIAL FACTS
UPON WHICH THERE IS NO GENUINE ISSUE FOR TRIAL**

GOODWIN PROCTER LLP
Richard M. Strassberg
Mary K. Dulka
Rushank R. Shah
The New York Times Building
620 Eighth Avenue
New York, NY 10018
(212) 813-8800

*Attorneys for Defendants
Lawrence S. Wizel and C. Mark Tang*

Dated: July 15, 2015

# TABLE OF CONTENTS

Page

**Introduction**................................................................................................................ 1

**Kroll Report** ............................................................................................................... 3

**Puda Coal, Inc.'s Background** ................................................................................. 4

**The Independent U.S. Directors Join Puda's Board in 2007** ................................ 5

**The Independent U.S. Directors' Activities After Joining Puda's Board**.............. 7

*Traveling to China for Audit Committee and Board Meetings and to visit Shanxi Coal's Mines* ...................................................................................................................... 7

*Implementing Changes to Strengthen Puda's Management* ...................................... 8

*Implementing Changes to Strengthen Puda's Relationship with Shanxi Coal* ......... 10

*Engagement of and Communications with Puda's Auditors*.................................... 11

*Review of Draft 10-Qs, 10-Ks and 8-Ks*................................................................. 13

*Engagement of Deloitte to Review and Strengthen Puda's Internal Controls*.......... 15

*Working with Moore Stephens to Confirm Puda's Revenue from Shanxi Coal*........ 19

*Overseeing Related Party Transactions Between Zhao and Shanxi Coal* ................ 21

*Independent U.S. Directors' Involvement in Puda's December 2010 Offering*......... 22

**Zhao's Continued Concealment of the Fraudulent Transfer After the December 2010 Offering**................................................................................................................... 27

ACTIVE/83073043.1

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Civil Rule 56.1, Defendants Lawrence S. Wizel and C. Mark Tang (together, the "Independent U.S. Directors") submit this statement of material facts ("Statement") in support of their motion for summary judgment dismissing all claims against them in Plaintiffs' Second Consolidated Amended and Supplemental Complaint ("Complaint" or "Compl.").[1]

For purposes of summary judgment, these facts are undisputed or stated in the light most favorable to Plaintiffs.[2]

### Introduction[3]

1.      The Independent U.S. Directors joined the Board of Directors (the "Board") of Puda Coal, Inc. ("Puda") in 2007 and were members of its Audit Committee.[4]

2.      From 2007 until September 2009, Puda continued to have a 90% ownership interest in its sole operating subsidiary, Shanxi Puda Coal Group Co., Ltd. ("Shanxi Coal").[5]

3.      On April 8, 2011, short-seller Alfred Little published an article (the "Little Report") alleging that the Chairman of Puda, Ming Zhao ("Zhao"), orchestrated and concealed a fraud by secretly transferring Puda's 90% ownership interest in Shanxi Coal from Puda to himself, and later to an unrelated investment fund controlled by CITIC Trust Co., Ltd. ("CITIC").[6]

---

[1]     Although this Statement refers to "Plaintiffs," the only plaintiff asserting claims against the Independent U.S. Directors is Trellus Management Company LLC.

[2]     The Independent U.S. Directors reserve the right to dispute the following stated facts if this matter proceeds beyond summary judgment.

[3]     Exhibits cited in this Statement refer to the exhibits attached to the July 15, 2015 Declaration of Mary K. Dulka, filed contemporaneously.

[4]     *See* Ex. 18, Puda's 2008 10-K at 75.

[5]     *See* Compl. ¶ 8; Ex. 27, Puda's September 1, 2011 8-K at 2.

[6]     *See* Compl. ¶ 3; Ex. 27, Puda's September 1, 2011 8-K at 2-5.

4.     Puda's Board authorized its Audit Committee to investigate the Little Report's allegations.[7]  The Audit Committee's interim findings concluded that, beginning in September 2009, Zhao made those fraudulent transfers of Puda's ownership interest in Shanxi Coal and did not disclose them to the Audit Committee.[8]  The Audit Committee further found that Liping Zhu ("Zhu"), Puda's CEO, President, and director on the Board, "was aware of the 90% [t]ransfer but did not disclose it to any other director."[9]

5.     The Complaint asserts no fraud claims against the Independent U.S. Directors and makes no allegation that prior to the Little Report, they were aware of Zhao's fraudulent transfers.[10]

6.     The Independent U.S. Directors had no knowledge that Puda no longer had a 90% indirect ownership interest in Shanxi Coal until the publication of the Little Report.[11]

7.     On December 8, 2010, Puda conducted a public offering (the "December Offering" or "Offering") of 9,000,000 shares of its common stock, made pursuant to an effective registration statement (the "Registration Statement") that included a prospectus supplement (the "Prospectus Supplement," and collectively with the Registration Statement, the "Offering Materials").[12]  The Offering Materials stated that Puda continued to have a 90% indirect ownership interest in Shanxi Coal.[13]

---

[7]   *See* Compl. ¶ 21; Ex. 27, Puda's September 1, 2011 8-K at 2.
[8]   *See* Ex. 27, Puda's September 1, 2011 8-K at 2.
[9]   Ex. 27, Puda's September 1, 2011 8-K at 2.
[10]  *See generally* Compl.
[11]  Ex. 2, November 20, 2013 Deposition Transcript of Lawrence S. Wizel and Errata Sheet ("2013 Wizel Dep. Tr.") at 73:2-5; 130:20-131:3; Ex. 4, November 21, 2013 Deposition Transcript of C. Mark Tang and Errata Sheet ("2013 Tang Dep. Tr.") at 78:8-24.
[12]  *See* Ex. 23, Puda's December 8, 2010 Form S-3; Ex. 24, Puda's December 8, 2010 Prospectus Supplement.
[13]  Ex. 23, Puda's December 8, 2010 Form S-3 at 2 (incorporating by reference Puda's October 14, 2010 Form S-3/A which stated Puda's operations are conducted exclusively through Shanxi Coal, which

8.     In connection with the Offering, the Chinese law firm Shanxi Bingyu issued a written opinion confirming that at the time of the Offering, Puda continued to have a 90% indirect ownership interest in Shanxi Coal.[14]

9.     Puda's auditor was Moore Stephens Hong Kong ("Moore Stephens").[15] MSPC, Certified Public Accountants and Advisors, P.C. ("MSPC") also performed a pre-filing review relating to Puda's audits.[16]   MSPC and Moore Stephens are collectively referred to herein as the "Auditors."

10.     Moore Stephens issued its year-end 2009 audit integrated report on Puda's financial statements on March 31, 2010, and Moore Stephens' integrated audit report was incorporated in Puda's March 31, 2010 Form 10-K filing for fiscal year 2009 ("2009 10-K").[17]   The 2009 10-K with Moore Stephens' integrated audit report – which was also incorporated by reference into the Offering Materials – stated that Puda continued to have a 90% ownership interest in Shanxi Coal, and that Puda could report revenue from Shanxi Coal in its financial statement.[18]

### Kroll Report

11.     Documents produced in discovery by Defendant Macquarie Capital (USA) Inc. ("Macquarie"), the lead underwriter for the Offering, included a report that Kroll Inc. ("Kroll")

---

Puda controls through 90% indirect equity ownership); Ex. 24, Puda's December 8, 2010 Prospectus Supplement at S-5.
[14]   Ex. 79, December 2010 legal opinion issued by the Shanxi Bingyu Law Firm at MAC 00000597-600.
[15]   *See* Compl. ¶ 92; Ex. 18, Puda's 2008 10-K at 86.
[16]   *See* Compl. ¶ 95.
[17]   *See* Compl. at ¶¶ 89, 94; Ex. 20, Puda's 2009 10-K at 34.
[18]   *See* Compl. at ¶ 85; Ex. 20, Puda's 2009 10-K at 6; Ex. 23, Puda's December 8, 2010 Form S-3 at 2; *see also* Ex. 21, Puda's August 17, 2010 Form S-3 at 21; Ex. 22, Puda's October 14, 2010 Form S-3/A at 36-37.

