# EXHIBIT 5

George S. Canellos
Regional Director
New York Regional Office
SECURITIES AND EXCHANGE COMMISSION
3 World Financial Center, Suite 400
New York, New York  10281
(212) 336-1100
Attorney for the Plaintiff

**12 CV   1316**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

SECURITIES AND EXCHANGE COMMISSION,          :

                                   Plaintiff,          :          12 Civ. _____

             -against-                                 :

MING ZHAO and LIPING ZHU,                            :          COMPLAINT

                                   Defendants.         :

-------------------------------------------------------------x



        Plaintiff Securities and Exchange Commission (the "Commission"), for its Complaint

against defendants Ming Zhao ("Zhao") and Liping Zhu ("Zhu") (collectively "Defendants"),

alleges as follows:

### SUMMARY OF ALLEGATIONS

        1.        This case involves the theft of the primary asset of a U.S. public corporation,

Puda Coal, Inc. ("Puda"), by the chairman of the company's board of directors, defendant Zhao.

With the knowledge and complicity of Puda's CEO, defendant Zhu, Zhao secretly transferred

Puda's controlling interest in its operating subsidiary to himself and then sold a substantial

portion of that company to an investment trust managed by the largest state-owned financial firm

in the People's Republic of China ("PRC").  None of these asset transfers were approved by

Puda's board or shareholders or disclosed in Puda's public filings with the Commission, which

Zhao and Zhu signed knowing that those documents were materially false and misleading.

2.      Before the Defendants looted Puda, its main corporate asset was an indirect 90% ownership stake in Shanxi Puda Coal Group Co., Ltd ("Shanxi Coal"), a Chinese coal mining company that was Puda's sole source of revenue.  In September 2009, just weeks before Puda announced that Shanxi Coal had received a highly lucrative mandate from provincial government authorities to become a consolidator of smaller coal mining companies, Zhao transferred Puda's 90% stake in Shanxi Coal to himself.  In July 2010, Zhao transferred a 49% equity interest in Shanxi Coal to CITIC Trust Co. Ltd. ("CITIC Trust"), a Chinese private equity fund controlled by CITIC Group ("CITIC"), which is reported to be the largest state-owned investment firm in the PRC.  CITIC Trust placed its 49% stake in Shanxi Coal in a trust and then sold interests in the trust to Chinese investors.  In addition, Zhao caused Shanxi Coal to pledge 51% of its assets to CITIC Trust as collateral for a loan of RMB 2.5 billion ($370 million) from the trust to Shanxi Coal.  In exchange, CITIC Trust gave Zhao 1.212 billion preferred shares in the trust.

3.      Not only did Zhao and Zhu fail to disclose these transactions in Puda's periodic reports, Puda conducted two public offerings in 2010 -- purportedly to raise capital to fund the acquisition of coal mines by Shanxi Coal -- without disclosing that Puda no longer had any ownership stake in Shanxi Coal, Puda's sole source of revenue.  Thus, at the same time that CITIC Trust was effectively selling interests in Shanxi Coal to Chinese investors, the Defendants were still telling U.S. investors that Puda owned a 90% stake in that company.

4.      Zhao and Zhu continued their fraudulent scheme to deceive public investors even after the Commission began its investigation.  In order to perpetuate the fraud, Zhu, acting alone or with others, forged a letter purporting to be from CITIC Trust which falsely stated that no funds had actually been loaned to Shanxi Coal and that CITIC Trust disclaimed any interest in Puda's or Shanxi Coal's assets.  Zhao then had his U.S. counsel give the forged letter to the

2

Commission's investigative staff and to Puda's audit committee in an effort to create the false impression that Puda had not been harmed by the asset transfers. After Puda disclosed the letter to the public in an SEC filing, further misleading shareholders about the ownership of Puda's assets, the letter was exposed as a forgery. Zhu admitted forging the letter and resigned as CEO, and Puda's CFO then also resigned as a result.

5.      The Defendants' fraud drove Puda's stock price down to pennies per share from a prior high of nearly $17, wiping out hundreds of millions of dollars in shareholder value. As a result of the Defendants' scheme, Puda is now little more than a shell company, with no ongoing business operations.

6.      By virtue of the conduct alleged herein, Zhao and Zhu, directly or indirectly, singly or in concert, violated and are otherwise liable for violations of the federal securities laws, as follows:

(a)      Zhao and Zhu each violated Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)], Sections 10(b), 13(b)(5), and 14(a) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78j(b), 78m(b)(5), and 78n(a)] and Rules 10b-5, 13b2-1, 13b2-2, 14a-3, and 14a-9 [17 C.F.R. §§ 240.10b-5, 240.13b2-1, 240.13b2-2, 240.14a-3, and 240.14a-9]; and each of them is also liable, pursuant to Section 20(e) of the Exchange Act [15 U.S.C. § 78t(e)], for aiding and abetting Puda's violations of Sections 13(a), 13(b)(2)(A), and 13(b)(2)(B) of the Exchange Act [15 U.S.C. §§ 78m(a), 78m(b)(2)(A) and 78m(b)(2)(B)] and Rules 12b-20, 13a-1 and 13a-13 [17 C.F.R. §§ 240.12b-20, 240.13a-1 and 240.13a-13]; and each of them is further liable, pursuant to Section 20(a) of the Exchange Act [15 U.S.C. § 78t(a)], as a controlling person for Puda's violations of Sections 13(a), 13(b)(2)(A), and 13(b)(2)(B) of the Exchange Act [15 U.S.C. §§ 78m(a), 78m(b)(2)(A) and 78m(b)(2)(B)]

and Rules 12b-20, 13a-1 and 13a-13 thereunder [17 C.F.R. §§ 240.12b-20, 240.13a-1 and 240.13a-13];

      (b)    Zhu violated Exchange Act Rule 13a-14 [17 C.F.R. § 240.13a-14]; and

      (c)    In the alternative, Zhao and Zhu are each liable, pursuant to Section 20(e) of the Exchange Act [15 U.S.C. § 78t(e)], for aiding and abetting Puda's and each other's violations of Sections 10(b) and 14(a) of the Exchange Act [15 U.S.C. §§ 78j(b) and 78n(a)] and Rules 10b-5, 14a-3, and 14a-9 [17 C.F.R. §§ 240.10b-5, 240.14a-3, and 240.14a-9]; and each of them is further liable, pursuant to Section 20(a) of the Exchange Act [15 U.S.C. § 78t(a)], as a controlling person for Puda's and each other's violations of Sections 10(b) and 14(a) of the Exchange Act [15 U.S.C. §§ 78j(b) and 78n(a)] and Rules 10b-5, 14a-3, and 14a-9 [17 C.F.R. §§ 240.10b-5, 240.14a-3, and 240.14a-9].

      7.    Unless the Defendants are permanently restrained and enjoined, they will again engage in the acts, practices, transactions and courses of business set forth in this complaint and in acts, practices, transactions and courses of business of similar type and object.