3

issued to Macquarie (the "Kroll Report") a few days before the Offering, purportedly indicating that Puda no longer had an ownership interest in Shanxi Coal.[19]

12.     Plaintiffs make no allegation that the Independent U.S. Directors ever received the Kroll Report.[20]

13.     The Independent U.S. Directors testified that they never received the Kroll Report.[21]

14.     No one from Kroll testified that they sent the Kroll Report to the Independent U.S. Directors.[22]

15.     No one from Defendant Brean Murray, Carret & Co., a joint bookrunner for the December Offering along with Macquarie,[23] testified that they sent the Kroll Report to the Independent U.S. Directors.[24]

16.     No one from Macquarie testified that they sent the Kroll Report to the Independent U.S. Directors.[25]

### Puda Coal, Inc.'s Background

17.     Puda is a Delaware corporation, but its headquarters and all of its operations are located in the Shanxi Province of the People's Republic of China.[26]  Puda is a supplier of cleaned coking coal used to produce coke for Chinese steel manufacturers.[27]

---

[19]   Compl. ¶¶ 34, 57; Ex. 76, December 2, 2010 report issued by Kroll Inc. at MCI 025621-61.
[20]   *See generally* Compl.
[21]   Ex. 3, March 5, 2015 Deposition Transcript of Lawrence S. Wizel and Errata Sheet ("2015 Wizel Dep. Tr.") at 69:21-24; 73:11-14; Ex. 5, March 5, 2015 Deposition Transcript of C. Mark Tang and Errata Sheet ("2015 Tang Dep. Tr.") at 39:11-13; 40:15-17.
[22]   Ex. 13, March 4, 2015 Deposition of Christopher McCavitt at 99:10-12; 99:22-25.
[23]   Compl. at ¶¶ 56-57.
[24]   Ex. 10, February 5, 2015 Deposition of Derek Woodworth at 179:11-13; 179:22-24.
[25]   Ex. 14, April 15, 2015 Deposition of Aaron Black at 191:8-10; 192:4-6; Ex. 11, February 12, 2015 Deposition of William Fang at 138:24-139:2; 140:3-5; Ex. 12, February 26, 2015 Deposition of James Sean Fitzgerald at 141:7-9; 141:18-20; Ex. 9, January 29, 2015 Deposition of Michael Meyers at 129:10-12; 129:21-23; Ex. 7, January 22, 2015 Deposition of Douglas Reynolds at 182:13-15; 182:25-183:2; Ex. 8, January 27, 2015 Deposition of David Winks at 168:24-169:4.

ACTIVE/83073043.1

18.     Puda's offshore holding structure was commonly used by public companies with operations in China.[28]   Puda owned 100% of a subsidiary named Puda Investment Holding Limited, a company organized in the British Virgin Islands, which in turn owned 100% of a subsidiary named Shanxi Putai Resources Limited ("Putai").[29]   Prior to Zhao's fraudulent and unauthorized transfers, Putai, in turn, owned a 90% ownership interest in Shanxi Coal.[30]   Puda therefore indirectly owned 90% of Shanxi Coal through Putai, and the remaining 10% of Shanxi Coal was owned by Zhao and his brother, Yao Zhao ("Y. Zhao").[31]

19.     Puda's operations were conducted exclusively through Shanxi Coal, which was the sole source of Puda's revenues during the relevant time period.[32]

20.     Moore Stephens became Puda's independent registered accounting firm in 2005.[33]

21.     Moore Stephens opined each year from 2008 through 2010 that Puda's consolidated financial statements – which included revenue from Shanxi Coal – fairly presented Puda's financial position.[34]

### The Independent U.S. Directors Join Puda's Board in 2007

22.     Wizel was appointed to Puda's Board as an independent director on August 3, 2007 and became Chairman of its newly formed Audit Committee, and the Committee's charter became effective as of August 28, 2007.[35]

---

[26]   Compl. at ¶ 6; Ex. 18, Puda's 2008 10-K at 4.
[27]   Compl. at ¶ 44; Ex. 18, Puda's 2008 10-K at 4.
[28]   Ex. 18, Puda's 2008 10-K at 6.
[29]   Compl. ¶ 8 n.3; Ex. 18, Puda's 2008 10-K at 5.
[30]   Compl. ¶ 8 n.3; Ex. 18, Puda's 2008 10-K at 5-6.
[31]   Compl. ¶ 8; Ex. 18, Puda's 2008 10-K at 5-6.
[32]   Compl. ¶ 44; Ex. 18, Puda's 2008 10-K at 12.
[33]   Ex. 15, Puda's March 21, 2007 Amendment to Registration Statement at 30.
[34]   Ex. 18, Puda's 2008 10-K at 36; Ex. 20, Puda's 2009 10-K at 34; Ex. 26, Puda's 2010 10-K at 42.
[35]   Ex. 18, Puda's 2008 10-K at 75, 85; Ex. 16, Puda's August 3, 2007 8-K at 2; *see also* Ex. 2, 2013 Wizel Dep. Tr. at 23:16-24:18.

ACTIVE/83073043.1

23. Wizel is an experienced Certified Public Accountant who worked at the New York office of Deloitte US from 1965 to 2006.[36] During his time at Deloitte US, Wizel was a leader in the New York Office Technology Group and was responsible for overseeing a large base of publicly held and private companies.[37] He assisted with SEC filings for initial public offerings, mergers and acquisition transactions and periodic reporting.[38] During his last four years at Deloitte US, Wizel served as a Deputy Professional Practice Director.[39]

24. Tang was appointed to Puda's Board as an independent director and member of the Audit Committee on October 9, 2007.[40]

25. Tang was originally born in China and moved to the United States in 1988.[41] Tang holds a Ph.D. degree in biochemistry and molecular biology from University of California at Riverside and an MBA in finance from Leonard N. Stern School of Business at New York University.[42] After earning his MBA, Tang held financial positions at Paine Webber, UBS, and Morgan Stanley.[43] Since 2002, Tang has been the founder and CEO of World Tech Ventures, LLC, an international merchant banking and venture capital firm specialized in advising and investing in life sciences biotechnology.[44]

---

[36] Ex. 18, Puda's 2008 10-K at 75; *see also* Compl. at ¶ 52.
[37] Ex. 18, Puda's 2008 10-K at 75.
[38] Ex. 18, Puda's 2008 10-K at 75.
[39] Ex. 18, Puda's 2008 10-K at 75.
[40] Ex. 18, Puda's 2008 10-K at 75.
[41] Ex. 4, 2013 Tang Dep. Tr. at 11:7-16.
[42] Ex. 18, Puda's 2008 10-K at 75; Ex. 4, 2013 Tang Dep. Tr. at 10:10-11:4.
[43] Ex. 4, 2013 Tang Dep. Tr. at 13:6-14:22.
[44] Ex. 18, Puda's 2008 10-K at 75; Ex. 4, 2013 Tang Dep. Tr. at 17:19-19:8.

ACTIVE/83073043.1

From 2004 to 2006, Tang was also a Director of Biotech Commercialization and Instructor at Rutgers University Business School.[45]

### The Independent U.S. Directors' Activities After Joining Puda's Board

*Traveling to China for Audit Committee and Board Meetings and to visit Shanxi Coal's Mines*

26.     Even though the Independent U.S. Directors reside in the U.S.,[46] they both traveled to China each quarter to attend and participate in Puda's Board and Audit Committee meetings.[47]

27.     In March 2009, Puda's management proposed holding Board and Audit Committee meetings telephonically, rather than in person.  Specifically, the Agenda for the March 6, 2006 Board meeting stated: "In order to alleviate the frequent travel of our US directors, to make sure that all of members can attend each meeting …, to improve work efficiency and also to save cost, the management suggests that the quarterly Audit Committee meetings, the quarterly routine Board meetings, as well as nomination and compensation committee meetings can be hold through conference call, which will be convened by meeting secretary[.]"[48]

28.     The Independent U.S. Directors rejected the proposal by Puda's management in March 2009 to hold future Board and Audit Committee meetings

---

[45]   Ex. 18, Puda's 2008 10-K at 75; Ex. 4, 2013 Tang Dep. Tr. at 14:19-15:15.

[46]   Ex. 2, 2013 Wizel Dep. Tr. at 6:24-7:3; Ex. 4, 2013 Tang Dep. Tr. at 6:21-7:4.

[47]   *See, e.g.,* Ex. 38, Agenda for May 7, 2009 Audit Committee meeting at LSW-CLASS-0000332-33; Ex. 42, Agenda for Audit Committee meeting at CMT-CLASS-0000062; Ex. 31, Minutes of March 6, 2009 Board of Directors meeting at LSW-CLASS-0004715; Ex. 48, Minutes of November 6, 2009 Board of Directors meeting at CMT-CLASS-0000856-59; Ex. 53, Agenda for March 15, 2010 Audit Committee meeting at LSW-CLASS-0000088; Ex. 57, Agenda for May 11, 2010 Audit Committee meeting at LSW-CLASS-0000258; Ex. 61, Agenda for August 10, 2010 Audit Committee meeting at LSW-CLASS-0000253-254; Ex. 73, Minutes of March 10, 2011 Audit Committee meeting at CMT-CLASS-0000007-10.

[48]   Ex. 30, Agenda for March 6, 2009 Board of Directors meeting at LSW-CLASS-0003642-44.