## JURISDICTION AND VENUE

      8.    The Commission brings this action pursuant to authority conferred by Section 20(b) of the Securities Act [15 U.S.C. § 77t(b)] and Section 21(d)(1) of the Exchange Act [15 U.S.C. § 78u(d)(1)], and seeks to restrain and permanently enjoin the Defendants from engaging in the acts, practices, transactions and courses of business alleged herein. The Commission also seeks a final judgment: (a) ordering each of the Defendants to disgorge the ill-gotten gains received as a result of the violations for which they are liable and pay prejudgment interest on those amounts; (b) ordering the Defendants to pay civil monetary penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15

U.S.C. § 78u(d)(3)]; and (c) prohibiting each of the Defendants from acting as an officer or director of a public company pursuant to Section 20(e) of the Securities Act [15 U.S.C. § 77t(e)] and Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)].

9.     This Court has jurisdiction over this action, and venue lies in this District, pursuant to Sections 20(b), 20(d), and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d), and 77v(a)] and Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), and 78aa]. The Defendants, directly and indirectly, have made use of the means or instrumentalities of, or the means or instruments of transportation or communication in, interstate commerce, or of the mails, or of the facilities of a national securities exchange, in connection with the transactions, acts, practices and courses of business alleged herein. Certain of the acts, practices, transactions, and courses of business alleged in this complaint occurred within the Southern District of New York. For example, Puda's common stock was listed and traded on the NYSE Amex LLC Exchange ("NYSE") during part of the relevant period, a number of Puda's defrauded shareholders reside in the Southern District of New York, and the letter forged by Zhu was disseminated to Commission staff and Puda's audit committee counsel within the Southern District of New York.

## DEFENDANTS

10.     **Zhao**, age 39,  has been chairman of Puda's board of directors since July 15, 2005, and he was also Puda's CEO until June 25, 2008. As of March 16, 2011, Zhao owned approximately 25% of the outstanding shares of Puda, and Zhao's brother owned approximately 6% of the outstanding shares. Zhao is also co-founder, chairman and CEO of Shanxi Coal. Zhao is a Chinese national and resides in the PRC.

11.     **Zhu**, age 55, succeeded Zhao as CEO of Puda and served as a director of Puda

until he resigned both positions via letter to Puda's board on September 22, 2011. Zhu is a Chinese national and resides in the PRC.

## RELEVANT ENTITIES

12. **Puda** is a Delaware corporation whose principal offices are located in Taiyuan, Shanxi Province, PRC. Puda entered the U.S. capital markets through a reverse merger with a pre-existing listed company on July 15, 2005. From September 22, 2009 through August 17, 2011, Puda's common stock was listed and traded on the NYSE.

13. **Shanxi Coal** is a Chinese coal mining company that was established under the laws of the PRC on June 7, 1995 and is located in Tiayuan, Shanxi Province, PRC. Prior to the conduct described herein, Puda indirectly owned 90% of Shanxi Coal.

## BACKGROUND

### Puda's Corporate Structure And Business

14. Puda employs an offshore ownership structure that is commonly used by public companies with operations in China. Puda owns Puda Investment Holding Limited ("Puda BVI"), an International Business Company incorporated in the British Virgin Islands. Prior to the fraudulent conduct alleged herein, Puda BVI owned Shanxi Putai Resources Limited ("Putai"), a company established under the laws of the PRC. Puda's business operations were conducted exclusively through Shanxi Coal, which was owned 90% by Putai, 8% by Zhao, and 2% by Zhao's brother.

15. Before the fraud began in September 2009, the corporate structure for Puda was as follows:



16.     Puda's primary business was originally as a supplier of premium high grade cleaned coking coal used to produce coke for steel manufacturing.  In 2009, Puda modified its business strategy to enter into the coal mining business as a result of a decision by the Shanxi provincial government to require mergers and consolidations of smaller coal mining companies in Shanxi Province.  The government had issued an implementation opinion to that effect on September 2, 2008.  Pursuant to the government policy, the government awarded certain larger coal production enterprises the opportunity to acquire, consolidate and restructure smaller coal mines through mergers, acquisitions and asset or share transfers.  On September 28, 2009, Puda announced that Shanxi Coal was one of the entities selected by the Shanxi provincial government to become a coal mining consolidator, an extremely lucrative opportunity for Shanxi Coal.

17.     Puda conducted two public offerings in the U.S. ostensibly to raise capital for Shanxi Coal's mine acquisition and expansion.  On February 18, 2010, Puda completed the offering and sale of 2.86 million shares with net proceeds of approximately $14.5 million.  On December 13, 2010, Puda completed the offering and sale of 7.85 million shares with net proceeds of approximately $101.5 million.

18.     Aside from the control inherent in being Puda's largest shareholder and board chairman, Zhao wielded enormous influence and control over the public company due to his

possession of Shanxi Coal's "chop," or corporate seal. Because Puda's business operations were conducted exclusively through Shanxi Coal, Zhao exercised tremendous power over all aspects of Puda's affairs both in the U.S. and China, including its financial reporting, accounting and disclosure functions. Similarly, by virtue of his position as Puda's CEO, Zhu also exercised control over all of Puda's activities, including its financial reporting, accounting and disclosure functions.

## THE DEFENDANTS' FRAUDULENT SCHEME

19. In September 2009, Zhao embarked on a scheme with Zhu to enrich himself at the expense of Puda's public shareholders by secretly stealing and selling Puda's only revenue producing asset, Shanxi Coal, while continuing to raise funds from U.S. investors by falsely telling them that Puda still owned 90% of Shanxi Coal. When Puda raised $115 million in two public offerings in 2010 for the supposed purpose of financing the expansion of Shanxi Coal's mining operations through the provincial government's consolidation mandate, Puda no longer owned any interest at all in Shanxi Coal. Zhao and Zhu both signed multiple SEC filings that misrepresented Puda's ownership interest in Shanxi Coal and, as such, were fundamentally false in all respects. As detailed below, the Defendants' fraudulent scheme was designed to enable Zhao, rather than Puda and its public shareholders, to profit from the lucrative business opportunity presented by the Shanxi provincial government.

### Zhao's Theft of Shanxi Coal

20. In September 2009, Zhao caused Puda's 90% indirect interest in Shanxi Coal to be transferred to himself without the approval or knowledge of Puda's public shareholders or its board of directors. Specifically, on September 3, 2009, Zhao caused Putai, the entity through which Puda held its 90% controlling interest in Shanxi Coal, to enter into a contract with Zhao

8

pursuant to which Putai transferred its 90% equity stake in Shanxi Coal to Zhao. Zhao's brother

signed the contract on behalf of Putai.

21.    Also on September 3, 2009, Zhao caused his brother to divest himself of his 2%

interest in Shanxi Coal by transferring 1% to Zhao and 1% to an administrative employee of

Shanxi Coal whom Zhao also controlled ("Administrative Employee"). Through this series of

transactions, Zhao restructured the ownership of Shanxi Coal such that Zhao held 99% and the

Administrative Employee held 1% of Shanxi Coal.

### Zhao's Sale of Shanxi Coal to CITIC Trust

22.    Beginning in July 2010, Zhao engaged in a series of transactions through which

he sold and pledged interests in Shanxi Coal to CITIC Trust. On July 14, 2010, Zhao sold a 49%

ownership interest in Shanxi Coal to CITIC Trust. CITIC Trust then placed its 49% ownership

interest into an investment trust plan known as the CITIC Juxinhuijin Coal Industry Investment

Fund No. 1 Collective Trust Plan ("CITIC Trust Plan") and sold interests in the CITIC Trust

Plan to investors in China. In exchange for the 49% stake in Shanxi Coal, Zhao received 1.212

billion preferred shares in the CITIC Trust Plan, which were to be paid out in cash after the other

investors received their share of the CITIC Trust Plan's payout.