ACTIVE/83073043.1

telephonically.[49]   Wizel testified that it was "[a]bsolutely" his practice to attend Audit Committee meetings in person: "[T]hat was one of the conditions of being -- joining the Board that, you know, we are not going to do it over the telephone, we're going to meet face-to-face to discuss issues and -- so everybody could have a chance to, other board members, discuss what was going on."[50]

29.   The Independent U.S. Directors insisted that Wizel meet with Puda's Chief Financial Officer in person each quarter in Beijing, and that all directors attend Board and Audit Committee meetings in person at least once a year.[51]   In fact, the Independent U.S. Directors continued to travel to China quarterly to attend and participate in Puda's Board and Audit Committee meetings throughout their tenure on Puda's Board, with one or two exceptions by Tang for personal reasons.[52]

30.   The Independent U.S. Directors also visited the coal mines in China in connection with Shanxi Coal's acquisition of those mines.[53]

*Implementing Changes to Strengthen Puda's Management*

31.   In addition to being on Puda's Board and Audit Committee, the Independent U.S. Directors were also members of the Board's Compensation and Nominating and

---

[49]   Ex. 31, Minutes of March 6, 2009 Board of Directors meeting at LSW-CLASS-0004715-16.

[50]   Ex. 2, 2013 Wizel Dep. Tr. at 36:19-37:3.

[51]   Ex. 31, Minutes of March 6, 2009 Board of Directors meeting at LSW-CLASS-0004715-16; Ex. 3, 2015 Wizel Dep. Tr. at 93:7-93:17; Ex. 4, 2013 Tang Dep. Tr. at 23:14-23:22.

[52]   *See, e.g.,* Ex. 48, Minutes of November 6, 2009 Board of Directors meeting at CMT-CLASS-0000856-59; Ex. 73, Minutes of March 10, 2011 Audit Committee meeting at CMT-CLASS-0000007-10; Ex. 4, 2013 Tang Dep. Tr. at 48:23-49:14 (confirming that Puda's Board and Audit Committee meetings were held quarterly and that Tang attended every meeting in person in China except for one).

[53]   Ex. 2, 2013 Wizel Dep. Tr. at 51:21-53:15; Ex. 4, 2013 Tang Dep. Tr. at 50:9-51:2; *see also* Ex. 68, December 28, 2010 email from Wizel to Wu, copying Tang, discussing proposed schedule for visit to coal mines at LSW-CLASS-0001961-62.

Corporate Governance Committees.[54]    Tang was Chairman of the Nominating and Corporate Governance Committee.[55]

32.    After the Independent U.S. Directors joined Puda's Board, they worked with Puda's management to replace Puda's existing Chief Financial Officer ("CFO").[56]    Wenwei Tian, Puda's Chief Operating Officer at that time,[57] found a candidate named Qiong "Laby" Wu ("Wu").[58]    Since 2006, Wu had been the CFO and Vice President of Financing and Investor Relations at Sinoenergy Corporation in China.[59]    From 2004 to 2006, Wu was employed at Ernst & Young Hua Ming Accounting Firm as a Senior Auditor; and, from 2000 to 2004, she was a Manager and Tax Consultant at HLB-Beijing Yongtuo CPAs, where she was responsible for financial audits and internal control design.[60] The Independent U.S. Directors reviewed Wu's resume and interviewed her, discussing her prior experience and involvement with publicly traded companies, her accounting background, her responsibilities concerning public filings being done on a timely basis, and her responsibilities concerning roadshows.[61]    Wizel believed that she was a "very good candidate" and was a "very, very good match" for Puda.[62]    Puda's Board minutes also reflect that the Board believed Wu was "an excellent candidate for the CFO position."[63]

---

[54]    Compl. ¶¶ 51-52; Ex. 18, Puda's 2008 10-K at 75.

[55]    Ex. 18, Puda's 2008 10-K at 75.

[56]    Ex. 2, 2013 Wizel Dep. Tr. at 34:16-35:3; 37:4-38:9.

[57]    Ex. 18, Puda's 2008 10-K at 75.

[58]    Ex. 2, 2013 Wizel Dep. Tr. at 37:4-38:9.

[59]    Ex. 18, Puda's 2008 10-K at 75.

[60]    Ex. 18, Puda's 2008 10-K at 75.

[61]    Ex. 2, 2013 Wizel Dep. Tr. at 37:4-38:9; Ex. 4, 2013 Tang Dep. Tr. at 39:17-41:7.

[62]    Ex. 2, 2013 Wizel Dep. Tr. at 37:4-38:9.

[63]    Ex. 75, Minutes of June 25, 2008 Board of Directors meeting at MSHK00000669-71.

ACTIVE/83073043.1

Puda's Board ultimately invited Wu to join the company,[64] and effective on July 23, 2008, she became Puda's CFO.[65]

33. On September 15, 2009, the Independent U.S. Directors and the rest of the Board adopted a Code of Business Conduct and Ethics and re-adopted an Audit Committee Charter.[66]

34. Also in August 2009, the Independent U.S. Directors passed a resolution affirming that the three independent directors of Puda met the requirements of "independence" as required by Section 10A(m) of the Exchange Act of 1934 and Section 803A of the NYSE Amex LLC Company Guide.[67]

*Implementing Changes to Strengthen Puda's Relationship with Shanxi Coal*

35. In 2005, Putai and Shanxi Coal entered into agreements whereby Putai acquired control of Shanxi Coal through a Variable Interest Entity ("VIE") structure.[68]

36. In November 2007, shortly after the Independent U.S. Directors joined Puda's Board, Puda's wholly owned subsidiary Putai exercised an option to acquire 90% of the equity of Shanxi Coal, with the remaining 10% being held by Zhao (8%) and Y. Zhao (2%).[69] The Independent U.S. Directors insisted on these changes so that the coal

---

[64] Ex. 75, Minutes of June 25, 2008 Board of Directors meeting at MSHK00000669-71.
[65] Ex. 18, Puda's 2008 10-K at 75.
[66] Ex. 19, Puda's September 15, 2009 8-K at 1.
[67] Ex. 41, August 2009 Action by Unanimous Written Consent of the Directors of Puda at CMT-CLASS-0000024-28.
[68] Ex. 18, Puda's 2008 10-K at 5-6.
[69] Ex. 18, Puda's 2008 10-K at 5-6.

ACTIVE/83073043.1

washing plants were owned by Puda.[70] The exercised option converted Puda's control over Shanxi Coal from a VIE structure to a corporate ownership structure.[71]

37. Wizel believed that these changes to the corporate ownership structure were necessary to strengthen Puda and make it "a company of substance, not just of contracts."[72]

*Engagement of and Communications with Puda's Auditors*

38. Moore Stephens was Puda's auditor prior to the Independent U.S. Directors joining Puda's Board.[73]

39. Soon after he joined Puda's Board and became Chairman of the Audit Committee, Wizel wanted to speak with Moore Stephens to get a feel for the Moore Stephens audit team and how they performed their reviews and audits of Puda.[74]

40. During Wizel's conversation with Daniel Kwan ("Kwan"), a Partner with Moore Stephens, Wizel learned that Moore Stephens sent its personnel from Hong Kong to both Shanxi and Beijing to carry out on-site audit work for Puda.[75] Wizel believed such on-site visits were important because they showed Moore Stephens "getting to know the people at the company, getting to have a feeling about how the people conducted themselves, who they would deal with, you know, the accounting people and such, and to observe not only the inventory, but the assets that [they have] a washing plant."[76] Moore

---

[70] Ex. 2, 2013 Wizel Dep. Tr. at 222:25-224:24.
[71] Ex. 18, Puda's 2008 10-K at 5-6.
[72] Ex. 2, 2013 Wizel Dep. Tr. at 222:25-224:24.
[73] Ex. 18, Puda's 2008 10-K at 86; Ex. 2, 2013 Wizel Dep. Tr. at 53:25-54:7.
[74] Ex. 2, 2013 Wizel Dep. Tr. at 30:16-34:15.
[75] Ex. 2, 2013 Wizel Dep. Tr. at 30:16-34:15.
[76] Ex. 2, 2013 Wizel Dep. Tr. at 30:16-34:15.