23.    Also in July 2010, Zhao signed agreements with the CITIC Trust to obtain RMB

2.5 billion ($370 million) in financing for Shanxi Coal from the CITIC Trust Plan. This

financing was the functional equivalent of a "loan" that had to be repaid by Shanxi Coal within

three years at a 12.5% annual interest rate and with 2% in annual fees. In November 2010, this

loan agreement was amended to increase the size of the CITIC Trust Plan's loan to Shanxi Coal

from RMB 2.5 billion to RMB 3.5 billion (approximately $516 million). The contracts for this

increase in the loan amount acknowledge that the full RMB 2.5 billion had already been

9

provided to Shanxi Coal under the first loan agreement.

24.     On July 14, 2010, Zhao and the Administrative Employee pledged their remaining 51% combined equity interest in Shanxi Coal to CITIC Trust.  This pledge served as collateral for the RMB 2.5 billion (later RMB 3.5 billion) loan provided to Shanxi Coal.  The loan and pledge agreements provide that if Shanxi Coal defaults in repaying the loan, the CITIC Trust Plan would secure 100% ownership of Shanxi Coal, paying its assets out first to the investors in the CITIC Trust Plan and then paying whatever assets remained to Zhao.  If Shanxi Coal repays the loan to the CITIC Trust Plan, Zhao would receive the corpus of the trust -- consisting of the pledged shares of Shanxi Coal -- once all of the other CITIC Trust Plan investors had been paid.

25.     CITIC Trust provided its investors with quarterly status reports from the CITIC Trust Plan regarding the transactions given effect and memorialized in the executed loan and share transfer agreements described above.  These quarterly reports, including a report dated as recently as October 30, 2011, set forth how much money the CITIC Trust Plan has raised from investors, how much money the CITIC Trust Plan has provided to Shanxi Coal and how that money was used by Shanxi Coal.  The reports further describe the status of the various projects undertaken by Shanxi Coal with the proceeds of the CITIC Trust Plan's loan.  These quarterly reports appear on CITIC Trust's website, and CITIC Trust confirmed the accuracy of the information in the quarterly reports in a letter to Puda's audit committee dated September 29, 2011.

26.     As he later admitted in an interview with counsel to Puda's audit committee, Zhu was aware of the foregoing transfers and transactions with the CITIC Trust at the time they occurred, but he did not tell anyone at Puda about those transactions because Zhao instructed him to keep quiet about the matter.

**Exposure of the Fraud and Its Impact on Puda**

27.     On April 8, 2011, an internet report on Puda surfaced regarding Puda's ownership of Shanxi Coal and describing some of the asset transfers and transactions between Zhao and CITIC Trust that are detailed above. Prior to the issuance of the report, the 52-week high for Puda's stock price was $16.97 per share. On April 8, 2011, the stock closed at $6.00, down $3.10 from the prior day's closing price, a decline in market capitalization of more than $87 million on that day alone. As of February 7, 2012, the stock was trading at 35 cents per share, wiping out $499 million in market capitalization from December 2, 2010, the day Puda's stock price had reached $16.97 during intraday trading.

28.     On April 11, 2011, Puda issued a press release announcing that its audit committee had retained counsel to conduct an investigation into the claims made in the internet report. In the press release, Puda stated that "although the investigation is in its preliminary stages, evidence supports the allegation that there were transfers by Zhao in subsidiary ownership that were inconsistent with disclosure made by the Company in its public securities filings." The NYSE halted trading in Puda's stock that same day.

29.     On July 7, 2011, Moore Stephens Hong Kong ("Moore Stephens"), an accounting firm which served as Puda's outside auditor during the time of the events alleged herein, sent Puda a letter resigning from the engagement and stating that further reliance should no longer be placed on its previously issued audit reports for Puda's fiscal years ended December 31, 2009 and 2010. In its resignation letter, Moore Stephens stated that Puda had made representations to it that are "materially inconsistent" with the share transfers made by Zhao. Puda has not filed or amended any periodic reports with the Commission since the annual report on Form 10-K for the

fiscal year ended December 31, 2010 was filed on March 16, 2011.

      30.     On August 18, 2011, the NYSE delisted Puda.  On August 19, 2011, the Commission issued an order suspending trading in Puda stock through September 1, 2011.

**The Use of a Forged Letter To Continue the Scheme**

      31.     On August 31, 2011, Zhao's U.S. counsel provided a letter to the Commission's investigative staff purporting to be from CITIC Trust, dated August 29, 2011, which stated that: (i) no funds had been advanced by CITIC Trust or any of its affiliates to Shanxi Coal under the loan agreements; and (ii) CITIC Trust had not, and would not, assert ownership interest in the assets of Shanxi Coal or any of its affiliates ("August 29 Letter").  Zhao's U.S. counsel stated to the Commission's investigative staff that Zhao had met with and obtained this letter from the chairman of CITIC.  Zhao's U.S. counsel also provided the August 29 Letter to Puda's audit committee.

      32.     On September 1, 2011, prior to the expiration of the trading suspension, Puda filed a report on Form 8-K with the Commission setting forth preliminary findings of its audit committee's investigation.  The preliminary findings further confirmed many aspects of the Defendants' fraud.  The Form 8-K also stated that Zhao's U.S. counsel had provided the audit committee with a letter purporting to be from CITIC Trust and detailed the contents of the August 29 Letter.  This letter was intended to convey to U.S. regulators, the company's audit committee, and investors highly material information, namely, that the agreements purporting to encumber and convey ownership of Puda's assets to CITIC had not become effective, that Puda still remained the beneficial owner of these assets, and that CITIC had disclaimed any interest in those assets.

      33.     The August 29 Letter was a forgery perpetrated by Zhao and Zhu, with Zhu

taking public responsibility for forging the letter. After receiving a copy of the August 29 Letter, a lawyer representing CITIC Trust informed the Commission's investigative staff that CITIC Trust did not issue the August 29 Letter. Separately, in a letter to Puda's board of directors dated September 22, 2011, Zhu resigned as CEO and as a director of Puda. In his resignation letter, Zhu stated that on August 29, 2011, he provided a "false letter" concerning CITIC Trust to the Commission. As confirmed in a press release issued by Puda on September 26, 2011, the "false letter" referenced in Zhu's resignation letter was the August 29 Letter. On September 26, 2011, Zhao's U.S. counsel withdrew as counsel to Zhao and advised the Commission's investigative staff and Puda's audit committee not to rely on any prior statements that such counsel had made regarding CITIC Trust.

34.    By letter dated September 26, 2011, CITIC Trust informed Puda's audit committee that after "careful verification," CITIC Trust determined that it did not issue the August 29 Letter. In its letter to the audit committee, CITIC Trust also "solemnly state[d]" that the information disclosed on its website, including the contents of "every quarterly management report" and "other documents concerning the [CITIC Trust Plan]" was "true, valid and in conformity with reality."

35.    Because the August 29 Letter was a forgery, Puda's September 1, 2011 report on Form 8-K was materially false and misleading to the extent it conveyed to investors the contents of the August 29 Letter, which falsely represented that Zhao's transactions with CITIC Trust did not take effect and that Puda's ownership of Shanxi Coal was not impaired by those transactions.