ACTIVE/83073043.1

Stephens continued to send its personnel out to perform audit procedures on-site in Shanxi and Beijing throughout the time that the Independent U.S. Directors were members of Puda's Audit Committee.[77]

41. During his preliminary conversation with Kwan, Wizel also learned that Moore Stephens had two individuals, Rick Montalbano ("Montalbano") and James Dwane ("Dwane") of MSPC, that it could rely on for technical assistance in connection with Puda's audits.[78]

42. One of the Independent U.S. Directors' responsibilities as members of Puda's Audit Committee included approving the engagement of Moore Stephens as Puda's auditor.[79] Throughout the Independent U.S. Directors' tenure on the Audit Committee, Moore Stephens remained Puda's auditor.[80] Wizel believed that Moore Stephens was qualified to continue as Puda's auditor, because, among other things: (i) he was "very impressed with the quality of work" that Moore Stephens did and the various levels of quality controls that Moore Stephens had in place; and (ii) he found Moore Stephens to be responsive to the Audit Committee whenever it raised questions.[81] Tang similarly believed that Moore Stephens did a "good job" as Puda's auditor and was satisfied with Moore Stephens' responsiveness.[82]

---

[77] Ex. 2, 2013 Wizel Dep. Tr. at 30:16-34:15; Ex. 4, 2013 Tang Dep. Tr. at 51:10-17.
[78] Ex. 2, 2013 Wizel Dep. Tr. at 30:16-34:15.
[79] Ex. 2, 2013 Wizel Dep. Tr. at 53:16-20.
[80] Ex. 2, 2013 Wizel Dep. Tr. at 53:21-24.
[81] Ex. 2, 2013 Wizel Dep. Tr. at 53:17-57:22.
[82] Ex. 4, 2013 Tang Dep. Tr. at 47:8-24.

12

43. Documents produced by the Independent U.S. Directors in this case reflect the Independent U.S. Directors' meetings and detailed discussions with Moore Stephens during Puda's audit process each quarter.[83]

*Review of Draft 10-Qs, 10-Ks and 8-Ks*

44. The Independent U.S. Directors' responsibilities as members of Puda's Audit Committee included reviewing and approving Puda's SEC filings, such as Forms 10-Q, 10-K, and 8-Ks.[84] The Independent U.S. Directors would obtain drafts of the SEC filings from Wu, review the drafts, and raise both general and technical questions or concerns that they had.[85]

45. The Independent U.S. Directors engaged in numerous email communications with Wu and Moore Stephens personnel (as well as technical guidance from Montalbano and Dwane of MSPC) regarding their questions and concerns.[86]

---

[83] *See, e.g.*, Ex. 38, Agenda for May 7, 2009 Audit Committee meeting at LSW-CLASS-0000332-33; Ex. 42, Agenda for August 10, 2009 Audit Committee meeting at CMT-CLASS-0000062; Ex. 50, Agenda for November 6, 2009 Audit Committee meeting at CMT-CLASS-0000011; Ex. 53, Agenda for March 15, 2010 Audit Committee meeting at LSW-CLASS-0000088; Ex. 57, Agenda for May 11, 2010 Audit Committee meeting at LSW-CLASS-0000258; Ex. 61, Agenda for August 10, 2010 Audit Committee meeting at LSW-CLASS-0000252-54; Ex. 56, April 21-24, 2010 email exchange between Wu and the Independent U.S. Directors confirming the Audit Committee met four times in 2009 with management and Moore Stephens at LSW-CLASS-0003637-38.

[84] Ex. 2, 2013 Wizel Dep. Tr. at 46:2-11; Ex. 4, 2013 Tang Dep. Tr. at 43:13-45:11.

[85] Ex. 2, 2013 Wizel Dep. Tr. at 46:12-47:12; Ex. 4, 2013 Tang Dep. Tr. at 45:2-47:24.

[86] *See, e.g.*, Ex. 52, December 19-20, 2009 email exchange between Wizel and Moore Stephens regarding fraud reporting channel at LSW-CLASS-0002198-99; Ex. 55, March 18-19, 2010 email exchange involving Wizel, Moore Stephens and MSPC regarding internal control opinion at LSW-CLASS-0004683-84; Ex. 62, October 22-23 email exchange involving Wizel and MSPC regarding technical auditing question at CMT-CLASS-0005373; Ex. 67, December 17, 2010 email exchange involving Wizel and Moore Stephens regarding fraud reporting channel at LSW-CLASS-0003185; Ex. 69, December 27-29, 2010 email exchange involving Wizel, Moore Stephens, and MSPC regarding the accounting treatment of Shanxi Coal at LSW-CLASS-0001952-54; Ex. 29, February 9, 2009 through March 2, 2009 email exchange involving Wizel and Moore Stephens regarding knowledge matters to discuss with Moore Stephens at LSW-CLASS-0003223-25.

ACTIVE/83073043.1

46.     Depending on the type of issues raised with a particular SEC filing, the Independent U.S. Directors would go back to Wu to ask for supporting documents, or would discuss the issue in more detail with Moore Stephens.[87]  Wizel testified that, as Chairman of the Audit Committee, his responsibility concerning Moore Stephens' audit work was as follows: "[E]ngage the auditors, to review what the auditors were doing.  And what do I mean by that?  They would give us a list of adjustments that they recommend or want to pass, talk to them about internal control.  Go over the -- the disclosure in the reports, give them recommendations, get their recommendations.  And when we had sticky issues, correspond with Rick Montalbano and James Dwane.  We had a lot of interaction."[88]

47.     During the quarterly Audit Committee meetings where an SEC filing such as a Form 10-Q was approved, Wizel described the process as follows: "All the members of the Audit Committee would receive a draft of the document after all of the issues were vetted and changes were made, and we would then, at this meeting, last minute, you know, last discussion as far as any other changes we want made.  But again, we -- all the members of the Audit Committee did review the document and we reviewed it with -- at this time, with the auditors besides the exchange of emails."[89]

48.     The SEC filings reviewed and approved by the Independent U.S. Directors included Puda's 10-Qs and 10-Ks with financial statements audited by Moore Stephens that always reflected Puda's 90% indirect ownership of Shanxi Coal, which financial

---

[87]  Ex. 2, 2013 Wizel Dep. Tr. at 50:23-51:20.
[88]  Ex. 2, 2013 Wizel Dep. Tr. at 209:13-25.
[89]  Ex. 2, 2013 Wizel Dep. Tr. at 78:25-79:13.

ACTIVE/83073043.1

statements were consistent with the Independent U.S. Director's understanding at the time of Puda's ownership of Shanxi Coal.[90]

*Engagement of Deloitte to Review and Strengthen Puda's Internal Controls*

49. Wizel recommended retaining an internal control compliance consultant to review and strengthen Puda's internal controls.[91]

50. Wizel's recommendation was based on his concern about Puda's future compliance with Sarbanes-Oxley Section 404 ("SOX 404").[92] After Congress passed SOX 404, there was a date by which foreign issuers like Puda needed to have adequate internal controls in place.[93] Wizel believed it was prudent to analyze and strengthen Puda's internal controls in anticipation that SOX 404's requirements soon would apply to Puda: "I believed that the company should prepare for it as quick as possible. And one of the things I pushed for . . . is that we needed . . . a top-notch 404 consultant to come in and

---

[90] Ex. 2, 2013 Wizel Dep. Tr. at 81:7-83:10 (discussing Puda's Form 10-Q for the period ending September 30, 2009); *id.* at 89:4-90:18 (discussing Puda's Form 10-K for the period ending December 31, 2009); *id.* at 92:17-94:21 (discussing Puda's Form 10-Q for the period ending March 31, 2010); *id.* at 104:12-105:23 (discussing Puda's Form 10-Q for the period ending June 30, 2010); *id.* at 114:22-117:8 (discussing Puda's Form 10-Q for the period ending September 30, 2010); *id.* at 120-15-121:20 (discussing Puda's Form 10-K for the period ending December 31, 2010); Ex. 4, 2013 Tang Dep. Tr. at 58:4-60:11 (discussing Puda's Form 10-Q for the period ending September 30, 2009); *id.* at 60:12-63:3 (discussing Puda's Form 10-K for the period ending December 31, 2009); *id.* at 63:4-66:23 (discussing Puda's Form 10-Q for the period ending March 31, 2010); *id.* at 71:6-73:13 (discussing Puda's Form 10-Q for the period ending June 30, 2010); *id.* at 75:13-78:5 (discussing Puda's Form 10-Q for the period ending September 30, 2010); *id.* at 79:2-81:5 (discussing Puda's Form 10-K for the period ending December 31, 2010); Ex. 3, 2015 Wizel Dep. Tr. at 95:8-16 (discussing how financial statements which were a part of Puda's 10-Ks and 10-Qs reflected Puda's continued 90% ownership interest in Shanxi Coal).

[91] Ex. 2, 2013 Wizel Dep. Tr. at 39:18-40:16; Ex. 3, 2015 Wizel Dep. Tr. at 33:15-36:20.

[92] Ex. 2, 2013 Wizel Dep. Tr. at 39:18-40:16.