36.    On September 28, 2011, Puda's CFO resigned. Neither Zhu nor the CFO has been replaced.

**The Defendants' Deliberate Misrepresentations About Puda**

37.     Following Zhao's transfer of Puda's controlling ownership interest in Shanxi Coal in September 2009, Puda filed numerous documents with the Commission that were materially false and misleading because, among other things, they misrepresented Puda's interest in Shanxi Coal and did not disclose anything about the asset transfers and related transactions orchestrated by Zhao. Zhao and Zhu each signed numerous materially false and misleading SEC filings during this period. Due to their participation in and/or knowledge of the undisclosed asset transfers and related transactions that deprived Puda of its ownership interest in Shanxi Coal, both Zhao and Zhu knew that the SEC filings they signed were materially false and misleading. Zhao and Zhu also caused Puda to issue numerous press releases after September 2009 that they knew were materially false and misleading because the releases, most of which contain quotes from Zhu or Zhao, discussed Shanxi Coal's operations and Puda's purported financial results without disclosing that Puda no longer owned Shanxi Coal.

38.     The following periodic reports were materially false and misleading:  (i) the annual reports on Form 10-K for the fiscal years ended December 31, 2009 and 2010, which were filed with the Commission on March 31, 2010 and March 16, 2011, respectively; and (ii) the interim quarterly reports on Form 10-Q for the quarters ended September 30, 2009, March 31, 2010, June 30, 2010, and September 30, 2010, which were filed with the Commission on November 13, 2009, May 17, 2010, August 16, 2010, and November 15, 2010, respectively. Zhu signed both annual reports and each of the quarterly reports, and Zhao signed both annual reports. Zhu also signed the principal executive officer certifications pursuant to Rule 13a-14 of the Exchange Act and the certifications pursuant to Section 906 of the Sarbanes-Oxley Act that were appended to the annual and quarterly reports.

14

39.     The periodic reports listed above were all false and misleading because, among other things, they falsely described Shanxi Coal as Puda's "90% subsidiary" and stated falsely that the "owners of Shanxi Coal are Putai (90%), Mr. Ming Zhao (8%) and [Zhao's brother] (2%)." In addition, Shanxi Coal's operating results were consolidated with Puda's financial results throughout this time period, and the consolidated financial statements included in each of the foregoing periodic reports were therefore completely false. The annual reports for the 2009 and 2010 fiscal years both also included a detailed discussion of Shanxi Coal in a section titled "Related Party Transactions," including a discussion of Puda's acquisition of a 90% ownership interest in Shanxi Coal in 2007, without disclosing that Puda no longer had an ownership interest in Shanxi Coal.

40.     Both annual reports also made clear that Puda's financial performance was wholly dependent on its ownership of Shanxi Coal. Defendants' failure to disclose Puda's loss of its ownership stake in Shanxi Coal, therefore, was critical. Both annual reports stated, among other things, as follows: "Our operations are conducted exclusively through Shanxi Coal, in which we own 90% of the equity interest. The operations of Shanxi Coal are our sole source of revenues. . . . [W]e are dependent on the cash flow of our subsidiaries to meet our obligations."

41.     Puda also filed registration statements, prospectuses, and prospectus supplements with the Commission during the relevant time period that did not disclose anything about the Shanxi Coal-related transactions orchestrated by Zhao. On December 3, 2009, Puda filed an S-3 Registration Statement for the sale of 2,855,652 shares, and amendments were filed on February 11 and 16, 2010. Puda filed the corresponding prospectus supplement for this offering on February 16, 2010. On April 30, 2010, Puda filed a Post-Effective Amendment on Form S-3 for the sale of 1,666,000 shares by certain stockholders. Puda filed the corresponding prospectus for

this offering on May 12, 2010.  On August 17, 2010, Puda filed an S-3 Registration Statement

for the sale of 7,850,000 shares, and amendments were filed on October 14 and December 8,

2010.  Puda filed the corresponding prospectus supplement for this offering on December 8,

2010.  Each of the foregoing registration statements and related filings incorporated by reference

one or more of the false and misleading periodic reports described above in paragraphs 38-40.

42.     In addition, on April 29, 2010, Puda filed with the Commission, and sent to its

shareholders, its annual proxy statement, pursuant to which Zhao and Zhu were re-elected to

Puda's board of directors.  The proxy statement stated that the "proxy is being solicited on behalf

of the Board of Directors," which included Zhao and Zhu.  The proxy statement touted the

Defendants' "extensive experience" and recommended their re-election.  This proxy statement

was accompanied by Puda's false annual report and financial statements for its 2009 fiscal year.

Like the annual report, the proxy statement itself also included a detailed discussion of Shanxi

Coal in a section titled "Related Party Transactions," including a discussion of Puda's acquisition

of a 90% ownership interest in Shanxi Coal in 2007, without disclosing that Puda no longer had

an ownership interest in Shanxi Coal.  As chairman and CEO, respectively, Zhao and Zhu thus

caused Puda's shareholders to be solicited regarding Puda's annual meeting when they knew the

company no longer owned the main asset it claimed to own in the proxy statement and financial

statements provided to the shareholders.  Both Zhao and Zhu directly benefited from the proxy

by retaining their seats as directors and maintaining control of the company under false pretenses

through the filing of this materially false and misleading proxy statement.

43.     Zhu also signed materially false and misleading management representation

letters that were provided to Moore Stephens in connection with its audits of Puda's annual

financial statements and its review of Puda's interim financial statements.  These management

representation letters were materially false and misleading because, among other things, they failed to disclose that Puda no longer owned a 90% indirect ownership interest in Shanxi Coal. In addition, Zhao withheld information about the asset transfers and related transactions from the personnel who were creating the documents being audited by Moore Stephens and serving as the contact points for the audits, including Puda's CFO and controller. As a result, Zhao made materially false and misleading statements to internal Puda accountants and caused them and others at Puda to omit material facts from the information provided to Moore Stephens.

## THE DEFENDANTS' GAINS FROM THE FRAUD

44.    Both Zhao and Zhu profited from their fraud. Zhao transferred Puda's principal asset, Shanxi Coal, to himself and then transferred that asset to CITIC, which placed it in the CITIC Trust Plan, an entity in which Zhao holds a residual beneficial interest. Both Zhao and Zhu obtained monetary and other compensation from Puda while engaged in a fraud that severely damaged Puda and its shareholders. As CEO, Zhu received a salary from Puda and stock options attributable to Puda's financial performance. As chairman, Zhao received director's fee payments and stock options attributable to Puda's financial performance.

## FIRST CLAIM FOR RELIEF

### Violations of Section 17(a)
### of the Securities Act

### (Zhao and Zhu)

45.    The Commission realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 44.

46.    Zhao and Zhu directly or indirectly, singly or in concert, in the offer and sale of securities, by the use of the means or instruments of transportation or communication in

interstate commerce, or by use of the mail, knowingly or recklessly, have: (a) employed devices, schemes, or artifices to defraud; (b) obtained money or property by means of untrue statements of a material fact or by omitting to state a material fact necessary in order to make the statement made, in light of the circumstances under which they were made, not misleading; or (c) engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

47.     As part and in furtherance of a scheme to defraud Puda's public shareholders by secretly stealing and selling Puda's 90% ownership interest in Shanxi Coal, and by falsely representing to the investing public that Puda still owned 90% of Shanxi Coal, Zhao and Zhu, directly or indirectly, singly or in concert, knowingly or recklessly, engaged in and employed the fraudulent and deceptive devices, schemes, artifices, contrivances, acts, transactions, practices and courses of business and/or made the material misrepresentations and/or omitted to state the material facts alleged above in paragraphs 1-5 and 14-44.