[93] Ex. 3, 2015 Wizel Dep. Tr. at 33:15-36:20.

review our operations and prepare for the . . . integrated audit, which included a internal control audit," and even though the compliance date was pushed back for foreign-based companies like Puda, "I said, 'Roll it out, get it done.'"[94] As a result, Puda "had a 404 integrated audit of Puda Coal before we were required to."[95]

51. The Independent U.S. Directors interviewed four potential candidates to act as Puda's SOX 404 consultant, including Deloitte Touche Tohmatsu CPA Ltd. ("Deloitte").[96] Because Wizel was previously affiliated with Deloitte US, he asked the other members of Puda's Audit Committee and Wu to make the final decision as to which firm would be engaged.[97] Deloitte was ultimately retained.[98]

52. In February 2009, Wu provided to the Independent U.S. Directors Deloitte's detailed analysis of the status of Puda's internal controls, titled "Puda Coal SOX 404 Readiness Status Report."[99]

53. Wizel urged Deloitte to move forward with its plan to improve Puda's internal controls and its SOX 404 readiness and, on April 30, 2009, the Independent U.S. Directors and Wu met with Yvonne Wu and Elena Yu of Deloitte to discuss that plan.[100] The Independent U.S. Directors were provided a copy of Deloitte's work plan, titled "Puda Coal SOX

---

94  Ex. 2, 2013 Wizel Dep. Tr. at 39:18-40:16; *see also* Ex. 32, March 22, 2009 email from Wizel to Wu regarding meeting with Deloitte to go over Puda's internal controls in detail at LSW-CLASS-0003639-40.
95  Ex. 2, 2013 Wizel Dep. Tr. at 39:18-40:16.
96  Ex. 2, 2013 Wizel Dep. Tr. at 40:24-41:10.
97  Ex. 2, 2013 Wizel Dep. Tr. at 40:24-41:10.
98  Ex. 2, 2013 Wizel Dep. Tr. at 40:24-41:10.
99  Ex. 28, February 11, 2009 email from Wu to the Independent U.S. Directors attaching Deloitte's SOX 404 Readiness Status Report at LSW-CLASS-0003645-86.
100 Ex. 33, March 24-30, 2009 email exchange involving Wizel and Deloitte regarding SOX work, at LSW-CLASS-0006603-06; Ex. 35, April 30, 2009 Puda Coal SOX 404 Readiness Project Meeting Minutes at LSW-CLASS-0006449-50.

ACTIVE/83073043.1

Readiness Proposed 2009 Work Plan."[101]   According to the meeting minutes, the Independent U.S. Directors: received an update on the status of Deloitte's implementation of SOX 404 readiness; discussed Deloitte's work plan its proposed time table; agreed on items for immediate handling; agreed that the SOX readiness work needed to be resumed as soon as possible due to the very tight schedule; and agreed that Wu and Tang would work together to communicate with Puda's management for the approval for Deloitte's new working timetable and fee and billing schedule.[102]

54.   After Deloitte initiated its work plan, the Independent U.S. Directors monitored Deloitte's progress throughout 2009.[103]   The Independent U.S. Directors also met and communicated frequently with Deloitte throughout 2009 and reviewed Deloitte's detailed recommendations and periodic status reports about Puda's internal controls.[104]

55.   In August 2009, Wizel arranged for an "all hands" Audit Committee meeting to facilitate coordination of the SOX Section 404 implementation efforts between

---

[101]   Ex. 36, April 30, 2009 Puda Coal SOX Readiness Proposed 2009 Work Plan at LSW-CLASS-0000336-43.

[102]   Ex. 35, April 30, 2009 Puda Coal SOX 404 Readiness Project Meeting Minutes at LSW-CLASS-0006449-50.

[103]   *See, e.g.*, Ex. 37, May 6, 2009 emails between Deloitte and Wu, with the Independent U.S. Directors copied, regarding SOX 404 compliance work at LSW-CLASS-0003214-15; Ex. 40, June 24, 2009 through July 23, 2009 emails involving the Independent U.S. Directors updating working group on status of SOX 404 compliance work at LSW-CLASS-0000320-22; Ex. 45, August 21, 2009 email exchange involving Wizel regarding status report on Deloitte's SOX 404 compliance work at LSW-CLASS-0000373-74.

[104]   *See, e.g.*, Ex. 34, March 24, 2009 email exchange involving Wizel and Deloitte regarding meeting to review SOX 404 compliance work at LSW-CLASS-0006618–19; Ex. 28, February 11, 2009 email from Wu to the Independent U.S. Directors attaching Deloitte's SOX 404 Readiness Status Report at LSW-CLASS-0003645–86; Ex. 35, Minutes of April 30, 2009 Puda SOX 404 Readiness Project Meeting at LSW-CLASS-0006449-50; Ex. 36, Deloitte's DOX 404 Readiness Proposed Work Plan dated April 30, 2009 at LSW-CLASS-0000336–43; Ex. 39, June 24, 2009 email exchange involving Wizel, Deloitte and others regarding all hands meetings at LSW-CLASS-0000361–63; Ex. 43, Deloitte's SOX 404 Readiness Audit Committee Status Report dated August 10, 2009 at CMT-CLASS-0003104–39.

17

Deloitte and Moore Stephens.[105] For that meeting, Deloitte prepared a report, titled "Puda Coal SOX 404 Readiness Audit Committee Status Report."[106] That report noted, among other things, that Deloitte had: (a) "provided assistance in the design of the control templates which were required in the Remediation Plan[;]" and (b) sent a full time manager at Deloitte to the field to assist with management remediation.[107] The report also noted that Deloitte "will assist management on the communication with external auditors," "provide S[OX] training to the key process owner of management," and "continuously report the remediation status to [the] [Audit Committee], CEO and CFO."[108] On August 20, 2009, Deloitte provided a subsequent report.[109]

56. In late August 2009, Wizel encouraged Deloitte to provide its status report to Moore Stephens: "I authorize you to give m/s [Moore Stephens] the report. Also start bringing them into the loop."[110]

57. Throughout the fall of 2009, the Independent U.S. Directors monitored email correspondence between Puda's management, Deloitte and Moore Stephens as to the effectiveness of Puda's internal controls.[111]

---

[105] Ex. 40, June 6, 2009 through July 23, 2009 email exchange all hands meeting at LSW-CLASS-0000320-22.

[106] Ex. 43, Puda Coal SOX 404 Readiness Audit Committee Status Report dated August 10, 2009 at CMT-CLASS-0003104-39.

[107] Ex. 43, Puda Coal SOX 404 Readiness Audit Committee Status Report dated August 10, 2009 at CMT-CLASS-0003104-39.

[108] Ex. 43, Puda Coal SOX 404 Readiness Audit Committee Status Report dated August 10, 2009 at CMT-CLASS-0003104-39.

[109] See Ex. 44, Puda Coal SOX 404 Readiness Audit Committee Status Report dated August 20, 2009 at LSW-CLASS-0006474-6508.

[110] Ex. 46, August 21-24, 2009 email exchange involving Wizel regarding Deloitte providing its report to Moore Stephens at LSW-CLASS-0003231-33.

[111] See, e.g., Ex. 47, November 5, 2009 email exchange with Deloitte, copying the Independent U.S. Directors, a attaching worksheet containing management feedback and analysis of internal controls at

ACTIVE/83073043.1

58. During the Audit Committee's meeting in November 2009 relating to the September 30, 2009 10-Q, the Deloitte consultants and Moore Stephens auditors discussed the status of strengthening Puda's internal controls.[112] Moore Stephens reported to the Audit Committee that its testing of Puda's internal controls revealed no material weaknesses.[113]

59. At the completion of Deloitte's SOX 404 work, Wizel insisted that Moore Stephens provide an internal control opinion as part of its 2009 audit report.[114] Moore Stephens issued such an report, and because there were no material weaknesses in Puda's internal controls, Moore Stephens' report noted that "the Company maintained, in all material respects, effective internal controls over financial reporting as of December 31, 2009[.]"[115]

*Working with Moore Stephens to Confirm Puda's Revenue from Shanxi Coal*

60. Each quarter, the Independent U.S. Directors met in person or by telephone with Moore Stephens' audit team to discuss its audit of Puda.[116] Wizel, as Chairman of the Audit Committee, insisted that Puda's auditors were present at least by telephone for the

---

LSW-CLASS-0000173-80; Ex. 51, November 6-10, 2009 emails with the Independent U.S. Directors copied, summarizing discussion and conclusion of Audit Committee meeting concerning the effectiveness of the Company's internal controls at LSW-CLASS-0003455.

[112] Ex. 2, 2013 Wizel Dep. Tr. at 83:11-85:15.

[113] Ex. 2, 2013 Wizel Dep. Tr. at 83:11-85:15.

[114] Ex. 54, March 18-19, 2010 email exchange involving Wizel and Auditors regarding internal control opinion in Moore Stephens' 2009 audit report at LSW-CLASS-0004675-77; Ex. 2, 2013 Wizel Dep. Tr. at 58:19-60:4.