48.     During the time of the Defendants' fraudulent conduct, Puda filed periodic reports with the Commission that were signed by Zhao and/or Zhu, as described above in paragraphs 38-40. Due to the fraudulent practices in which the Defendants engaged, these documents contained materially false and misleading statements, and omitted to state material facts, concerning Puda's ownership of Shanxi Coal and Puda's financial performance, including financial statements that materially misstated, among other things, Puda's assets, revenue and net income. As a result, the periodic reports identified in paragraphs 38-40 were materially false and misleading.

49.     As described above in paragraph 41, one or more of these materially false and misleading periodic reports were incorporated by reference in registration statements and prospectuses, including amendments thereto, that were signed by Zhao and Zhu and filed by

Puda with the Commission during the time of the Defendants' fraudulent conduct. As a result, these registration statements and related filings were also materially false and misleading, as the registration statements and related filings also failed to disclose the asset transfers and related transactions described in paragraphs 14-44.

50. Zhao and Zhu knew or were reckless in not knowing that the periodic reports, registration statements and related filings described above were materially false and misleading, and both defendants also acted with the requisite scienter by knowingly or recklessly engaging in the fraudulent scheme described above.

51. By reason of the foregoing, Zhao and Zhu, singly or in concert, directly or indirectly, have violated, and unless enjoined will again violate, Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

### SECOND CLAIM FOR RELIEF

**Violations of Section 10(b)
of the Exchange Act and Rule 10b-5**

(Zhao and Zhu)

52. The Commission realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 51.

53. Zhao and Zhu, directly or indirectly, singly or in concert, by use of the means or instrumentalities of interstate commerce or of the mails, or of the facilities of a national securities exchange, in connection with the purchase or sale of securities, knowingly or recklessly, have: (a) employed devices, schemes and artifices to defraud; (b) made untrue statements of material fact, or omitted to state material facts necessary in order to make statements made, in the light of the circumstances under which they were made, not misleading; and/or (c) engaged in acts, practices and courses of business which operated or would have operated as a fraud or deceit

upon purchasers of securities and upon other persons.

54.     As part and in furtherance of a scheme to defraud Puda's public shareholders by secretly stealing and selling Puda's 90% ownership interest in Shanxi Coal, and by falsely representing to the investing public that Puda still owned 90% of Shanxi Coal, Zhao and Zhu, directly or indirectly, singly or in concert, knowingly or recklessly, engaged in and employed the fraudulent and deceptive devices, schemes, artifices, contrivances, acts, transactions, practices and courses of business and/or made the misrepresentations and/or omitted to state the facts alleged above in paragraphs 1-5 and 14-44.

55.     During the time of the Defendants' fraudulent conduct, Puda filed periodic reports with the Commission that were signed by Zhao and/or Zhu, as described above in paragraphs 38-40. Due to the fraudulent practices in which the Defendants engaged, these documents contained materially false and misleading statements, and omitted to state material facts, concerning Puda's ownership of Shanxi Coal and Puda's financial performance, including financial statements that materially misstated, among other things, Puda's assets, revenue and net income. As a result, the periodic reports identified in paragraphs 38-40 were materially false and misleading.

56.     As described above in paragraph 41, one or more of these materially false and misleading periodic reports were incorporated by reference in registration statements and prospectuses, including amendments thereto, that were signed by Zhao and Zhu and filed by Puda with the Commission during the time of the Defendants' fraudulent conduct. As a result, these registration statements and related filings were also materially false and misleading, as the registration statements and related filings also failed to disclose the asset transfers and related transactions described in paragraphs 14-44.

57.     During the time of the Defendants' fraudulent conduct, Puda also issued press

releases and filed a proxy statement with the Commission, as described above in paragraphs 37 and 42. Due to the fraudulent practices in which the Defendants engaged, these documents contained materially false and misleading statements, and omitted to state material facts, concerning Puda's ownership of Shanxi Coal and Puda's financial performance, including financial statements that materially misstated, among other things, Puda's assets, revenue and net income. As a result, the press releases, which contained materially false and misleading quotations from Defendants, and the proxy statement identified in paragraphs 37 and 42 were also materially false and misleading.

58.     Zhao and Zhu knew or were reckless in not knowing that the periodic reports, press releases, proxy statement, registration statements and related filings described above were materially false and misleading, and both defendants also acted with the requisite scienter by knowingly or recklessly engaging in the fraudulent scheme described above.

59.     By reason of the foregoing, Zhao and Zhu, singly or in concert, directly or indirectly, have violated, and unless enjoined will again violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

### THIRD CLAIM FOR RELIEF

### Violations of Section 14(a) of the Exchange Act and Rules 14a-3 and 14a-9

#### (Zhao and Zhu)

60.     The Commission realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 59.

61.     Zhao and Zhu directly or indirectly, singly or in concert, by use of the means or instrumentalities of interstate commerce or of the mails, or of the facilities of a national securities exchange or otherwise, solicited or permitted the use of their names and Puda's name to solicit

proxies, consents or authorizations in respect of non-exempt securities registered pursuant to

Section 12(b) of the Exchange Act [15 U.S.C. § 78l(b)]:

    (a)    while failing to furnish each person solicited, concurrently or previously, with a written proxy statement accompanied or preceded by an annual report to security holders in compliance with the requirements of Rule 14a-3(b)(1); and

    (b)    by means of a proxy statement, form of proxy statement, form of proxy, notice of meeting and other communications that contained statements which, at the time and in light of the circumstances under which they were made, were false and misleading with respect to material facts, or which omitted to state material facts necessary in order to make the statements therein not false or misleading or necessary to correct statements in earlier communications with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading;

in violation of Section 14(a) of the Exchange Act [15 U.S.C. § 78n(a)] and Rules 14a-3 and 14a-9 [17 C.F.R. §§ 240.14a-3 and 240.14a-9].

    62.    As alleged above in paragraph 42, Puda filed with the Commission, and sent to shareholders, an annual proxy statement on April 29, 2010 in connection with a proxy solicited on behalf of Puda's board of directors for the re-election of Zhao and Zhu to the board. As also alleged above in paragraph 42, that proxy statement contained material misstatements, and omitted to disclose material facts, concerning Puda's ownership of Shanxi Coal and other matters and was accompanied by an annual report and financial statements that were materially false and misleading for the reasons described above in paragraphs 38-40.

63.     By reason of the foregoing, Zhao and Zhu, singly or in concert, directly or

indirectly, have violated, and unless enjoined will again violate, Section 14(a) of the Exchange

Act [15 U.S.C. § 78n(a)] and Rules 14a-3 and 14a-9 [17 C.F.R. §§ 240.14a-3 and 240.14a-9].