[115] Ex. 20, Puda's 2009 10-K at 72; Ex. 2, 2013 Wizel Dep. Tr. at 58:19-60:4.

[116] *See, e.g.*, Ex. 38, Agenda for May 7, 2009 Audit Committee meeting at LSW-CLASS-0000332-333; Ex. 42, Agenda for August 10, 2009 Audit Committee meeting at CMT-CLASS-0000062; Ex. 49, Agenda for November 6, 2009 Audit Committee meeting at LSW-CLASS-0000055; Ex. 53, Agenda for March 15, 2010 Audit Committee meeting at LSW-CLASS-0000088; Ex. 73, Minutes of March 10, 2011 Audit Committee meeting at CMT-CLASS-0000007-10.

quarterly meetings to review 10-Q financials, and present in person for all 10-K year-end meetings.[117]

61. The Independent U.S. Directors understood that in performing its audit, Moore Stephens personally met with Shanxi Coal employees and received financial information from them.[118] The Independent U.S. Directors also understood that Moore Stephens used the information gathered from Shanxi Coal employees to render Moore Stephens' audit opinions for Puda.[119]

62. From 2008 through 2010, Moore Stephens opined that Puda's consolidated financial statements, contained in Puda's 10-Ks, presented "fairly, in all material aspects, the financial position of Puda Coal, Inc. and subsidiaries" and that "the results of their operations and their cash flows" are in conformity with accounting principles generally accepted in the U.S.[120] The notes to the consolidated financial statements in Puda's 2008-2010 10-Ks continued to reflect that Puda indirectly owned 90% of Shanxi Coal.[121]

63. Moore Stephens audited Puda's financial statements, which Wu prepared with the help of Yin Yuen "Irene" Cheong ("Cheong").[122] Cheong was a Certified Public Accountant and was originally engaged by Puda as a consultant to assist the Company with U.S. GAAP issues, including Puda's preparation of quarterly and annual financial statements in conformance

---

[117] Ex. 2, 2013 Wizel Dep. Tr. at 149:13-24.
[118] Ex. 2, 2013 Wizel Dep. Tr. at 30:16-34:15; Ex. 4, 2013 Tang Dep. Tr. at 51:10-51:17; Ex. 3, 2015 Wizel Dep. Tr. at 94:6-95:7.
[119] Ex. 3, 2015 Wizel Dep. Tr. at 94:6-95:7.
[120] Ex. 18, Puda's 2008 10-K at 36; Ex. 20, Puda's 2009 10-K at 34; Ex. 26, Puda's 2010 10-K at 42.
[121] Ex. 18, Puda's 2008 10-K at 46-47; Ex. 20, Puda's 2009 10-K at 43; Ex. 26, Puda's 2010 10-K at 51.
[122] Ex. 2, 2013 Wizel Dep. Tr. at 47:17-48:2.

ACTIVE/83073043.1

with GAAP.[123]  Puda later hired Cheong to serve as its Controller, where she performed the same work as she had performed as a consultant.[124]

64.  As part of Cheong's work for Puda Coal, she traveled to China for about a week each quarter and for one to two weeks for year-end.[125]  Cheong collected records and accounting information from Wu and Puda's accounting department in order to prepare, among other things, Puda's U.S. GAAP adjustment and first draft of Puda's financial statements.[126]  Cheong provided to Moore Stephens various records that she collected in connection with its year-end audits of Puda, including quarterly minutes, resolutions, and financial and bank statements.[127]

65.  Cheong also reviewed books and records of Puda's subsidiaries, including Putai and Shanxi Coal, which she received from Wu and Puda's accounting department.[128]  As part of Cheong's work for Puda in 2009 and 2010, Cheong did not see anything in the books and records of Puda and/or its subsidiaries that was inconsistent with Puda's publicly disclosed indirect 90% ownership of Shanxi Coal.[129]

66.  Cheong did not provide any information to Moore Stephens that was inconsistent with Puda's publically disclosed ownership structure of Shanxi Coal.[130]

*Overseeing Related Party Transactions Between Zhao and Shanxi Coal*

---

[123]  Ex. 6, November 7, 2013 Deposition Transcript of Yin Yuen "Irene" Cheong ("Cheong Dep. Tr.") at 12:13-23; 15:6-16:4; *see also* Ex. 2, 2013 Wizel Dep. Tr. at 47:17-50:20.
[124]  Ex. 6, Cheong Dep. Tr. at 16:22-21:13.
[125]  Ex. 6, Cheong Dep. Tr. at 23:14-24:7; *see also* Ex. 2, 2013 Wizel Dep. Tr. at 49:22-50:7.
[126]  Ex. 6, Cheong Dep. Tr. at 28:14-24; *see also* Ex. 2, 2013 Wizel Dep. Tr. at 48:12-49:21.
[127]  Ex. 6, Cheong Dep. Tr. at 28:25-30:2; 83:19-84:25.
[128]  Ex. 6, Cheong Dep. Tr. at 84:23-85:22.
[129]  Ex. 6, Cheong Dep. Tr. at 92:19-93:10; 115:1-116:3; 138:6-141:11.
[130]  Ex. 6, Cheong Dep. Tr. at 92:19-93:10.

ACTIVE/83073043.1

67.     The Independent U.S. Directors' contracts required Puda to notify them of any material adverse change in Puda's financial condition.[131]

68.     Beginning with the August 2007 formation of Puda's Audit Committee, all related party transactions between Zhao and Shanxi Coal were subject to the Audit Committee's review and approval.[132]

69.     Throughout their tenure on the Audit Committee, the Independent U.S. Directors reviewed and approved such related party transactions.[133]

70.     The Independent U.S. Directors also annually reviewed and signed a representation listing all related parties.[134]  The representation letter was signed by each director (including Zhao) and senior officer and provided to Moore Stephens for its due diligence regarding related party transactions.[135]

71.     On January 6, 2011, shortly after the December Offering, the Independent U.S. Directors received the related party representation letter for the 2010 audit signed by Zhao and others.[136]  That representation letter did not list CITIC as a related party.[137]

*Independent U.S. Directors' Involvement in Puda's December 2010 Offering*

---

[131]  Ex. 16, Puda's August 3, 2007 8-K at ¶ 6; Ex. 17, Puda's October 9, 2007 8-K at ¶ 6.

[132]  Ex. 20, Puda's 2009 10-K at 76.

[133]  *See, e.g.*, Ex. 58, July 12-19, 2010 email exchange involving the Independent U.S. Directors regarding Audit Committee review of related party transaction at LSW-CLASS-0003194-95; Ex. 60,Written Consent In Lieu of Audit Committee Meeting dated August 1, 2010 regarding Investment Cooperation Agreement at CMT-CLASS-0000016-19. *See also* Ex. 2, 2013 Wizel Dep. Tr. at 249:10-250:6.

[134]  *See, e.g.*, Ex. 70, January 6, 2011 email from Wu to the Independent U.S. Directors attaching related party representation letter at CMT-CLASS-0005479-85.

[135]  *See* Ex. 70, January 6, 2011 email from Wu to the Independent U.S. Directors attaching related party representation letter at CMT-CLASS-0005479-85.

[136]  *See* Ex. 70, January 6, 2011 email from Wu to the Independent U.S. Directors attaching related party representation letter at CMT-CLASS-0005479-85.

[137]  *See* Ex. 70, January 6, 2011 email from Wu to the Independent U.S. Directors attaching related party representation letter at CMT-CLASS-0005479-85.

72. In August 2010, Puda's Board resolved to authorize and approve a registration of up to $90 million of Puda's securities under a general shelf registration statement on Form S-3.[138] The Board recognized that the "continued growth of the Company's capital base [wa]s an integral part of the Company's strategic operating plan," and that registering Puda's shares for sale was "in the best interests of the Company."[139]

73. On August 17, 2010, Puda filed a registration statement on Form S-3.[140] That registration statement incorporated by reference Puda's consolidated financial and supplemental consolidated financial statements for reach of the three years in the period ended December 31, 2009 "in reliance on the reports of Moore Stephens, independent accountants, given on the authority of said firm as experts in auditing and accounting."[141]

74. On October 14, 2010, Puda filed an amended registration statement on Form S-3.[142] The amended registration statement incorporated by reference Puda's consolidated financial and supplementary consolidated financial statements for each of the three years in the period ended December 31, 2009 "in reliance on the reports of Moore Stephens, independent accountants, given on the authority of said firm as experts in auditing and accounting."[143]

---

[138] Ex. 59, Action by Unanimous Written Consent of the Directors of Puda dated August 2010 at CMT-CLASS-0000465-69.
[139] Ex. 59, Action by Unanimous Written Consent of the Directors of Puda dated August 2010 at CMT-CLASS-0000465-69.
[140] *See* Ex. 21, Puda's August 17, 2010 Form S-3.
[141] Ex. 21, Puda's August 17, 2010 Form S-3 at 21.
[142] *See* Ex. 22, Puda's October 14, 2010 Form S-3/A.
[143] Ex. 22, Puda's October 14, 2010 Form S-3/A at 36.