### FOURTH CLAIM FOR RELIEF

**Violations of Section 13(b)(5) of
the Exchange Act and Rule 13b2-1**

(Zhao and Zhu)

64.     The Commission realleges and incorporates by reference herein each and every

allegation contained in paragraphs 1 through 63.

65.     Zhao and Zhu engaged in fraudulent practices in the course of which they

knowingly circumvented or knowingly failed to implement a system of internal accounting

controls and knowingly falsified, directly or indirectly, or caused to be falsified books, records

and accounts of Puda that were subject to Section 13(b)(2)(A) of the Exchange Act [15 U.S.C. §

78m(b)(2)(A)]. As alleged above, Zhao and Zhu knowingly falsified and/or caused others to

falsify Puda's books and records with respect to Puda's ownership of Shanxi Coal and Puda's

financial condition and performance, including financial statements and other financial records

that materially misstated, among other things, Puda's assets, revenue and net income. In doing

so, Zhao and Zhu also knowingly circumvented, and otherwise knowingly failed to implement,

internal controls designed to prevent, among other things, the falsification of accounting records

and financial statements reflecting Puda's assets.

66.     By reason of the foregoing, Zhao and Zhu have violated, and unless enjoined will

again violate, Section 13(b)(5) of the Exchange Act [15 U.S.C. § 78m(b)(5)] and Rule 13b2-1

thereunder [17 C.F.R. § 240.13b2-1].

## FIFTH CLAIM FOR RELIEF

### Violations of the Exchange Act Rule 13b2-2

(Zhao and Zhu)

67.    The Commission realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 66.

68.    Zhao and Zhu, directly or indirectly, made or caused to be made materially false or misleading statements, or omitted to state or caused another person to omit to state, material facts necessary in order to make statements made, in light of the circumstances under which such statements were made, not misleading to an accountant, in connection with:  (a) audits and examinations of the financial statements of Puda; and (b) the preparation and filing by Puda of reports required to be filed with the Commission.

69.    While acting as directors and/or officers of Puda, Zhao and Zhu made materially false and misleading statements to accountants in connection with audits of Puda's annual financial statements during the relevant period.  Zhu signed materially false and misleading management representation letters that were provided to Moore Stephens with respect to its audits of Puda's financial statements for 2009 and 2010 and its reviews of Puda's interim financial statements during those years.  Zhao made materially false and misleading statements to internal Puda accountants and caused them and others at Puda to omit to state material facts to Moore Stephens in connection with its audits and reviews of Puda's financial statements.

70.    By reason of the foregoing, Zhao and Zhu have violated, and unless enjoined will again violate, Exchange Act Rule 13b2-2 [17 C.F.R. § 240.13b2-2].

## SIXTH CLAIM FOR RELIEF

### Violations of the Exchange Act Rule 13a-14

(Zhu)

71.     The Commission realleges and incorporates by reference herein each and every

allegation contained in paragraphs 1 through 70.

72.     As Puda's chief executive officer, Zhu signed certifications pursuant to Rule 13a-

14 that were included in Puda's annual reports on Form 10-K for the fiscal years ended

December 31, 2009 and December 31, 2010 and in Puda's interim reports on Form 10-Q for the

quarters ended September 30, 2009, March 31, June 30, and September 30, 2010.

73.     In the certifications identified above, Zhu falsely stated, among other things, that:

(a) the reports did not contain any untrue statements of a material fact or omit to state a material

fact necessary to make the statement not misleading; and (b) he had disclosed to Puda's auditors

and Puda's audit committee all significant deficiencies and material weaknesses in the design or

operation of Puda's internal controls and any fraud, whether or not material, that involved

management or other employees who had a significant role in Puda's internal controls.

74.     As alleged above, the annual and quarterly reports filed by Puda during the time

of the Defendants' fraudulent conduct contained materially false and misleading statements

concerning Puda's assets and other matters as a result of fraudulent practices in which Zhu

participated and significant internal control deficiencies for which Zhu was responsible.  Zhu

failed to disclose his knowledge of, and participation in, the fraudulent scheme to deprive Puda

of its ownership interest in Shanxi Coal to Puda's audit committee and auditors.

75.     By reason of the foregoing, Zhu violated, and unless enjoined will again violate,

Exchange Act Rule 13a-14 [17 C.F.R. § 240.13a-14].

25

## SEVENTH CLAIM FOR RELIEF

### Violations of Section 13(a) of the
### Exchange Act and Rules 12b-20, 13a-1 and 13a-13

(Zhao and Zhu)

76.     The Commission realleges and incorporates by reference herein each and every

allegation contained in paragraphs 1 through 75.

77.     Puda failed to file with the Commission, in accordance with the rules and

regulations prescribed by the Commission, such annual and quarterly reports as the Commission

has prescribed and Puda failed to include, in addition to the information expressly required to be

stated in such reports, such further material information as was necessary to make the statements

made therein, in light of the circumstances in which they were made, not misleading, in violation

of Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 12b-20, 13a-1 and 13a-13

thereunder [17 C.F.R. §§ 240.12b-20, 240.13a-1 and 240.13a-13].

78.     As alleged above, Puda's annual and quarterly reports described above in

paragraphs 38-40 were materially false and misleading because, among other things, they

contained, materially false and misleading statements, and omitted material information,

concerning Puda's ownership of Shanxi Coal and Puda's financial condition and included

financial statements that materially misstated, among other things, Puda's assets, revenue and net

income.

79.     As alleged above, Zhao and Zhu knowingly engaged in fraudulent conduct that

resulted in the foregoing materially false and misleading statements in the annual and quarterly

reports described in paragraphs 38-40, which were signed by Zhao and/or Zhu.

80.     At all times relevant hereto, Zhao and Zhu were controlling persons of Puda for

the purposes of Section 20(a) of the Exchange Act [15 U.S.C. § 78t(a)].

81.     Zhao and Zhu had actual knowledge of Puda's primary violations of Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 12b-20, 13a-1 and 13a-13 [17 C.F.R. §§ 240.12b-20, 240.13a-1, 240.13a-13] and substantially assisted the primary violations by knowingly engaging in conduct that was a substantial causal factor of such primary violations.

82.     By reason of the foregoing:  (a) Zhao and Zhu are each liable as controlling persons pursuant to Section 20(a) of the Exchange Act [15 U.S.C. § 78t(a)] for Puda's violations of Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 12b-20, 13a-1 and 13a-13 thereunder [17 C.F.R. §§ 240.12b-20, 240.13a-1 and 240.13a-13]; and unless they are enjoined, Zhao and Zhu will again engage, as controlling persons, in conduct that would render them liable, pursuant to Section 20(a) of the Exchange Act [15 U.S.C. § 78t(a)], for violations of Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 12b-20, 13a-1 and 13a-13 thereunder [17 C.F.R. §§ 240.12b-20, 240.13a-1 and 240.13a-13]; and (b) pursuant to Section 20(e) of the Exchange Act, Zhao and Zhu aided and abetted Puda's violations of Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 12b-20, 13a-1 and 13a-13 [17 C.F.R. §§ 240.12b-20, 240.13a-1, 240.13a-13], and unless enjoined will again aid and abet violations of Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 12b-20, 13a-1 and 13a-13 [17 C.F.R. §§ 240.12b-20, 240.13a-1, 240.13a-13].