75.     The October 14, 2010 registration statement also incorporated by reference Puda's 2009 Annual Report on Form 10-K,[144] which included certifications by Zhu and Wu that they had disclosed "any fraud, whether or not material, that involves management or other employees who have a significant role" to Puda's auditors and the Audit Committee.[145]

76.     The December 8, 2010 Registration Statement filed with the SEC also incorporated by reference the October 14, 2010 registration statement.[146]

77.     The Independent U.S. Directors reviewed the Registration Statement and Prospectus Supplement prior to their filing.[147]

78.     Wizel also assisted Wu by reviewing and commenting on her work in preparing financial projections for the Offering.[148]

79.     On November 4, 2010, Wu sent the Independent U.S. Directors for their review the executed engagement letter between Puda and Macquarie, as well as the proposed timetable for the Offering.[149]

80.     On December 6, 2010, Puda's Board established a Pricing Committee for the Offering ("Pricing Committee"), comprised of the Independent U.S. Directors and Zhao, "in order to ensure best governance practices, optimal efficiency and thorough

---

[144]   Ex. 22, Puda's October 14, 2010 Form S-3/A at 36-37.
[145]   Ex. 20, Puda's 2009 10-K at Exhibits 31.1 and 31.2.
[146]   Ex. 23, Puda's December 8, 2010 Form S-3 at 2; *see also* Ex. 21, Puda's August 17, 2010 Form S-3 at 21; Ex. 22, Puda's October 14, 2010 Form S-3/A at 36-37.
[147]   Ex. 3, 2015 Wizel Dep. Tr. at 57:10-15; Ex. 5, 2015 Tang Dep. Tr. at 28:23-29:4.
[148]   Ex. 3, 2015 Wizel Dep. Tr. at 55:24-56:20.
[149]   Ex. 63, November 4, 2010 email from Wu to the Independent U.S. Directors attaching Puda's engagement letter with Macquarie and Timetable & Responsibilities document at LSW-CLASS-0000533-37; *see also* Ex. 64, November 5, 2010 email attaching Macquarie's work plan at LSW-CLASS-0007817-22.

ACTIVE/83073043.1

analysis of all relevant facts and issues … to assist [Puda's] Board of Directors in establishing a price for the shares … to be offered" in the Offering.[150]

81. The Pricing Committee was authorized to "determine the price and other economic terms and conditions" for Puda shares in the Offering, "including without limitation the number of the [s]hares to be sold and the underwriting discounts and commissions with respect thereto[.]"[151] Wizel testified that the Pricing Committee was formed "[t]o ensure that the company would get the proper price for the shares that it was going to sell" in the December Offering.[152]

82. The Independent U.S. Directors participated on a conference call with Macquarie and discussed the valuation of Puda shares and PE ratios, and tried to negotiate a better price for Puda's shareholders so that the shareholders could maximize their return.[153] The Pricing Committee ultimately approved an Offering price of $12.00/share.[154]

83. Puda entered into a underwriting agreement with Macquarie (the "Underwriting Agreement") for the Offering.[155]

84. As members of Puda's Pricing Committee, the Independent U.S. Directors were authorized to approve the final form of the Underwriting Agreement.[156]

---

[150] Ex. 77, Action by Unanimous Written Consent of the Directors of Puda at MSHK00041227-30; Ex. 2, 2013 Wizel Dep. Tr. at 74:2-14; Ex. 4, 2013 Tang Dep. Tr. at 56:10-12.

[151] Ex. 77, Action by Unanimous Written Consent of the Directors of Puda at MSHK00041227-30.

[152] Ex. 2, 2013 Wizel Dep. Tr. at 74:7-17.

[153] Ex. 5, 2015 Tang Dep. Tr. at 30:15-33:6, 55:3-8; Ex. 3, 2015 Wizel Dep. Tr. at 63:4-64:15.

[154] Ex. 65, December 7, 2010 email exchange between Wu and personnel at Macquarie, with other copied, confirming $12.00/share offering price at CMT-CLASS-0005068-69; Ex. 4, 2013 Tang Dep. Tr. at 30:15-33:6.

[155] Ex. 78, Underwriting Agreement dated December 8, 2010 at MAC 00000001-44; Ex. 2, 2013 Wizel Dep. Tr. at 125:13-127:10.

85. The Independent U.S. Directors received and reviewed a draft of the Underwriting Agreement, and approved it for filing with the SEC.[157]

86. One of the conditions precedent in the Underwriting Agreement between Puda and Macquarie required that the Chinese law firm of Shanxi Bingyu issue an opinion to Macquarie (the "Representative"):

> Shanxi Bingyu Law Firm shall … have furnished to the Representative its written opinion, as counsel to the Company, addressed to the Underwriters and dated such Delivery Date, in form and substance reasonably satisfactory to the Representative, substantially in the form attached hereto as Exhibit B-2.[158]

87. The form of opinion that Shanxi Bingyu was required to issue was attached to the Underwriting Agreement as an exhibit and stated:

> The registered capital of each PRC Entity has been fully paid up in accordance with the payment requirements stipulated in its respective charter documents. Puda Investment Holding Limited, a British Virgin Islands company owns all the equity interest of Putai; Putai owns 90% of the equity interest of Shanxi Coal; and the remaining 10% of the equity interest of Shanxi Coal is owned by Ming Zhao, a natural person.[159]

88. The Independent U.S. Directors were aware that one of the conditions precedent in the Underwriting Agreement between Puda and Macquarie was that Shanxi Bingyu furnish a legal opinion to Macquarie confirming that Puda still had a 90% indirect ownership interest in Shanxi Coal.[160]

---

[156] Ex. 77, Action by Unanimous Written Consent of the Directors of Puda at MSHK00041227-30; Ex. 2, 2013 Wizel Dep. Tr. at 74:18-75:6.

[157] Ex. 66, December 8, 2010 email to the Independent U.S. Directors from Wu attaching draft Underwriting Agreement at LSW-CLASS-0007847-96; Ex. 5, 2015 Tang Dep. Tr. at 57:11-17; Ex. 3, 2015 Wizel Dep. Tr. at 95:17-23.

[158] Ex. 25, Puda's December 14, 2010 Form 8-K at Ex. 1.1 at 21.

[159] Ex. 78, Underwriting Agreement dated December 8, 2010 at MAC 00000001-44.

[160] Ex. 3, 2015 Wizel Dep. Tr. at 74:15-76:2; 95:23-96:5; 96:15-97:7; 113:8-13; Ex. 5, 2015 Tang Dep. Tr. at 33:25-34:16; 57:11-23.

ACTIVE/83073043.1

89. Pursuant to the terms of the Underwriting Agreement, Shanxi Bingyu issued a legal opinion to Macquarie stating that Puda continued to have a 90% indirect ownership interest in Shanxi Coal.[161]

90. Puda filed its Registration Statement on December 8, 2010, and the Offering went forward.[162] The Registration Statement included a letter from Moore Stephens that was incorporated by reference acknowledging Moore Stephens' consent to incorporate its report dated March 31, 2010 relating to the consolidated financial statements of Puda and its subsidiaries as of December 31, 2009 and 2008, and for each of the three years in the period ending December 31, 2009 which appear in the 2009 annual report.[163]

## Zhao's Continued Concealment of the Fraudulent Transfer
## After the December 2010 Offering

91. On January 28, 2011, Wu sent an email to the Independent U.S. Directors presenting Puda management's "new strategy plan" on coal mining expansion.[164] According to Wu's email, in order to coordinate the expansion strategy, Puda management proposed to "adjust [Puda's] group structure" to have Zhao hold an additional 39% of Shanxi Coal's ownership, together with his existing 10% ownership interest.[165]

92. The proposal contained a flow chart entitled "PUDA-Current Group Structure" supposedly showing that, as of January 2011, Puda through Putai still owned 90% of Shanxi

---

[161] Ex. 79, December 2010 legal opinion issued by the Shanxi Bingyu Law Firm at MAC 00000597-600.
[162] *See* Ex. 23, Puda's December 8, 2010 Form S-3; Ex. 26, Puda's 2010 10-K at 36.
[163] *See* Ex. 23, Puda's December 8, 2010 Form S-3 at 2.
[164] Ex. 71, January 28, 2011 email exchange between Wu and the Independent U.S. Directors attaching group structure adjustment proposal at LSW-CLASS-0002478-83.
[165] Ex. 71, January 28, 2011 email exchange between Wu and the Independent U.S. Directors attaching group structure adjustment proposal at LSW-CLASS-0002478-83.