## EIGHTH CLAIM FOR RELIEF

### Violations of Section 13(b)(2) of the Exchange Act

### (Zhao and Zhu)

83.     The Commission realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 82.

84.     Puda failed to:

27

(a)    make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflected the transactions and dispositions of its assets; and

(b)    devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that:

    (i)    transactions were executed in accordance with management's general or specific authorization;

    (ii)    transactions were recorded as necessary to permit preparation of financial statements in conformity with generally accepted accounting principles or any other criteria applicable to such statements, and to maintain accountability for assets;

    (iii)    access to assets was permitted only in accordance with management's general or specific authorization; and

    (iv)    the recorded accountability for assets was compared with the existing assets at reasonable intervals and appropriate action was taken with respect to any differences;

in violation of Sections 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act [15 U.S.C §§ 78m(b)(2)(A) and 78m(b)(2)(B)]. As alleged above, Puda's accounting books and records improperly reflected an ownership interest in Shanxi Coal that it no longer held during the relevant period; and Puda lacked internal accounting controls sufficient to reasonably assure that its annual and quarterly financial statements were prepared accurately in conformity with GAAP.

85.    As alleged above, Zhao and Zhu knowingly circumvented Puda's internal controls and engaged in a fraudulent scheme to deprive Puda of its 90% ownership interest in Shanxi

Coal without recording Puda's loss of that ownership interest on its books and records or disclosing Puda's loss of that ownership interest to Puda's shareholders or the investing public, which resulted in a failure to accurately reflect Puda's assets, revenue, net income and other items on its books and records and in financial statements included in the periodic reports described in paragraphs 38-40 above.

86.     At all times relevant hereto, Zhao and Zhu were controlling persons of Puda for the purposes of Section 20(a) of the Exchange Act [15 U.S.C. § 78t(a)].

87.     Zhao and Zhu had actual knowledge of Puda's primary violations of Sections 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act [15 U.S.C §§ 78m(b)(A) and 78m(b)(B)] and substantially assisted the primary violations by knowingly engaging in conduct that was a substantial causal factor of such primary violations.

88.     By reason of the foregoing:  (a) Zhao and Zhu are each liable as controlling persons pursuant to Section 20(a) of the Exchange Act [15 U.S.C. § 78t(a)] for Puda's violations of Sections 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act [15 U.S.C §§ 78m(b)(A) and 78m(b)(B)]; and unless they are enjoined, Zhao and Zhu will again engage, as controlling persons, in conduct that would render them liable, pursuant to Section 20(a) of the Exchange Act [15 U.S.C. § 78t(a)], for violations of Sections 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act [15 U.S.C §§ 78m(b)(A) and 78m(b)(B)]; and (b) pursuant to Section 20(e) of the Exchange Act, Zhao and Zhu aided and abetted Puda's violations of Sections 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act [15 U.S.C §§ 78m(b)(A) and 78m(b)(B)], and unless enjoined will again aid and abet violations of Sections 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act [15 U.S.C §§ 78m(b)(A) and 78m(b)(B)].

29

### NINTH CLAIM FOR RELIEF

**Aiding and Abetting and Control Person Liability for
Violations of Section 10(b) of the Exchange Act and Rule 10b-5**

(Zhao and Zhu)

89.     The Commission realleges and incorporates by reference herein each and every

allegation contained in paragraphs 1 through 88.

90.     Puda, directly or indirectly, singly or in concert, by use of the means or

instrumentalities of interstate commerce or of the mails, or of the facilities of a national securities

exchange, in connection with the purchase or sale of securities, knowingly or recklessly, has:  (a)

employed devices, schemes and artifices to defraud; (b) made untrue statements of material fact,

or omitted to state material facts necessary in order to make statements made, in the light of the

circumstances under which they were made, not misleading; and/or (c) engaged in acts, practices

and courses of business which operated or would have operated as a fraud or deceit upon

purchasers of securities and upon other persons.

91.     As part and in furtherance of a scheme to defraud Puda's public shareholders by

secretly stealing and selling Puda's 90% ownership interest in Shanxi Coal while continuing to

sell Puda stock to U.S. investors by falsely telling them that Puda still owned 90% of Shanxi

Coal, Zhao and Zhu knowingly engaged in and employed the fraudulent and deceptive devices,

schemes, artifices, contrivances, acts, transactions, practices and courses of business and/or made

the misrepresentations and/or omitted to state the facts alleged above in paragraphs 1-5 and 14-

44.

92.     During the time of the Defendants' fraudulent conduct, Puda filed periodic reports

with the Commission that were signed by Zhao and/or Zhu, as described above in paragraphs 38-

40. Due to the fraudulent practices in which the Defendants engaged, these documents contained

materially false and misleading statements, and omitted to state material facts, concerning Puda's ownership of Shanxi Coal and Puda's financial performance, including financial statements that materially misstated, among other things, Puda's assets, revenue and net income. As a result, the periodic reports identified in paragraphs 38-40 were materially false and misleading.

93.     As described above in paragraph 41, one or more of these materially false and misleading periodic reports were incorporated by reference in registration statements and prospectuses, including amendments thereto, that were signed by Zhao and Zhu and filed by Puda with the Commission during the time of the Defendants' fraudulent conduct. As a result, these registration statements and related filings were also materially false and misleading, as the registration statements and related filings also failed to disclose the asset transfers and related transactions described in paragraph 41.

94.     During the time of the Defendants' fraudulent conduct, Puda also issued press releases and filed a proxy statement with the Commission, as described above in paragraphs 37 and 42. Due to the fraudulent practices in which the Defendants engaged, these documents contained materially false and misleading statements, and omitted to state material facts, concerning Puda's ownership of Shanxi Coal and Puda's financial performance, including financial statements that materially misstated, among other things, Puda's assets, revenue and net income. As a result, the press releases and proxy statement identified in paragraphs 37 and 42 were also materially false and misleading.

95.     Zhao and Zhu knew that the periodic reports, press releases, proxy statement, registration statements and related filings described above were materially false and misleading, and both defendants also knowingly engaged in the fraudulent scheme described above.

31

96.     By reason of the foregoing, Puda, singly or in concert, directly or indirectly, violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

97.     At all times relevant hereto, Zhao and Zhu were controlling persons of Puda for the purposes of Section 20(a) of the Exchange Act [15 U.S.C. § 78t(a)].

98.     Zhao and Zhu had actual knowledge of Puda's primary violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5] and substantially assisted the primary violations by knowingly engaging in conduct that was a substantial causal factor of such primary violations.