ACTIVE/83073043.1

Coal and Zhao owned only 10%.[166]  As of the date of Wu's email, the Independent U.S. Directors understood that Puda continued to have a 90% ownership interest in Shanxi Coal.[167]

93.  The group structure adjustment proposed establishing a new subsidiary, Shanxi Puda Mining Industry, which would purchase Shanxi Coal from Putai.[168]  Zhao would then hold an additional 39% of Shanxi Coal's shares through a "Proxy Shareholding Agreement."[169]  The Independent U.S. Directors were told by Wu that Puda management was proposing the group structure adjustment so that Zhao could show the local Chinese government that Zhao, a Chinese citizen, had a large interest in Shanxi Coal to help further its coal mining consolidation interests.[170]

94.  On February 25, 2011, Wu sent to the Independent U.S. Directors a copy of the Proxy Shareholding Agreement, in both English and Chinese, for their review.[171]  Under the section concerning Shanxi Puda Mining Industry's rights and obligations, the provision under paragraph 1 stated:

> [Shanxi Puda Mining Industry] shall, as the actual subscriber of the Represented Shares, enjoy the actual shareholder's rights and be entitled to get the corresponding investment earnings from Shanxi Coal; [Ming Zhao] shall only hold the shareholder's equity in the Represented Shares in its own name on behalf of [Shanxi Puda Mining Industry] and shall enjoy no right to earnings or right of

---

[166]  Ex. 71, January 28, 2011 email exchange between Wu and the Independent U.S. Directors attaching group structure adjustment proposal at LSW-CLASS-0002478-83.

[167]  Ex. 71, January 28, 2011 email exchange between Wu and the Independent U.S. Directors attaching group structure adjustment proposal at LSW-CLASS-0002478-83; Ex. 3, 2015 Wizel Dep. Tr. at 99:9-103:11.

[168]  Ex. 71, January 28, 2011 email exchange between Wu and the Independent U.S. Directors attaching group structure adjustment proposal at LSW-CLASS-0002478-83; Ex. 3, 2015 Wizel Dep. Tr. at 103:12-109:4.

[169]  Ex. 71, January 28, 2011 email exchange between Wu and the Independent U.S. Directors attaching group structure adjustment proposal at LSW-CLASS-0002478-83; Ex. 3, 2015 Wizel Dep. Tr. at 103:12-109:4.

[170]  Ex. 2, 2013 Wizel Dep. Tr. at 235:9-237:23; Ex. 3, 2015 Wizel Dep. Tr. at 101:10-102:6; 104:11-20; Ex. 5, 2015 Tang Dep. Tr. at 44:21-45:8.

[171]  Ex. 72, February 25, 2011 email from Wu to the Independent U.S. Directors, copying others and attaching the Proxy Shareholder Agreement at LSW-CLASS-0007986-95.

ACTIVE/83073043.1

disposal to such shareholder's equity (including but not limited to the transfer or pledge of such shareholder's equity).[172]

95.    The provision under paragraph 1 was added by the Independent U.S. Directors.[173] Under that particular provision, it was Wizel's understanding that Zhao would not own more than 10% of Shanxi Coal for his own benefit and that Zhao was not allowed to transfer or pledge any part of the 90% ownership that Puda had in Shanxi Coal.[174]   At the time they received the Proxy Shareholding Agreement, Zhao continued to represent to the Independent U.S. Directors that he owned only 10% of Shanxi Coal.[175]

96.    The Independent U.S. Directors expressed concerns to Wu regarding the Proxy Shareholding Agreement.[176]   After speaking with Puda's U.S. corporate counsel, the Independent U.S. Directors insisted on certain safeguards in place if Zhao was to become a proxy shareholder,[177] including: Zhao would receive no profits, he could not vote his shares, he could not transfer his shares, he would serve the will of the company, and that Zhao could be replaced as the proxy shareholder.[178]   The Independent U.S. Directors also would not approve the Proxy Shareholding Agreement unless Zhao obtained a letter from the Shanxi government stating, as he had claimed, that the Shanxi government required that proxy structure.[179]

97.    The Independent U.S. Directors told Wu, who in turn told Zhao, that they would not approve the Proxy Shareholding Agreement unless Zhao obtained a letter from the Shanxi

---

[172]   Ex. 72, February 25, 2011 email from Wu to the Independent U.S. Directors, copying others and attaching the Proxy Shareholder Agreement at LSW-CLASS-0007986-95.
[173]   Ex. 3, 2015 Wizel Dep. Tr. at 107:19-109:4.
[174]   Ex. 3, 2015 Wizel Dep. Tr. at 107:19-109:4.
[175]   Ex. 3, 2015 Wizel Dep. Tr. at 103:12-109:4.
[176]   Ex. 3, 2015 Wizel Dep. Tr. at 109:4-112:7.
[177]   Ex. 2, 2013 Wizel Dep. Tr. at 235:10-237:23; Ex. 3, 2015 Wizel Dep. Tr. at 109:4-112:7.
[178]   Ex. 2, 2013 Wizel Dep. Tr. at 167:21-170:5; Ex. 3, 2015 Wizel Dep. Tr. at 109:4-112:7.
[179]   Ex. 2, 2013 Wizel Dep. Tr. at 167:21-170:5; Ex. 3, 2015 Wizel Dep. Tr. at 109:4-112:7.

ACTIVE/83073043.1

government stating the proxy structure was necessary.[180]  The Independent U.S. Directors never received the requested letter from the Shanxi government.[181]

98.     On April 6, 2011, Wu sent to the Independent U.S. Directors the latest version of the Proxy Shareholding Agreement.[182]  As of that date, the Independent U.S. Directors had not approved of the Proxy Shareholding Agreement.[183]

Dated:  July 15, 2015                    Respectfully submitted,

                                         GOODWIN PROCTER LLP

                                         /s/ Mary K. Dulka
                                         Richard M. Strassberg
                                         (rstrassberg@goodwinprocter.com)
                                         Mary K. Dulka
                                         (mdulka@goodwinprocter.com)
                                         Rushank R. Shah
                                         (rshah@goodwinprocter.com)
                                         The New York Times Building
                                         620 Eighth Avenue
                                         New York, New York  10018
                                         Telephone:  (212) 813-8800
                                         Facsimile:  (212) 355-3333

                                         *Attorneys for Defendants*
                                         *Lawrence S. Wizel and C. Mark Tang*

---

[180]  Ex. 2, 2013 Wizel Dep. Tr. at 167:21-170:5; Ex. 3, 2015 Wizel Dep. Tr. at 109:4-112:7.
[181]  Ex. 2, 2013 Wizel Dep. Tr. at 167:21-170:5; Ex. 3, 2015 Wizel Dep. Tr. at 109:4-112:7.
[182]  Ex. 74, April 6, 2011 email from Wu to the Independent U.S. Directors and others attaching latest draft of the Proxy Shareholding Agreement at LSW-CLASS-0008017-28.
[183]  Ex. 3, 2015 Wizel Dep. Tr. at 109:4-112:7.

ACTIVE/83073043.1

## CERTIFICATE OF SERVICE

I hereby certify that on July 15, 2015, pursuant to the parties' agreement, I caused a true and correct copy of Defendants Lawrence S. Wizel and C. Mark Tang's Local Civil Rule 56.1 Statement of Material Facts Upon Which There Is No Genuine Issue For Trial to be served via e-mail on the following counsel of record:

Lionel Z. Glancy
Joshua L. Crowell
Glancy Prongay & Murray LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
lglancy@glancylaw.com
jcrowell@glancylaw.com

*Co-Lead Counsel for Plaintiffs*

Laurence M. Rosen
Sara Fuks
The Rosen Law Firm, P.A.
275 Madison Avenue, 34th Floor
New York, New York 10016
lrosen@rosenlegal.com
sfuks@rosenlegal.com

*Co-Lead Counsel for Plaintiffs*

Greg A. Danilow
Seth Goodchild
Stefania Di Trolio Venezia
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 100153
greg.danilow@weil.com
seth.goodchild@weil.com
stefania.venezia@weil.com

*Counsel for Defendant Macquarie Capital (USA), Inc.*

Robert Wolf
Jason Canales
Moses & Singer, LLP
405 Lexington Ave., 12th Fl.
New York, NY 10174
rwolf@mosessinger.com
jcanales@mosessinger.com

*Counsel for Defendant Brean Murray, Carret & Co., LLC*

_____/s/ Mary K. Dulka_____
Mary K. Dulka

ACTIVE/83073043.1