99.     By reason of the foregoing:  (a) Zhao and Zhu are each liable as controlling persons pursuant to Section 20(a) of the Exchange Act [15 U.S.C. § 78t(a)] for Puda's violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]; and unless they are enjoined, Zhao and Zhu will again engage, as controlling persons, in conduct that would render them liable, pursuant to Section 20(a) of the Exchange Act [15 U.S.C. § 78t(a)], for violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]; and (b) pursuant to Section 20(e) of the Exchange Act, Zhao and Zhu aided and abetted Puda's and each other's violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5], and unless enjoined will again aid and abet violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

### TENTH CLAIM FOR RELIEF

**Aiding and Abetting and Control Person
Liability for Violations of Section 14(a) of
the Exchange Act and Rules 14a-3 and 14a-9**

(Zhao and Zhu)

100.    The Commission realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 99.

101.    Puda directly or indirectly, singly or in concert, by use of the means or instrumentalities of interstate commerce or of the mails, or of the facilities of a national securities exchange or otherwise, solicited or permitted the use of its name to solicit proxies, consents or authorizations in respect of non-exempt securities registered pursuant to Section 12(b) of the Exchange Act [15 U.S.C. § 78l(b)]:

(a)    while failing to furnish each person solicited, concurrently or previously, with a written  proxy statement accompanied or preceded by an annual report to security holders in compliance with the requirements of Rule 14a-3(b)(1); and

(b)    by means of a proxy statement, form of proxy statement, form of proxy, notice of meeting and other communications that contained statements which, at the time and in light of the circumstances under which they were made, were false and misleading with respect to material facts, or which omitted to state material facts necessary in order to make the statements therein not false or misleading or necessary to correct statements in earlier communications with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading;

in violation of Section 14(a) of the Exchange Act [15 U.S.C. § 78n(a)] and Rules 14a-3 and 14a-9 [17 C.F.R. §§ 240.14a-3 and 240.14a-9].

102.    As alleged above in paragraph 42, Puda filed with the Commission, and sent to shareholders, an annual proxy statement on April 29, 2010 in connection with a proxy solicited on behalf of Puda's board of directors for the re-election of Zhao and Zhu to the board.  As also alleged above in paragraph 42, that proxy statement contained material misstatements, and omitted to disclose material facts, concerning Puda's ownership of Shanxi Coal and other matters and was accompanied by an annual report and financial statements that were materially false and misleading for the reasons described above in paragraphs 38-40.

103.    By reason of the foregoing, Puda, singly or in concert, directly or indirectly, violated Section 14(a) of the Exchange Act [15 U.S.C. § 78n(a)] and Rules 14a-3 and 14a-9 thereunder [17 C.F.R. §§ 240.14a-3 and 240.14a-9].

104.    At all times relevant hereto, Zhao and Zhu were controlling persons of Puda for the purposes of Section 20(a) of the Exchange Act [15 U.S.C. § 78t(a)].

105.    Zhao and Zhu had actual knowledge of Puda's primary violations of Section 14(a) of the Exchange Act [15 U.S.C. § 78n(a)] and Rules 14a-3 and 14a-9 thereunder [17 C.F.R. §§ 240.14a-3 and 240.14a-9] and substantially assisted the primary violations by knowingly engaging in conduct that was a substantial causal factor of such primary violations.

106.    By reason of the foregoing:  (a) Zhao and Zhu are each liable as controlling persons pursuant to Section 20(a) of the Exchange Act [15 U.S.C. § 78t(a)] for Puda's violations of Section 14(a) of the Exchange Act [15 U.S.C. § 78n(a)] and Rules 14a-3 and 14a-9 thereunder [17 C.F.R. §§ 240.14a-3 and 240.14a-9]; and unless they are enjoined, Zhao and Zhu will again engage, as controlling persons, in conduct that would render them liable, pursuant to Section

20(a) of the Exchange Act [15 U.S.C. § 78t(a)], for violations of Section 14(a) of the Exchange

Act [15 U.S.C. § 78n(a)] and Rules 14a-3 and 14a-9 thereunder [17 C.F.R. §§ 240.14a-3 and

240.14a-9]; and (b) pursuant to Section 20(e) of the Exchange Act, Zhao and Zhu aided and

abetted Puda's violations of Section 14(a) of the Exchange Act [15 U.S.C. § 78n(a)] and Rules

14a-3 and 14a-9 thereunder [17 C.F.R. §§ 240.14a-3 and 240.14a-9], and unless enjoined, will

again aid and abet violations of Section 14(a) of the Exchange Act [15 U.S.C. § 78n(a)] and

Rules 14a-3 and 14a-9 thereunder [17 C.F.R. §§ 240.14a-3 and 240.14a-9].

## PRAYER FOR RELIEF

**WHEREFORE**, the Commission respectfully requests a Final Judgment:

### I.

A.      Permanently enjoining Zhao and Zhu, their agents, servants, employees and

attorneys and all persons in active concert or participation with them who receive actual notice of

the injunction by personal service or otherwise, and each of them, from violating, directly or

indirectly, Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)], Sections 10(b), 13(b)(5), and

14(a) of the Exchange Act [15 U.S.C. §§ 78j(b), 78m(b)(5), and 78n(a)] and Rules 10b-5, 13b2-

1, 13b2-2, 14a-3, and 14a-9 thereunder [17 C.F.R. §§ 240.10b-5, 240.13b2-1, 240.13b2-2,

240.14a-3, and 240.14a-9].

B.      Permanently enjoining Zhu, his agents, servants, employees and attorneys and all

persons in active concert or participation with him who receive actual notice of the injunction by

personal service or otherwise, and each of them, from violating, directly or indirectly, Exchange

Act Rule 13a-14 [17 C.F.R. § 240.13a-14].

C.      Permanently enjoining Zhao and Zhu, their agents, servants, employees and

attorneys and all persons in active concert or participation with them who receive actual notice of

the injunction by personal service or otherwise, and each of them, from controlling, directly or

indirectly, any person who violates Sections 13(a) and 13(b)(2) of the Exchange Act [15 U.S.C.

§§ 78m(a) and 78m(b)(2)] and Rules 12b-20, 13a-1 and 13a-13 thereunder [17 C.F.R. §§

240.12b-20, 240.13a-1 and 240.13a-13].

       D.      Permanently enjoining Zhao and Zhu, their agents, servants, employees and

attorneys and all persons in active concert or participation with them who receive actual notice of

the injunction by personal service or otherwise, and each of them, from aiding and abetting

violations of Sections 13(a) and 13(b)(2) of the Exchange Act [15 U.S.C. §§ 78m(a) and

78m(b)(2)] and Rules 12b-20, 13a-1 and 13a-13 thereunder [17 C.F.R. §§ 240.12b-20, 240.13a-1

and 240.13a-13].

## II.

Ordering Zhao and Zhu to each disgorge the ill-gotten gains they received as a result of

the violations alleged above, and ordering Zhao and Zhu to each pay prejudgment interest

thereon.

## III.

Ordering Zhao and Zhu to pay civil monetary penalties pursuant to Section 20(d) of the

Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. §

78u(d)(3)].

## IV.

Prohibiting Zhao and Zhu, pursuant to Section 20(e) of the Securities Act [15 U.S.C. §

77t(e)] and Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)], from acting as an

officer or director of any issuer that has a class of securities registered pursuant to Section 12 of

the Exchange Act [15 U.S.C. § 78l] or that is required to file reports pursuant to Section 15(d) of

the Exchange Act [15 U.S.C. § 78o(d)].

**V.**

Granting such other and further relief as the Court may deem just and proper.

Dated:  February 22, 2012
        New York, New York

SECURITIES AND EXCHANGE COMMISSION

By:  _George S. Canellos_
        George S. Canellos

Regional Director
Attorney for Plaintiff
SECURITIES AND EXCHANGE
COMMISSION
New York Regional Office
3 World Financial Center, Suite 400
New York, New York  10281
(212) 336-1100

Of Counsel:

David Rosenfeld
George N. Stepaniuk
Sheldon L. Pollock